**BAKER & HOSTETLER LLP**
Bethany G. Lukitsch (SBN 314376)
*blukitsch@bakerlaw.com*
Kamran B. Ahmadian (SBN 314566)
*kahmadian@bakerlaw.com*
Alexandra N. Rahimi
*Arahimi@bakerlaw.com*
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067
Telephone: 310.820.8800
Facsimile   310.820.8859

**BAKER & HOSTETLER LLP**
Victoria L. Weatherford (SBN 267499)
*vweatherford@bakerlaw.com*
600 Montgomery Street, Suite 3100
San Francisco, CA 94111
Telephone: 415.659.2600
Facsimile:  415.659.2601

*Attorneys for Defendant*
UNIVERSAL MUSIC GROUP, INC.

**BAKER & HOSTETLER LLP**
**ATTORNEYS AT LAW**
**LOS ANGELES**

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VISHAL SHAH and CHRISTINE WILEY, individually, on behalf of themselves, the general public, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNIVERSAL MUSIC GROUP, INC.,<br><br>Defendant. | CASE NO.:  5:25-CV-03095-PCP<br><br>[*Assigned to Hon. P. Casey Pitts*]<br><br>**DEFENDANT UNIVERSAL MUSIC GROUP, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS THE CLASS ACTION COMPLAINT, AND MOTION TO STRIKE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>[*Filed Concurrently with Declaration of Bethany G. Lukitsch; Declaration of Sheryl Gold; and Request for Judicial Notice*]<br><br>**Date**:  August 21, 2025<br>**Time**:  10:00 a.m.<br>**Dept.**:  Courtroom 8, 4th Floor<br><br>**Action Filed:** April 4, 2025 |

**TO THE HONORABLE COURT, AND TO PLAINTIFF AND ITS COUNSEL OF RECORD HEREIN:**

**NOTICE IS HEREBY GIVEN** that on, August 21, 2025, at 10:00 a.m., in Courtroom 8 of the above-entitled Court located on the 4th Floor of the Robert F. Peckham Courthouse, at 280 South First Street, San Jose, California, 95113, Defendant Universal Music Group, Inc. ("UMG")[1], will and hereby does move to dismiss with prejudice the Class Action Complaint ("Complaint") of Plaintiffs Vishal Shah and Christine Wiley ("Plaintiffs"), filed individually and on behalf of others similarly situated (Dkt. 1).

UMG respectfully submits this Motion pursuant to Fed. R. Civ. P. 12(b)(6) on the ground that Plaintiffs fail to allege sufficient facts to plead: (1) invasion of privacy or intrusion upon seclusion; (2) a violation of the California Invasion of Privacy Act ("CIPA"), California Penal Code § 631(a); (3) a violation of CIPA, California Penal Code § 638.51, (4) fraud, deceit and/or misrepresentation, (5) unjust enrichment, (6) breach of contract and breach of implied covenant of good faith and fair dealing, (7) trespass to chattels. As Plaintiffs' claims all sound in fraud, UMG also moves to dismiss pursuant to Fed. R. Civ. P. 9(b) as each claim falls far short of alleging specific detail of the alleged fraud as required.

UMG further moves the Court for an order pursuant to Fed. R. of Civ. P. 12(f): (i) striking immaterial or impertinent allegations; and (ii) striking Plaintiffs' class definition because it is facially overbroad, and the proposed class can never satisfy Rule 23.

This Motion is based on this Notice, the Memorandum of Points and Authorities, the declarations of Bethany G. Lukitsch and Sherly Gold Request for Judicial notice, all pleadings, papers and records on file in this Action, and such other oral argument and documentary evidence as may be presented at or before the time of adjudication of this Motion.

Dated:  June 6, 2025

Respectfully submitted,
**BAKER & HOSTETLER LLP**

By:     */s/ Bethany G. Lukitsch*
          Bethany G. Lukitsch
          Victoria L. Weatherford
          *Attorneys for Defendant*

---

[1] Universal Music Investments, Inc. is the proper defendant, not Universal Music Group, Inc.

1

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................................1

II.   FACTUAL BACKGROUND ......................................................................................2

III.  ISSUES TO BE DECIDED .........................................................................................5

IV.   ARGUMENT ...............................................................................................................6

  A.    Plaintiffs' Claims Fail to Meet the Heightened Pleading Standard of Rule 9(b). .......................................................................................................6

  B.    Plaintiffs' Claims Should Be Dismissed with Prejudice Under Rule 12(b)(6)........7

    1.    Plaintiffs Do Not and Cannot Allege a Cognizable Injury for Any of Their Claims.......................................................................................7

    2.    Plaintiffs' Two Common Law Claims for Invasion of Privacy Should Be Dismissed ........................................................................10

      a.    Plaintiff Wiley is outside the statute of limitations........................10

      b.    Plaintiffs cannot allege any reasonable expectation of privacy .....10

      c.    Nothing UMG did was "highly offensive." ...................................11

    3.    Plaintiffs' Wiretapping (CIPA Section 631(a)) Claim Should Be Dismissed. ..............................................................................12

      a.    Plaintiffs Cannot Allege Any Violation of the First Three Clauses Of § 631(a) ...................................................................13

      b.    Plaintiffs Cannot Allege Aiding Or Abetting Liability.................15

    4.    Plaintiffs' Pen Register (CIPA Section 638.51) Claim Should Be Dismissed. ..............................................................................15

    5.    The Common-Law Fraud, Deceit/Misrepresentation Claim Should Be Dismissed. ...................................................................17

    6.    Plaintiff's Unjust Enrichment Claim is Barred as a Matter of Law........18

    7.    Plaintiffs' Breach of Contract and Covenant of Good Faith and Fair Dealing Claims Should Be Dismissed Because There Is No Contract..................................................................................19

    8.    Plaintiffs' Trespass to Chattels Claim Should Be Dismissed. ...............20

  C.    Several Allegations Should Be Stricken Under Rule 12(f)………………….......21

    1.    Impertinent and Immaterial Allegations Should be Stricken. ...............21

DEFENDANT'S NOTICE OF MOTION AND MOTION TO DISMISS AND MOTION TO STRIKE
CASE NO.: 5:25-CV-03095-PCP

2.       Class Allegations Should be Stricken. ...............................................22

V.  CONCLUSION .............................................................................................................23

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguilera v. Pirelli Armstrong Tire Corp.*,
223 F.3d 1010 (9th Cir. 2000) ...............................................................................................7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................................7

*Astiana v. Hain Celestial Grp., Inc.*,
783 F.3d 753 (9th Cir. 2015) ...............................................................................................18

*Bass v. Facebook, Inc.*,
394 F. Supp. 3d 1024 (N.D. Cal. 2019) .................................................................................8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................................................7, 17

*Bennett v. Ohio Nat'l Life Assurance Corp.*,
92 Cal. App. 5th 723 (2023) ..................................................................................................7

*Best Carpet Values, Inc. v. Google, LLC*,
90 F.4th 962 (9th Cir. 2024) ................................................................................................19

*Bradley v. Google, Inc.*,
2006 WL 3798134 (N.D. Cal. Dec. 22, 2006) .....................................................................13

*Brazil v. Dell Inc.*,
585 F. Supp. 2d 1158 (N.D. Cal. 2008) ...............................................................................22

*Brodsky v. Apple, Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) ...............................................................12, 14, 23

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ........................................................................10, 23

*Bui-Ford v. Tesla, Inc.*,
2024 WL 694485 (N.D. Cal. Feb. 20, 2024) .......................................................................19

*Casillas v. Berkshire Hathaway Homestate Ins. Co.*,
79 Cal. App. 5th 755 (2022) ..................................................................................................7

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024) .................................................................................14

*Colgate v. JUUL Labs, Inc.*,
402 F. Supp. 3d 728 (N.D. Cal. 2019) ..............................................................................1, 6

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

iv

*D'Angelo v. FCA US, LLC*,
726 F. Supp. 3d 1179 (S.D. Cal. 2024)................................................................................10, 12

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ..........................................................................................9

*Doe v. Meta Platforms, Inc.*,
690 F. Supp. 3d 1064 (N.D. Cal. 2023) ........................................................................................9

*In re Facebook Priv. Litig.*,
791 F. Supp. 2d 705 (N.D. Cal. 2011), *aff'd,* 572 F. App'x 494 (9th Cir. 2014) ......................17

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ........................................................................................18

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ................................................................................................10, 19

*Fantasy, Inc. v. Fogarty*,
984 F.2d 1524 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994).................20, 21

*Gardner v. Health Net, Inc.*,
2010 WL 11597979 (C.D. Cal. Aug. 12, 2010)...........................................................................19

*General Tel. Co. of Sw. v. Falcon*,
457 U.S. 147 (1982)......................................................................................................................21

*Gerlinger v. Amazon.Com, Inc.*,
311 F. Supp. 2d 838 (N.D. Cal. 2004) ........................................................................................18

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ..........................................................................................9

*In re Google Inc. Gmail Litig.*,
2013 WL 5423918 (N.D. Cal. Sept. 26, 2013) ...........................................................................13

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) ........................................................................................10

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ..................................................................................9, 11

*Hart v. TWC Prod. & Tech. LLC*,
526 F. Supp. 3d 592 (N.D. Cal. 2021) ..........................................................................................8

*Heeger v. Facebook, Inc.*,
2019 WL 7282477 (N.D. Cal. Dec. 27, 2019) ............................................................................11

*Heiting v. Taro Pharms. USA, Inc.*,
709 F.Supp.3d 1007 (C.D. Cal. 2023) ..................................................................................16, 17

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

v

*Hoey v. Sony Elecs. Inc.*,
515 F. Supp. 2d 1099 (N.D. Cal. 2007) ........................................................................18

*Hooked Media Grp. v. Apple Inc.*,
55 Cal. App. 5th 323 (2020) ........................................................................................18

*Hospevian v. Apple, Inc.*,
2009 WL 5069144 (N.D. Cal. Dec. 17, 2009) ..............................................................22

*Hubbard v. Google LLC*,
*2024* WL 3302066 (N.D. Cal. July 1, 2024)..................................................................8

*Huynh v. Jabil Inc.*,
2023 WL 1802417 (N.D. Cal. Feb. 7, 2023) ................................................................22

*Intel Corp. v. Hamidi*,
30 Cal. 4th 1342 (2003) ................................................................................................20

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ..........................................................11, 12, 20

*Javier v. Assurance IQ, LLC*,
2022 WL 1744107 (9th Cir. May 31, 2022) ................................................................13

*Jones v. Peloton Interactive, Inc.*
720 F. Supp. 3d 940 (S.D. Cal. 2024)..........................................................................10

*Jones v. Tonal Sys., Inc.*,
2024 WL 4357558 (S.D. Cal. Sept. 30, 2024)..............................................................13

*Joseph v. J.J. Mac Intyre Cos., L.L.C.*,
238 F. Supp. 2d 1158 (N.D. Cal. 2002) ........................................................................7

*Kane v. Chobani, Inc.*,
2013 WL 5289253 (N.D. Cal. Sept. 19, 2013) ............................................................21

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ......................................................................................6

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ........................................................................................7

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) ......................................................................................13

*Lau v. Gen Digit. Inc.*,
2024 WL 1880161 (N.D. Cal. Apr. 3, 2024) ..............................................................13

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ..................................................................8, 11

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

vi

*Marich v. MGM/UA Telecomm, Inc.*,
113 Cal. App. 4th 415 (2003) ...................................................................................7

*Matera v. Google Inc.*,
2016 WL 8200619 (N.D. Cal. Aug. 12, 2016) ........................................................13

*O'Shea v. Littleton*,
414 U.S. 488 ...........................................................................................................21

*Pirozzi v. Apple Inc.*,
913 F. Supp. 2d 840 (N.D. Cal. 2012) .....................................................................6

*R.D. Reeder Lathing Co. v. Cypress Ins. Co.*,
3 Cal. App. 3d 995 (1970) ........................................................................................7

*Rice-Sherman v. Big Heart Pet Brands, Inc.*,
2020 WL 1245130 (N.D. Cal. Mar. 16, 2020).........................................................22

*Rodriguez v. Autotrader.com, Inc.*,
762 F.Supp.3d 921 (C.D. Cal. 2025) ........................................................................8

*Rodriguez v. Ford Motor Co.*,
722 F. Supp. 3d 1104 (S.D. Cal. 2024).....................................................................12

*Rodriguez v. Google LLC*,
2022 WL 214552 (N.D. Cal. 2022) ..........................................................................13

*Rojas-Lozano v. Google, Inc.*,
159 F. Supp. 3d 1101 (N.D. Cal. 2016) ....................................................................18

*Romero v. Securus Techs., Inc.*,
331 F.R.D. 391 (S.D. Cal. 2018) ...............................................................................17

*Ruiz v. Gap, Inc.*,
540 F. Supp. 2d 1121 (N.D. Cal. 2008) (Conti, J.), *aff'd*, 380 F. App'x 689 (9th
Cir. 2010) ...................................................................................................................12

*Sanders v. Apple Inc.*,
672 F. Supp. 2d 978 (N.D. Cal. 2009) ..............................................................21, 22

*Saroya v. Univ. of the Pac.*,
503 F. Supp. 3d 986 (N.D. Cal. 2020) ......................................................................18

*Segen v Rickey*,
2008 WL 590505 (N.D. Cal. Feb. 29, 2008) ............................................................16

*Smith v. YETI Coolers, LLC*,
2024 WL 4539578 (N.D. Cal. Oct. 21, 2024)...........................................................14

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) ..............................................................................7, 20

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

vii

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)................................................................................................................7

*Tran v. Kansas City Life Ins. Co.*,
  228 F. Supp. 3d 1068 (C.D. Cal. 2017) ...............................................................................19

*U.S. v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) ...............................................................................................17

*U.S. of Am. For an Order Authorizing Use of a Cellular Tel. Digit. Analyzer*, 885
  F. Supp. 197 (C.D. Cal. 1995). ............................................................................................16

*Valenzuela v. Keurig Green Mountain, Inc.*,
  674 F.Supp.3d 751 (N.D. Cal. 2023) ...................................................................................13

*In re Vizio, Inc., Consumer Priv. Litig.*,
  238 F. Supp. 3d 1204 (C.D. Cal. 2017) ...............................................................................13

*White v. Soc. Sec. Admin.*,
  111 F. Supp. 3d 1041 (N.D. Cal. 2015) ...............................................................................11

*Williams v. Facebook, Inc.*,
  498 F. Supp. 3d 1189 (N.D. Cal. 2019) .................................................................................6

*Williams v. What If Holdings, LLC*,
  2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ....................................................................12

*Yoon v. Lululemon USA, Inc.*,
  549 F. Supp. 3d 1073 (C.D. Cal. 2021) ...............................................................................14

*In re Zynga Priv. Litig.*,
  750 F.3d 1098 (9th Cir. 2014) ........................................................................................10, 14

**Statutes**

Cal. Civ. Proc. Code § 337 .........................................................................................................23

Cal. Civ. Proc. Code § 338 (c), (d) ...........................................................................17, 20, 23

Cal. Penal Code § 20....................................................................................................................17

California Consumer Privacy Act ...........................................................................................3, 11

California Invasion of Privacy Act, Cal. Penal Code §§ 630-638.55 .................................. *passim*

Federal Pen Register Act ............................................................................................................16

Cal. Penal Code § 484(a) ............................................................................................................10

**Other Authorities**

Fed. R. Civ. P. 9(b) .............................................................................................................5, 6, 17

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Fed. R. Civ. P. 12(b)(6) ................................................................................................2, 6, 7, 21

Fed. R. Civ. P. 12(f) ...................................................................................................................6, 20

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## **MEMORANDUM OF POINTS AND AUTHORITIES**

## I. **INTRODUCTION**

This lawsuit is yet another in the avalanche of CIPA cases filed in California challenging third-party cookies, the ubiquitous, lawful online advertising technology that courts repeatedly have held do not collect information that implicates users' right to privacy. And this Complaint is the latest in cookie suits filed by serial litigants Vishal Shah and Christine Wiley ("Plaintiffs"), this time claiming that certain recording artists' Universal Music Group ("UMG")-operated[2] websites fire cookies, including cookies for targeted marketing and advertising, despite users' selections on the "cookie banner" either toggling off "Online Advertising" and/or "Performance and Analytics" or choosing to "Decline All." While the Complaint is full of inflammatory rhetoric, it lacks the barest facts regarding Plaintiffs' interactions with these free, public websites required to sustain Plaintiffs' claims and cannot be amended to resuscitate them.

The gravamen of Plaintiffs' Complaint is that UMG told "outright lies." Compl. ¶2. Far from alleging the "who, what, where, and when" required for claims sounding in fraud, *see Colgate v. JUUL Labs, Inc.,* 402 F. Supp. 3d 728, 744 (N.D. Cal. 2019) (Orrick, J.), Plaintiffs provide virtually no details of their own experiences, stating only that they visited certain musicians' websites "to browse information about the artists' music and related products" and made selections on the cookie banners. *See* Compl. ¶¶ 85, 93. There are no facts whatsoever explaining how *Plaintiffs'* banal web surfing on UMG-operated sites resulted in the "egregious privacy violations" claimed here. No details explaining what device and browser they were using to access each Website, what their browser cookie/privacy settings were, what, if any, cookies allegedly were installed or fired after Plaintiffs made their toggle selections, what "personal information" or "private communications" of Plaintiffs actually were transmitted, and on and on. And, despite pasting screen shots and incorporating the full Privacy Policy, Plaintiffs provide no explanation as to how any specific statements in the cookie banner pop-ups or Privacy Policy are untrue as to

---

[2] Plaintiffs' Complaint is void of any detail regarding Universal Music Group, Inc.'s connection to the websites, privacy policy or privacy function—yet another pleading failure. As advised in a pre-filing meet and confer, Universal Music Investments, Inc., the entity appearing on the Privacy Policy, is the proper named defendant in the UMG family group of entities.

1

them. These defects are fatal to Plaintiffs' Complaint under any federal pleading standard but certainly fail to meet 9(b).

Each of Plaintiffs' claims also fails under Rule 12(b) because Plaintiffs have failed to allege they have suffered any cognizable injury, a necessary element of each of their claims. Further, Plaintiffs do not identify what information of theirs has been collected or shared by UMG, what "bargain" they were deprived of given that the Websites are publicly accessible *for free*, or how their unidentified devices and personal information have been "de-valued." Just conclusory say-so that cannot satisfy the *Twombly/Iqbal* standard.

A litany of additional reasons justify dismissing each cause of action with prejudice, including, to name a few, that Plaintiffs have no legally protectible privacy interest in the data allegedly transmitted by the third-party cookies (for privacy claims), none of the data allegedly collected is the "content" of "communications" (for CIPA wiretap claim), and, there is no contract between Plaintiffs and UMG (for contract-based claims). Furthermore, Plaintiffs' allegations related to websites Plaintiffs do not allege to have visited should be dismissed or stricken, as should Plaintiffs' class allegations which are facially overbroad.

## II.    FACTUAL BACKGROUND

***UMG lawfully and transparently uses third-party cookies and provides users with the information necessary to make choices regarding certain data sharing.***

Universal Music Group is the world's leading music-based entertainment company and the home for music's greatest artists. UMG's family of companies, which includes industry-leading record labels, publishing, and merchandising companies, work with artists and songwriters to produce, develop, release, and promote the music that is the heartbeat of our lives. As a part of these activities, Universal Music Investments, Inc., not named Defendant, "Universal Music Group, Inc.," operates the free, public websites of numerous recording artists, including the websites listed in footnote 1 of Plaintiffs' Complaint (the "Websites"). The features of each Website vary; depending on the Website, a user can watch music videos, view photographs of the artist, learn about past or upcoming tours, purchase memorabilia or music, or sign-up to receive newsletters, among other actions.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Like virtually all companies, UMG embeds first- and third-party code for analytics, website functionality and security, advertising, and marketing purposes on its Websites. Compl. ¶¶ 22-24. This code may deploy additional small text files of code, referred to as "cookies," that website servers can cause to be placed on an Internet user's browser. Cookies can perform a variety of functions such as helping websites operate effectively and website owners to personalize advertisements.  Internet browsers (i.e. Chrome, Edge, Safari) and certain privacy focused add-ons (like uBlock Origin or "Incognito Mode") contain settings that users can set to *automatically accept* all or only certain cookies, and also to *automatically delete* the browser's cookie cache at the end of the browsing session, daily, weekly, monthly (or whenever the system is rebooted), or on-demand by the user. And cookies, including the cookies in Plaintiffs' Complaint, themselves have an expiration date which varies between when a user ends their browsing session to years.

***While not required under any U.S. law***, in an effort to be transparent and provide consumers with an easier and less burdensome method to opt out of the collection of information by certain third-party technology deployed on its site, UMG deploys a cookie management tool including a "cookie banner" pop-up notification on its Websites, that provides visitors with a direct link to UMG's comprehensive Privacy Policy, and includes certain toggles for visitors to manage their choices.[3]

The Complaint contains screenshots of only one Website cookie banner from UMG-operated Websites—the www.postmalone.com website for artist Post Malone. Compl. ¶¶1, 25-26. Plaintiffs do not allege they took these screenshots; instead, they were taken at an unknown date and time, by an unidentified "Website user." *Id.* As depicted, the Post Malone cookie banner conspicuously links UMG's Privacy Policy from both the initial primary banner and the pop-up banner shown when a user clicks "Cookie Choices." *Id.* This second pop-up banner informs visitors about information UMG and third parties may collect using cookies. *Id.* Users are given the opportunity to toggle off two categories: "Online Advertising," and "Performance and

---

[3]California law does not prohibit companies from placing third-party technology on their websites or prohibit the placement of a cookie by the third-party technology. Rather, California law only provides that a company must give consumers the ability to *opt out* of the collection of data by that third-party technology if it is "sold" or used for the purpose of cross-context behavioral advertising, as defined by the California Consumer Privacy Act.

Analytics". *Id.* Users can toggle each preference individually or select "Decline All" to decline further tracking action. *Id.* ¶ 27. Nowhere on the banner does UMG state that it will not (or has not) place cookies on a visitor's device, or that UMG will delete any cookies already placed on a visitor's device. And nowhere on the banner does UMG state that a visitor can decline other categories of cookies, such as essential cookies.

The January 1, 2023, version of the Privacy Policy alleged in the Complaint and conspicuously linked in both the initial cookie banner and second pop-up banner informs visitors that UMG uses cookies on its websites, informs them of the categories of information UMG may collect, how it is collected, how it may be shared, and how it may be used. It also generally educates visitors about cookies, stating in part:

> You can find more information about the cookies and other tracking technologies we use, the purposes for which we use them, and make certain choices about cookies through the cookie choices tools available on our Apps.
>
> Most internet browsers are automatically set up to accept cookies. However, if you want to refuse or delete any cookies (or similar technologies), please refer to the help and support area on your internet browser for instructions on how to block or delete cookies.
>
> Please note you may not be able to take advantage of all the features of our App, including certain personalised features, if you delete or disable cookies.

Request for Judicial Notice ("RJN"), Declaration of [Sheryl Gold] ("Gold Decl."), Ex. A; UMG Privacy Policy (Effective Date: January 1, 2023) (current version available at https://privacy.umusic.com/) (the "Privacy Policy"); *see* Compl. ¶¶ 23-24, fn. 2. As the Privacy Policy informed users, "[M]ost internet browsers are automatically set up to accept cookies," and if a user wishes to block, refuse, or delete cookies, a user should consult their internet browser instructions. *Id*.

The Complaint's various other screenshots allegedly depicting the transmission of third-party cookies after visiting the www.postmalone.com website are not Plaintiffs' screenshots but purportedly demonstrate an unknown "Website user," using an unknown device and browser, with unknown device and browser settings, at an unknown time. *See generally* Compl. ¶¶ 31-32, 39-42, 50-54, 62-68.

///

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

***Plaintiffs' allegations about their own experiences lack basic and necessary facts.***

Plaintiff Shah alleges he visited two Websites: postmalone.com and imaginedragonsmusic.com, "to browse information about the artists' music and related products," at various times including sometime "in or around March 2024." Compl. ¶ 8. Shah does not provide screenshots of the cookie banners he saw during his personal visits to either Website, and does not specify what representations were allegedly made on which Website. Nor does he identify the device(s) or browser(s) he used to visit either Website, state whether his cookie settings were set to automatically accept some or all cookies and/or automatically delete cookies at some discrete point in time, or allege whether he clicked or viewed the "Privacy Policy" conspicuously linked on each Website cookie banner. Other than clicking the cookie banner, Shah does not describe with any specificity his actions on either Website.  *Id.* ¶¶ 88, 90. He does not describe what pages he viewed, how long he spent browsing, if he made a purchase or entered any content such as his name, email, or other information into any field, used a search bar, or sent any messages or communications through either Website. He does not allege what cookies were allegedly placed or fired after he made his privacy selections on either Website, or what information was collected by which cookie. He does not allege that he has suffered *any* harm whatsoever from any alleged misrepresentation, other than to say that he would not have visited the free websites or "would have interacted with the Websites differently." *Id.* ¶¶ 91-92. He provides no facts alleging any loss in value of any device or of his personal information.

Plaintiff Wiley alleges she visited six Websites: arianagrande.com, icespicemusic.com, universalmusic.com, nikiminajofficial.com, theweekend.com, and lilyachtyofficial.com. Like Shah, Wiley provides no details regarding her visits, other than they occurred sometime "during the last four years," clicked their cookie banners, and "browsed" those Websites. *Id.* ¶¶ 93-97.  The remainder of her allegations parrot Plaintiff Shah's and fail to provide the same information regarding her device and browser settings, browsing sessions, cookies, and alleged injury.

## III.  ISSUES TO BE DECIDED

1. Have Plaintiffs satisfied the Rule 9(b) standard for each of their claims, all of which sound in fraud?

2.  Have Plaintiffs satisfied the Rule 12(b)(6) standard for each of their claims?

3.  Should Plaintiffs' class allegations and allegations related to unvisited websites be dismissed or stricken, under Rule 12(b)(6) or Rule 12(f)?

## IV.  ARGUMENT

### A.  Plaintiffs' Claims Fail to Meet the Heightened Pleading Standard of Rule 9(b).

Each of Plaintiffs' claims is subject to and fails to meet the Rule 9(b) heightened pleading standard for claims that "sound in fraud." Fed. R. Civ. P. 9(b); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (the word "fraud" need not be used). As set out in the opening allegations of Plaintiffs' Complaint, Plaintiffs' claims all arise from the alleged "outright lies" of UMG: allegedly telling Website users that they could entirely avoid tracking and data sharing while browsing the Websites and purposefully not honoring users' wishes. *See, e.g., id.* ¶¶ 2, 5, 29, 84, 126. Where, as here, a plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct," the pleaded claims "sound in fraud" and are each subject to the heightened pleading requirements of Rule 9(b). *Vess Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1103–04 (9th Cir. 2003); *see also Williams v. Facebook, Inc.*, 498 F. Supp. 3d 1189, 1200–01 (N.D. Cal. 2019) (Seeborg, C.J.) (applying Rule 9(b) to misrepresentation-based claims including intrusion upon seclusion and invasion of privacy claims).

Plaintiffs fall far short of "stat[ing] with particularity the circumstances constituting fraud or mistake, including the who, what, when, where, and how of the misconduct charged," as is required. *Colgate*, 402 F. Supp. 3d at 744. As discussed above, there are virtually no *factual* allegations regarding *Plaintiffs' experiences*; the Complaint instead relies on a smattering of undated screenshots of Website visits obtained from an unidentified "Website user." *See* Compl. ¶ 25-36. But this is legally insufficient to satisfy Plaintiffs' burden under Rule 9(b) (or 12(b)(6)) to allege how UMG defrauded *them*. *See Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 850 (N.D. Cal. 2012) (Rogers, J.) (dismissing fraud-based claims where plaintiff "fail[ed] to provide the particulars of *her own experience"* reviewing or relying on misrepresentations) (emph. added).

///

///

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

### B. **Plaintiffs' Claims Should Be Dismissed with Prejudice Under Rule 12(b)(6).**

To withstand a motion to dismiss under Rule 12(b)(6), a complaint must set forth factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must contain "more than [mere] labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Furthermore, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

### 1. **Plaintiffs Do Not and Cannot Allege a Cognizable Injury for Any of Their Claims.**

Each of Plaintiffs' claims requires Plaintiffs to allege they have suffered a cognizable injury. *See Marich v. MGM/UA Telecomm, Inc.*, 113 Cal. App. 4th 415, 423 (2003) (an essential element of a claim for invasion of privacy is that "[t]he intrusion caused plaintiff to sustain injury, damage, loss or harm"); *Joseph v. J.J. Mac Intyre Cos., L.L.C.*, 238 F. Supp. 2d 1158, 1169 (N.D. Cal. 2002) (Chen, M.J.) (same for intrusion upon seclusion claim); Cal. Penal Code § 637.2(a) (CIPA statutory standing requires plaintiff has been "injured by" a violation of CIPA); *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000) (breach of contract plaintiff must establish "appreciable and actual damage"); *Bennett v. Ohio Nat'l Life Assurance Corp.*, 92 Cal. App. 5th 723, 729 (2023) (damages required for breach of implied covenant claim) (cit. omitted); *R.D. Reeder Lathing Co. v. Cypress Ins. Co.*, 3 Cal. App. 3d 995, 999 (1970) (fraud plaintiff must show "he has sustained some pecuniary damage or injury" as a result of the fraud); *Casillas v. Berkshire Hathaway Homestate Ins. Co.*, 79 Cal. App. 5th 755, 762 (2022) ("[I]njury to the plaintiff's personal property or legal interest therein...*is* an element of the action" for trespass

Baker & Hostetler LLP
Attorneys at Law
Los Angeles

7

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

to chattels."). And while Plaintiffs summarily aver they have suffered a litany of injuries, *see* Compl. ¶¶ 119, 148, 167-168, 190, 208, they allege no *facts* to support these claimed harms as is required to survive a motion to dismiss.

**Invasion of Privacy:** As discussed below, Plaintiffs have no expectation of privacy in any of the information allegedly collected by UMG. *See infra*, Section IV(B)(2)(b). Notably, Plaintiffs do not identify any information of *theirs* that was actually collected by any Website cookie. And even if any of their information was collected, courts consistently have held that the mere collection of browsing history, page views and IP addresses, absent a tangible or concrete harm, does not constitute a sufficient injury to support legal claim. *See Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1036, 1040 (N.D. Cal. 2019) (Alsup, J.); *Rodriguez v. Autotrader.com, Inc.*, 762 F.Supp.3d 921, 926-27 (C.D. Cal. 2025) ("Not all information will qualify; the information must be sufficiently personal or sensitive that its disclosure is harmful."). Plaintiffs allege *nothing* about any "rejected" cookies on their browsers let alone any tangible harms suffered as a result of any collection/transmission from "rejected" cookies.

**Loss of value and control of information:** While Plaintiffs summarily state they have suffered a diminution of value in their information, *see* Compl. ¶¶ 148, 167, courts have repeatedly held that plaintiffs must allege *how* they have suffered economic harm. *See e.g.*, *Hubbard v. Google LLC*, *2024* WL 3302066, at *9 (N.D. Cal. July 1, 2024) (Van Keulen, M.J.) (granting motion to dismiss and finding no injury alleged where plaintiffs did not allege facts explaining *how* defendant's collection and use of plaintiffs' information reduced the value of that information). Plaintiffs must plead what economic value the allegedly transmitted information held *to them* and how that value was lost through UMG's alleged misconduct. *See e.g.*, *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1032 (N.D. Cal. 2012) (Koh, J.) ("[T]he Amended Complaint fails to allege how either Plaintiff was foreclosed from capitalizing on the value of his personal data."). It is irrelevant that Plaintiffs allege UMG *can* monetize the collected data and maximize revenue, as Plaintiffs do not claim *they* want (or have sought) to monetize their data. *See Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 603 (N.D. Cal. 2021) (Tigar, J.) ("That the information has external value, but no economic value to plaintiff, cannot serve to establish that plaintiff has

personally lost money or property."). Indeed, the Complaint indicates that Plaintiffs have no interest in selling their data as that would reveal information, they claim is too private to share with third parties. *See* Compl. ¶¶ 14, 19.

**Benefit of the bargain**: Plaintiffs allege they did not get the "benefit" of their "bargain," but this theory of damages is inapplicable in cases where, as here, Plaintiffs do not allege they provided any consideration to access UMG's *publicly accessible and free* websites. "[A] benefit of bargain measure of damages is intended to give the injured party the benefit of his bargain and insofar as possible to place him in the same position he would have been in had the promisor performed the contract." *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 833 (N.D. Cal. 2020) (Freeman, J.) (cleaned up) (cit. omitted) (rejecting benefit of the bargain theory where plaintiffs did not allege they "actually provided consideration for the security services which they claim were not provided").

**Reduction of storage and value of computing devices:** Plaintiffs do not identify their devices nor describe any loss of storage or value to them. Nor could Plaintiffs allege any concrete injury of this sort, as third-party cookies are temporary, usually automatically deleted by the user's computer with time or expiring on their own, and can manually be deleted by Plaintiffs at any time. Indeed, "[N]othing about the...existence of cookies physically impairs the functioning of Plaintiffs' or other users' computing devices in any way." *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 846 (N.D. Cal. 2024) (Chhabria, J.) (granting motion to dismiss). Plaintiffs' claim that they no longer are willing to visit UMG's Websites is no injury at all, as "the decision not to use one's computer to communicate with a specific entity is not the same as actually being deprived of the ability to use one's computer." *Doe I*, 741 F. Supp. 3d at 846; *see also Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1088 (N.D. Cal. 2023) (Orrick, J.) (finding allegations that plaintiffs no longer wanted to use their devices to communicate with their healthcare providers insufficient to support trespass to chattels claim).

///

///

///

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**2.    Plaintiffs' Two Common Law Claims for Invasion of Privacy Should Be Dismissed.**

When claims for invasion of privacy and intrusion upon seclusion are brought together on the same factual basis, courts conduct a combined inquiry because of the similarities in their analyses. *See Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022) (Breyer, J.). To determine whether plaintiffs have sufficiently alleged these claims, courts consider whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020). Plaintiffs fail to allege either element, nor could they given the subject matter of the Websites.[4]

**a.    Plaintiff Wiley is outside the statute of limitations.**

Both claims have a two-year statute of limitations. *See Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1069 (N.D. Cal. 2021) (Koh, J.) (statutes of limitations for "intrusion upon seclusion and invasion of privacy claims is two years.") (citing Cal. Civ. Proc. Code § 335.1). Plaintiff Wiley merely says she visited "during the last four years," Compl. ¶ 93, and thus has not alleged facts sufficient to place her within the statute of limitations.

**b.    Plaintiffs cannot allege any reasonable expectation of privacy.**

Courts have routinely held that website visitors have no reasonable expectation of privacy in the very type of information purportedly at issue in this Complaint, including browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data (Comp. ¶¶ 3, 22, 29, 112 114, 176). *See, e.g., In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108-09 (9th Cir. 2014) (finding no reasonable expectation of privacy in the URL of a website the plaintiff previously had visited or in basic identification information); *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 198 (N.D. Cal. 2019) (Davila, J.) (no reasonable expectation of privacy in their geolocation data); *D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179,

---

[4] Plaintiffs in their first cause of action also allege Penal Code section 484(a), California's petty theft law, creates a "legally protected privacy interest" that was violated.  But that statute concerns theft or dispossession of property—not any invasion of privacy.

1206 (S.D. Cal. 2024) (no invasion of privacy for collection of user's account name, IP address, geographic location, and referral site URL).

Repeatedly referring to hypothetical collected information allegedly shared by Plaintiffs as "Private Communications" does not make it so, and Plaintiffs in any event fail to explain how visiting a public website would be private, or how any allegedly collected information constitutes a "communication" between Plaintiffs and UMG. *See Jones v. Peloton Interactive, Inc.* 720 F. Supp. 3d 940, 950–51 (S.D. Cal. 2024) (granting motion to dismiss because there is no legally protected privacy interest in the contents of internet-connected chats with defendant where plaintiff did not allege she shared any sensitive and confidential information and instead vaguely alleged a chat *could* include private or sensitive information); *Heeger v. Facebook, Inc.*, 2019 WL 7282477, at *4 (N.D. Cal. Dec. 27, 2019) (Donato, J.) (dismissing privacy claim where plaintiff only made bareboned and vague allegation that Facebook collected his "private" location data). Plaintiffs also claim that the types of information (again not specifically associated with Plaintiffs' visits) are "personal information," as defined under the California Consumer Privacy Act ("CCPA"), Cal. Civ. Code § 1798.140. Compl. ¶ 113. But this is irrelevant as there is no support for the notion that the collection of every category of information regulated under the CCPA constitutes an inherent privacy violation. *See White v. Soc. Sec. Admin.*, 111 F. Supp. 3d 1041 (N.D. Cal. 2015) (Tigar, J.) (finding even disclosure of personal information like social security numbers cannot overcome the high bar for an invasion of privacy claim); *Low*, 900 F. Supp. 2d at 1025 (same).

### c.  Nothing UMG did was "highly offensive."

As other courts in this district have recognized, "data collection and disclosure to third parties that is 'routine commercial behavior' is not a 'highly offensive' intrusion of privacy." *Hammerling*, 615 F. Supp. 3d at 1090 (collecting cases); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (Koh, J.) (dismissing privacy claim with prejudice because sharing data including "unique device identifier number, personal data, and geolocation information from Plaintiffs' Devices" was routine commercial behavior and not highly offensive). Plaintiffs cannot save their privacy claims by cloaking them in claimed fraud or allegedly false statements. *Supra*, Section IV(A); *see Hammerling,* 615 F. Supp. 3d at 1090 (finding plaintiffs

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

failed to plead "highly offensive" invasion of privacy because Google's representation regarding data collection was at most ambiguous, and plaintiffs did not allege how Google could collect or collected private information). And, electronic data collection and disclosure is no "egregious breach of social norms" ***"[e]ven assuming this information was transmitted without Plaintiffs' knowledge and consent . . . ."*** *In re iPhone*, 844 F. Supp. 2d at 1063 (emph. added).

The same result as in *In re iPhone*—dismissal with prejudice—is warranted here. In fact, courts have dismissed invasion of privacy claims (under both California's Constitution and common law) when far more sensitive data allegedly was collected and disclosed. *See, e.g., Ruiz v. Gap, Inc.,* 540 F. Supp. 2d 1121, 1128 (N.D. Cal. 2008) (Conti, J.), *aff'd*, 380 F. App'x 689 (9th Cir. 2010) (alleged disclosure of Social Security Numbers "do[es] not constitute an egregious breach" of social norms).

### 3.    Plaintiffs' Wiretapping (CIPA Section 631(a)) Claim Should Be Dismissed.

"Under the CIPA, the applicable statute of limitation is one year." *Brodsky v. Apple, Inc.*, 445 F. Supp. 3d 110, 134 (N.D. Cal. 2020) (Koh, J.). Plaintiffs filed this lawsuit on April 4, 2025, yet Plaintiff Shah alleges he visited certain Websites "in or around March 2024," Compl. ¶ 85 and thus is out of time to bring the CIPA claim. Plaintiff Wiley's claims are also time-barred. *See supra,* Section IV(B)(2)(a).

CIPA Section 631(a) prohibits a defendant from itself engaging in, or aiding another to engage in, one of three activities: (1) "intentional wiretapping," (2) "willfully attempting to learn the contents or meaning of a communication in transit over a wire," or (3) using or "attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." *D'Angelo,* 726 F. Supp. 3d at 1196 (citing *Tavernetti v. Super. Ct.*, 22 Cal. 3d 187, 192 (1978)); *see* Cal. Penal Code § 631(a). Section 631(a) also includes a fourth basis for liability, for anyone "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the other three bases for liability." Cal. Penal Code § 631(a). To establish a violation of § 631(a)'s aiding and abetting clause, a plaintiff must plausibly allege a violation of one of the first three clauses. *Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1104, 1113–14 (S.D. Cal. 2024); *see also Williams v. What If Holdings, LLC*, 2022 WL 17869275, at \*2 (N.D. Cal. Dec. 22, 2022) (Alsup, J.) (stating that an aiding-and-abetting defendant's "liability…is…based entirely on whether [a third party] violated Section 631(a) in some way"). Although not entirely clear from the Complaint, Plaintiffs appear to assert claims under all three clauses of § 631(a). And because CIPA is a penal statute, Plaintiffs must allege scienter. *See infra*, Section IV(B)(4).

### a. Plaintiffs Cannot Allege Any Violation of the First Three Clauses Of § 631(a)

*Clause 1:* Plaintiff cannot state a claim under the first clause of § 631(a) because it does not apply to online conduct. *See Valenzuela v. Keurig Green Mountain, Inc.*, 674 F.Supp.3d 751, 755  (N.D. Cal. 2023) (Corley, J.) (first clause of "Section 631(a)'s plain text does not prohibit the non-telephonic conduct"); *In re Google Inc. Gmail Litig.*, 2013 WL 5423918, at \*20 (N.D. Cal. Sept. 26, 2013) (Koh, J.) (describing the "limitation of 'telegraphic or telephone' on 'wire, line, cable, or instrument' in the first clause"). While Plaintiffs cite cases in their Complaint purportedly applying Section 631(a) to "new technologies," s*ee* Compl. ¶ 138, these cases only apply to the *second* clause of § 631(a), not the first. *See Matera v. Google Inc.*, 2016 WL 8200619, at \*21 (N.D. Cal. Aug. 12, 2016) (Koh, J.) ("[T]he second clause of <u>section 631</u>, *as opposed to the first clause*, is not limited to communications passing over 'telegraph or telephone' wires, lines, or cables) (emph. added); *Bradley v. Google, Inc.*, 2006 WL 3798134, at \*5–6 (N.D. Cal. Dec. 22, 2006) (Alsup, J.) (quoting the second clause); *Javier v. Assurance IQ, LLC*, 2022 WL 1744107, at \*1 (9th Cir. May 31, 2022) (same).

*Clause 2:* The second clause of Section 631(a) is violated only where a third party "reads, or attempts to read, or to learn the ***contents or meaning of any message***, report, or communication ***while the same is in transit***." *Jones v. Tonal Sys., Inc.*, 2024 WL 4357558 at \*4 (S.D. Cal. Sept. 30, 2024) (emph. added); *see Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002); *Lau v. Gen Digit. Inc.*, 2024 WL 1880161, at \*1 (N.D. Cal. Apr. 3, 2024) (Lin, J.) (wiretapping concerns "the unauthorized *interception* of communications, not any subsequent storage and/or use"). Put simply, the alleged third-party eavesdropper must read or learn the content of

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

communication while it is en route to the intended recipient. The Court should reject Plaintiffs' single, conclusory boilerplate allegation, *see* Compl. ¶ 143, that merely restates the text of the rule. *See In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) (dismissing wiretap claim because the "conclusory allegation that Vizio intercepted their electronic communications 'during transmission'" was only supported by "vague allegations about how Vizio's data collection occurs in real-time."); *Rodriguez v. Google LLC*, 2022 WL 214552, at *1-2 (N.D. Cal. 2022) (Seeborg, C.J.) ("Using the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible Google is intercepting their data in transit.").

Plaintiffs' "clause 2" claim also fails because they have not alleged the "contents or meaning" of any intercepted communication. *Brodsky*, 445 F. Supp. 3d at 127 (Section 631 prohibits only the "unauthorized access of the contents of any communication"). Under the CIPA, the "contents" of a communication are limited to "the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig.*, 750 F.3d at 1106. While Plaintiffs repeatedly aver that the allegedly transmitted information (again not connected to Plaintiffs' experiences) are "Private Communications" and therefore "content" of a communication, *see* Compl. ¶ 142, courts have held that any specifically stated data (browsing history, page views, etc.) are unprotected "record information," not content. *See Brodsky*, 445 F. Supp. 3d at 127 (text messages are content, but "usernames, passwords, and geographic location information are not"); *Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082–83 (C.D. Cal. 2021) (holding that "keystrokes, mouse clicks, pages viewed, and shipping and billing information ... [and] the date and time of the visit, the duration of the visit, Plaintiff's IP address, her location at the time of the visit, her browser type, and the operating system on her device" are not "content" under 631(a)).

*Clause 3:* Finally, because Plaintiff "failed to allege…violation of the first or second clauses, [they have] also failed to plead a violation of the third clause." *Cody v. Ring LLC*, 718 F.

Baker & Hostetler LLP
Attorneys at Law
Los Angeles

14

Supp. 3d 993, 1003 (N.D. Cal. 2024) (Martínez-Olguín, J.). As these defects cannot be cured on amendment, dismissal with prejudice is appropriate.

### b. Plaintiffs Cannot Allege Aiding Or Abetting Liability.

Even if Plaintiffs plausibly plead a violation of Clauses 2 and 3, which they do not, to state an aiding and abetting claim under CIPA Plaintiff must also plausibly allege that UMG caused Plaintiffs' browsers to store the Third Parties' cookies and to transmit information with "knowledge of the conduct that will violate the statute and a purpose of aiding, agreeing with, or employing the third party to commit those acts." *Smith v. YETI Coolers, LLC*, 2024 WL 4539578, at *4 (N.D. Cal. Oct. 21, 2024) (Lin, J.). Here, Plaintiffs do not and cannot plausibly allege that UMG knew that the ubiquitous cookie technology at issue, which was designed and offered for commercial use by reputable companies like Meta, inherently violates CIPA, and that UMG placed these technologies on their site *for the purpose of* aiding or employing these third parties to violate CIPA, as opposed to the legitimate, commercial business purposes these technologies are so clearly intended for. To the contrary, Plaintiffs acknowledge the legitimate purpose of deploying these cookies—for analytics and advertising purposes—which precludes Plaintiff from establishing the requisite intent. Compl. ¶ 24.

Plaintiffs' CIPA Section 631(a) claim should be dismissed with prejudice.

### 4. Plaintiffs' Pen Register (CIPA Section 638.51) Claim Should Be Dismissed.

The CIPA also precludes "a person…[from] install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order." Cal. Penal Code § 638.51(a). Under CIPA, a "pen register" is "a device or process that records or decodes dialing, routing, addressing, or signaling information, . . . but not the contents of a communication." Cal. Penal Code § 638.50(b). Plaintiffs claim that third-party cookies and the corresponding software code are pen register devices, but this theory fails for multiple reasons.

First, like the wiretap claim, the pen register claim is time barred under the one-year statute of limitations. *See supra*, Section IV(B)(2)(a); Compl. ¶¶ 85, 93.

///

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Second, the plain reading of section 638.51 and related sections of A.B. 929 demonstrates application to devices used to conduct telephonic surveillance by capturing outgoing telephone calls—not online cookie tracking technology. *See* RJN, Declaration of Bethany G. Lukitsch ("Lukitsch Decl."), Ex. B, Stats. 2015, Ch. 204, Sec. 2 ("A.B. 929") ("An Act to add Sections 638.50, 638.51, 638.52, and 638.53") (emph. added). Among other requirements, a court order authorizing the installation of a pen register must specify the identity of the person "in whose name...the ***telephone line"*** is to be attached, and the exact number and physical location of the "***telephone line***" to which the device would be attached. *See* Cal. Penal Code § 638.52(d)(1)-(3).

A.B. 929's legislative history further confirms that the California Legislature did not intend the statutes to extend to websites collecting IP addresses or user-agent information. The Legislative Counsel's Digest preceding the bill states that A.B. 929 "would clarify that any location information obtained... is limited to the information that can be determined from the ***telephone number***." RJN, Lukitsch Decl., Ex. B (emph. added); *see also* Ex. C, at 11 (pen registers "generally track ***incoming and outgoing telephone calls.***") (emph. added). The bill does not otherwise mention IP addresses or other data. And, given that A.B. 929 was enacted in 2015, when the internet and website tracking software were both known and widespread, Plaintiffs cannot plausibly argue that the Legislature was unaware of IP addresses or other internet communications when it passed the law. Furthermore, CIPA adopts this language from the Federal Pen Register Act, which has been interpreted to reach only "devices that are attached to a telephone line." *See e.g.*, *Application of U.S. of Am. For an Order Authorizing Use of a Cellular Tel. Digit. Analyzer*, 885 F. Supp. 197, 200 (C.D. Cal. 1995). Specifically, the *Cellular Tel. Digit. Analyzer* court opined that the specific language and references to telephones throughout the Pen Register Act "cannot be assumed to be inadvertent." *Id*. The same is true for CIPA; Section 638.51 was only meant to apply to devices that are used in telephonic surveillance to collect incoming telephone calls—not online cookies.

Third, Plaintiffs plead themselves out of a pen register claim by alleging that only "***[s]ome of the information collected***" by third-party cookies on the Website "does not constitute the content" of their communications with the Websites. *See* Compl. ¶ 157 (emph. added). The pen

16

register statute specifically requires that the information recorded or decoded is "***not the contents*** of a communication." *See* Cal. Penal Code § 638.50-53 (emph. added). As Plaintiffs claim some information collected by cookies *is* "content" of their communications, there can be no pen register claim as a matter of law. *See Segen v Rickey*, 2008 WL 590505, at *4 (N.D. Cal. Feb. 29, 2008) (Jenkins, J.) ("While pleading in the alternative is allowed, Plaintiff cannot plead contradictory facts.").

Finally, as discussed above with Plaintiffs' wiretap claims, because CIPA is a criminal statute, Plaintiff must establish scienter. *See Heiting v. Taro Pharms. USA, Inc.*, 709 F.Supp.3d 1007, 1019 (C.D. Cal. 2023) (dismissing CIPA complaint where plaintiff did "not allege facts demonstrating Defendant acted with the requisite knowledge or intent to aid and abet [a third party's] purported CIPA violation."); *see also* Cal. Penal Code § 20 (scienter); *Romero v. Securus Techs., Inc.*, 331 F.R.D. 391, 402 (S.D. Cal. 2018) (scienter is presumed in criminal statutes). Plaintiffs must allege, therefore, that UMG installed the third-party cookies and corresponding source code *with knowledge and intent* that the cookies would misfire and/or *illegally* collect information about Plaintiffs. *See Heiting*, 709 F.Supp.3d at 1019. Here, Plaintiffs have not and cannot allege that UMG had any intent to engage in or further any third party's criminal activity, and their failure to do so dooms their CIPA claim.

### 5. The Common-Law Fraud, Deceit/Misrepresentation Claim Should Be Dismissed.

In California, the elements of a cause of action for fraud are: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *In re Facebook Priv. Litig.*, 791 F. Supp. 2d 705, 717 (N.D. Cal. 2011), *aff'd,* 572 F. App'x 494 (9th Cir. 2014) (citing *Engalla v. Permanente Med. Grp.*, 15 Cal. 4th 951, 974 (1997)). As discussed in detail above, Plaintiffs have failed to plead any behavior with respect to their own experience, knowledge by UMG of any errant or unintended collection of data and/or portions of the incorporated Privacy Policy and cookie banners supporting any claimed misrepresentation or fraud by UMG. *See supra*, Section IV(A); *see also U.S. v. Ritchie,* 342 F.3d 903, 908 (9th Cir. 2003) (a

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

district court may consider certain materials, such as documents incorporated by reference in the complaint, without converting the motion to dismiss into a motion for summary judgment). Nor have Plaintiffs alleged actual reliance, knowledge by UMG or damage with specificity. *See supra*, Section IV(B)(1). Plaintiffs' "formulaic recitation of the elements" of fraud—knowledge of falsity, intent to defraud, and induced reliance—lack factual support and cannot surmount the *Twombly/Iqbal* standard, let alone the heightened pleading standard under Rule 9(b). *See Twombly*, 550 U.S. at 555; Compl ¶ 165-168. Plaintiffs' fraud claim thus should be dismissed. Finally, Plaintiff Wiley does not plead facts to place her within the three-year statute of limitations. *See* Cal. Civ. Code § 338(d); Compl. ¶ 93.

### 6.    Plaintiff's Unjust Enrichment Claim is Barred as a Matter of Law.

Plaintiff's claim for unjust enrichment is improper and must be dismissed with prejudice, because "in California, there is not a standalone cause of action for unjust enrichment, which is synonymous with restitution." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (quotations omitted); *Hooked Media Grp. v. Apple Inc.*, 55 Cal. App. 5th 323, 336 (2020) ("California does not recognize a cause of action for unjust enrichment").

Even if this cause of action were read to plead restitution on a quasi-contract theory, where "defendant has been unjustly conferred a benefit through mistake, fraud, coercion, or request," *Astiana*, 783 F.3d at 762, such action "cannot lie where a valid express contract covering the same subject matter exists between the parties." *Gerlinger v. Amazon.Com, Inc.*, 311 F. Supp. 2d 838, 856 (N.D. Cal. 2004) (Patel, J.). That is precisely the case here. *Compare* Compl. ¶ 176 (unjust enrichment claim based on "misrepresentations" about "Cookie Choices") *with id.* ¶ 186 (contract claim based on "cookie choice" "promise"). While UMG asserts there is no contract with Plaintiffs, *infra* Section IV(B)(7), Plaintiffs cannot maintain both claims "unless [they] also plead[] facts suggesting that the contract may be unenforceable or invalid," *Saroya v. Univ. of the Pac.*, 503 F. Supp. 3d 986, 998 (N.D. Cal. 2020) (Davila, J.), which they fail to do here.

In any event, there can be no claim for restitution "when a plaintiff fails to sufficiently plead an actionable misrepresentation or omission," *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1120 (N.D. Cal. 2016) (Corley, M.J.) (cleaned up), which Plaintiffs cannot allege. *See*

Section IV(A). "[W]ithout the[se] other claims, plaintiffs' claim for unjust enrichment fails." *Hoey v. Sony Elecs. Inc.*, 515 F. Supp. 2d 1099, 1106 (N.D. Cal. 2007) (Whyte, J.).

> **7.    Plaintiffs' Breach of Contract and Covenant of Good Faith and Fair Dealing Claims Should Be Dismissed Because There Is No Contract.**

It is axiomatic that to plead a contract claim, the plaintiff must plead the existence of a contract between the parties, its material terms, and a breach of the contract by the defendant. *See In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 801 (N.D. Cal. 2019) (Chhabria, J.). But there is no contract here. These causes of action rely on UMG's Website's Privacy Policy, but courts have held similar privacy policies do not constitute a contract where, as here, they are merely a broad statement of policy. *See In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d at 611 (affirming grant of motion to dismiss breach of contract claim on basis that privacy and data use policies were not contracts because they merely provided information to website users concerning defendant's use of information and how users could control that information, but did not promise that operator would not track logged-out user data when users visited third-party websites); *Gardner v. Health Net, Inc.*, 2010 WL 11597979, at *5-6 (C.D. Cal. Aug. 12, 2010) (granting motion to dismiss breach of contract claim alleged on website's privacy policy). The same result is counseled here.

Furthermore, "where there is no breach of contract, there can be no breach of the implied covenant." *Tran v. Kansas City Life Ins. Co.*, 228 F. Supp. 3d 1068, 1079 (C.D. Cal. 2017). And even if there were a contract, the implied covenant claim must still be dismissed because it is based on the same conduct as the breach of contract claim. *See In re Facebook Tracking*, 956 F.3d at 611 (affirming the dismissal of plaintiffs' claim for breach of the implied covenant of good faith and fair dealing because "as pleaded, the allegation did not to go beyond the breach of contract theories asserted by [p]laintiffs and were thus properly dismissed") (citing *Careau & Co. V. Sec. Pac. Bus. Credit, Inc*., 222 Cal. App. 3d 1371, 1395 (1990)). Here, the two claims rely on the same allegedly injurious conduct, and the implied covenant claim must be dismissed with prejudice. *Compare* Compl. ¶¶ 185-187, 189-190, *with id.* ¶¶ 193-195, 201-202.

///

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

### 8.    Plaintiffs' Trespass to Chattels Claim Should Be Dismissed.

Under California law, a trespass to chattels claim exists only "where an intentional interference with the possession of personal property causes injury." *Best Carpet Values, Inc. v. Google, LLC*, 90 F.4th 962, 968 (9th Cir. 2024) (quoting *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1350–51 (2003)). "[I]n order to prevail on a claim for trespass based on accessing a computer system, the plaintiff must establish: (1) defendant intentionally and without authorization interfered with plaintiff's possessory interest in the computer system; and (2) defendant's unauthorized use proximately resulted in damage." *Bui-Ford v. Tesla, Inc.*, 2024 WL 694485, at *7 (N.D. Cal. Feb. 20, 2024) (Tigar, J.) (cit. omitted). A claim for trespass to chattels "does not encompass, and should not be extended to encompass, an electronic communication that neither damages the recipient computer system nor impairs its functioning." *Hamidi*, 30 Cal. 4th at 1347, 1353; s*ee also In re iPhone*, 844 F. Supp. 2d at 1069 (the sort of harm required for a trespass claim is a "significant reduction in service constituting an interference with the intended functioning of the system."). The claim has a three-year statute of limitations, Cal. Civ. Code § 338 (c), and Plaintiff Wiley has not pleaded herself within it. Compl. ¶ 93.

Here, Plaintiffs' trespass to chattels claim alleges that UMG "intentionally caused third party software code to be stored" on Plaintiffs' devices, which "interfered" with Plaintiffs' ability to use their devices. Compl. ¶ 207. Such conclusory allegations of "intent," however, are belied by the allegation that cookies were placed on Plaintiffs' browsers automatically. *Id.* ¶ 30 ("Defendant failed to prevent cookies from being transmitted…"). Plaintiffs do not otherwise allege what their browser settings were, what cookies attached to *their devices* (something they should know if it truly interfered) and thus cannot sustain a claim that UMG placed cookies on their device intentionally without authorization. Courts do not have to "accept as true allegations . . . that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell,* 266 F.3d at 988.

Furthermore, as set forth in Section IV(B)(1), Plaintiffs fail to allege *any* actual damage or impaired function of their unidentified devices. As Plaintiffs do not, and cannot, plead sufficient

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

facts to show intentional interference with their computing devices' functioning, Plaintiffs' trespass to chattels claim should be dismissed.

### C. Several Allegations Should Be Stricken Under Rule 12(f).

Numerous allegations in the Complaint also should be stricken under Rule 12(f), which authorizes a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).

### 1.   Impertinent and Immaterial Allegations Should be Stricken.

A Rule 12(f) order properly avoids spending time and money litigating spurious issues by striking allegations that are, *inter alia*, "impertinent" or "immaterial." *Fantasy, Inc. v. Fogarty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994). Matter is immaterial if it has no essential or important relationship to the claim for relief pleaded, and impertinent if it does not pertain and is not necessary to the issues in question in the case. *Id.*

All screenshots incorporated in the Complaint and references to the screenshots should be stricken as immaterial and impertinent, or, alternatively, all claims related to them should be dismissed under Rule 12(b)(6). *See* Compl. ¶¶ 31-32, 39-42, 50, 53, 62, 65, 68. They are undated, so not within any statute of limitations applicable to this case. They are not taken by either Plaintiff (instead, the Complaint reveals an unidentified "website user" took them), and there are no allegations these images are of either Plaintiffs' device, web browser, Website pages visited, cookies allegedly placed, or information allegedly shared.  In short, these screenshots have nothing to do with Plaintiffs' own alleged experiences, so are properly stricken as immaterial and impertinent. *See O'Shea v. Littleton*, 414 U.S. 488, 494 ("if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.").

Furthermore, in paragraph 1, footnote 1, Plaintiffs define "Websites" as *at least* 39 different websites operated by UMG and purport to bring claims related to all of them. *See e.g.,* Compl. ¶ 81-82, 84. Yet the Plaintiffs allege they have visited only eight of these websites, Compl. ¶¶ 85, 93, and the Complaint itself provides the text and images reflecting the cookie banner of *only one*—postmalone.com. This Court should strike paragraph 1, footnote 1 and all allegations relating

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

to websites other than postmalone.com (or dismiss those claims), as Plaintiffs fail to allege any facts regarding their experiences with any other website or those websites' privacy banners or allegedly deployed cookies. Or, at a minimum, strike allegations relating to the 33 websites neither Plaintiff alleges visiting. *See Kane v. Chobani, Inc.*, 2013 WL 5289253, at *8 (N.D. Cal. Sept. 19, 2013) (Koh, J.) (dismissing claims "based on Defendant's statements on its website" where plaintiffs did "not allege that they ever viewed Defendant's website").

### 2.    Class Allegations Should be Stricken.

The Supreme Court has acknowledged that in certain cases the viability of a proposed class may be determined at the pleading stage. *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982); *see, e.g., Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 998 (N.D. Cal. 2009) (Fogel, J.) (granting motion to strike class allegations); *Hospevian v. Apple, Inc.*, 2009 WL 5069144, at *6 (N.D. Cal. Dec. 17, 2009) (same); *Brazil v. Dell Inc.*, 585 F. Supp. 2d 1158,  (N.D. Cal. 2008) (Whyte, J.) (same). Where, as here, a complaint demonstrates on its face that a class action cannot be maintained, courts have granted motions to strike class allegations in order "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sanders*, 672 F. Supp. 2d. at 990–91. While some courts have noted that granting a motion to strike class allegations "is only appropriate where the defendant presents an argument that completely precludes certification of any class, not just the class currently defined in the complaint," *Rice-Sherman v. Big Heart Pet Brands, Inc.*, 2020 WL 1245130, at *15 (N.D. Cal. Mar. 16, 2020) (Orrick, J.); *see Huynh v. Jabil Inc.*, 2023 WL 1802417, at *7 (N.D. Cal. Feb. 7, 2023) (same), the class allegations in the Complaint here are precisely the type that demand immediate scrutiny at the pleading stage.

Plaintiffs' purported Class, defined as "all persons who browsed the Websites in the State of California after clicking the 'Cookie Choices' link and declined cookies in the cookie consent preferences window within the four years preceding the filing of this Complaint (the 'Class Period')" (Compl. ¶ 101), is patently overbroad and necessarily riddled with individual inquiry and self-identification. First, perhaps in an effort to avoid a fail-safe class definition, it has no requirement that after a class member declined cookies, the cookies continued to fire and collect

and transmit private information to Third Parties. But even this single inquiry shows the insurmountable hurdles of establishing a class that could possibly survive requirements of commonality and predominance—any visitor's individual location (e.g., California) cannot be determined by objective means, website cookies are transient, individual browsers, device settings and cache-clearing practices vary, individual user experiences following any cookie selection will widely vary resulting in an infinite combination of website/browsing/and cookie action, to name a few.  Put simply, the proposed class could never be proven in any way other than self-serving say-so and individual device examination.[5]

Furthermore, the Class Period extends back four years prior to the filing of the Complaint on April 4, 2025, *id.*, based on the breach of contract and implied covenant causes of action which have a four-year statute of limitations. *See* Cal. Civ. Proc. Code § 337. If the Court grants dismissal of these causes of action, the remaining causes of actions have a statute of limitations of three years at most and the class period should be stricken as overbroad. *See e.g., Brodsky*, 445 F. Supp. 3d at 134 (one-year for CIPA); *Brown*, 525 F. Supp. 3d at 1049 (two years for false light and intrusion claims) (citing Cal. Civ. Proc. Code § 335.1); Cal. Civ. Proc. Code § 338 (c), (d) (three years for trespass to chattels and fraud).

## V.   **CONCLUSION**

Plaintiffs' Complaint suffers from a host of incurable defects.  UMG respectfully requests that Plaintiff's Complaint be dismissed in its entirety with prejudice or, in the alternative, that certain allegations be dismissed and/or stricken.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

---

[5] Cookie banners, including the one employed by UMG, typically function by deploying a cookie to the user's browser associated with the user's selection choice that is recognized in subsequent visits to the same website, by the same device on the same browser. This cookie can be cleared like any other cookie if a user clears its browser's cache.

23

Dated:  June 6, 2025

Respectfully submitted,
BAKER & HOSTETLER LLP


By:    */s/ Bethany G. Lukitsch*
       Bethany G. Lukitsch
       Victoria L. Weatherford
       Kamran B. Ahmadian
       Alexandra N. Rahimi

*Attorneys for Defendant*
UNIVERSAL MUSIC GROUP, INC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

24