**BAKER & HOSTETLER LLP**
Bethany G. Lukitsch (SBN 314376)
*blukitsch@bakerlaw.com*
Kamran B. Ahmadian (SBN 314566)
*kahmadian@bakerlaw.com*
Alexandra Rahimi (SBN 340253)
*arahimi@bakerlaw.com*
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067
Telephone: 310.820.8800
Facsimile: 310.820.8859

**BAKER & HOSTETLER LLP**
Victoria L. Weatherford (SBN 267499)
vweatherford@bakerlaw.com
600 Montgomery Street, Suite 3100
San Francisco, CA 94111
Telephone: 415.659.2600
Facsimile: 415.659.2601

*Attorneys for Defendant*
UNIVERSAL MUSIC GROUP, INC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

VISHAL SHAH and CHRISTINE WILEY, individually, on behalf of themselves, the general public, and those similarly situated,

Plaintiffs,

v.

UNIVERSAL MUSIC GROUP, INC.

Defendant.

CASE No.: 5:25-cv-03095-PCP

[*Assigned to Hon. Casey Pitts*]

**DEFENDANT'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**

*[Concurrently Filed with Notice of Motion and Motion to Dismiss; Declaration of Sheryl Gold; and Declaration of Bethany G. Lukitsch; and Request for Judicial Notice]*

**Date**: August 21, 2025
**Time**: 10:00 a.m.
**Dept.**: Courtroom 8, 4th Floor

**Action Filed:** April 4, 2025

**TO THE HONORABLE COURT, AND TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that pursuant to Federal Rule of Evidence 201 and in connection with the concurrently filed Motion to Dismiss, Defendant Universal Music Group, Inc.[1] ("UMG") by and through its undersigned counsel, will, and hereby does, respectfully request that the Court take judicial notice of the following materials in connection with UMG's Motion to Dismiss the Class Action Complaint ("Complaint") filed by Plaintiffs Vishal Shah and Christine Wiley (collectively, "Plaintiffs"):

1. Attached as **Exhibit A** hereto is a true and correct copy of UMG's Privacy Policy, effective January 1, 2023. *See also* Declaration of Sheryl Gold. This version (accessible from the Wayback Machine on May 28, 2025) was available on UMG's website at https://privacy.umusic.com/ where the current version also may be accessed. UMG is unaware of any factual dispute as to the authenticity of this document, which is publicly available, and is incorporated by reference in Plaintiffs' Complaint. *See* Compl., ¶¶ 23-26, fn.2, section C, ¶¶ 185-186, and 193-194; Fed. R. Evid. 201(b).

2. Attached as **Exhibit B** hereto is a true and correct copy of California Assembly Bill No. 929, California 2015-2016 Regular Session. *See* Declaration of Bethany G. Lukitsch ("Lukitsch Decl.").

3. Attached as **Exhibit C** hereto is a true and correct copy of the Senate Committee on Public Safety Analysis of California Assembly Bill No. 929, California 2016-2016 Regular Session. *See* Lukitsch Decl.

## I. ARGUMENT

Federal Rule of Evidence 201(b) provides that a judicially noticed fact must be one "not subject to reasonable dispute" because it is either (1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot be readily questioned. Fed. R. Evid. 201(b). Courts have shown a willingness to take judicial notice of privacy policies. "[W]ebsites and their contents may be proper

[1] As stated in its Motion to Dismiss, Universal Music Group, Inc. is not the proper party to this lawsuit. The proper UMG entity is Universal Music Investments, Inc.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

subjects for judicial notice" provided that the party submits a copy of the relevant webpage to the court." *Lakes v. Ubisoft, Inc.*, 2025 WL 1036639, at *3 (N.D. Cal. Apr. 2, 2025) (Thompson, J.) (granting judicial notice of documents and screenshots publicly available on Defendant's website including Defendant's "Privacy Policy,[] Cookies Settings, []Website Cookies Banner and related screens, as well as screens showing the account creation and purchase process"); *see also D'Angelo v. FCA US, LLC*, 726 F.Supp.3d 1179, 1190 (S.D. Cal. 2024) (in class action by website users against website operator alleging violation of the California Invasion of Privacy Act, court took judicial notice of two versions of website's privacy policy, screenshots of website's homepage and initial cookie disclosure, and screenshots of website's chat feature icon and chat feature initial prompt, holding that existence of privacy policies and webpages were judicially noticeable facts since they appeared on publicly available websites and their authenticity could not be reasonably questioned). Therefore, judicial notice **Exhibit A** is proper because it is a privacy policy that is publicly available and whose authenticity is not subject to reasonable dispute. Fed. R. Evid. 201(b)(2).

In ruling on a Motion to Dismiss, a court may consider documents attached to the complaint, documents incorporated by reference in a complaint, or documents subject to judicial notice. *Evans v. McCoy-Harris*, 2019 WL 1002512, at *1 (C.D. Cal. Jan. 4, 2019) (citing *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003)); *see also In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1051 (9th Cir. 2014), cert. denied sub nom. *Cohen v. Nvidia Corp.*, 135 S. Ct. 2349 (2015). The Court may "consider documents that are incorporated by reference but not physically attached to the complaint if they are central to plaintiffs' claim and no party questions their authenticity." *Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 882 (C.D. Cal. 2013) (citing *Marder v. Lipez*, 450 F.3d 445, 448 (9th Cir. 2006); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (taking judicial notice of documents incorporated by reference in plaintiff's operative complaint when authenticity not questioned).

Furthermore, a court "may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment." *Evo Brands, LLC v. Al Khalifa Grp. LLC*, 657 F. Supp. 3d 1312, 1321 (C.D. Cal. 2023) (citing Fed. R. Evid. 201).

Accordingly, courts have shown willingness to take judicial notice of California Assembly Bills as "public legislative documents" that are "clearly noticeable." *Hoffman v. Life Ins. Co. of the Sw.*, 740 F. Supp. 3d 918, 924 (N.D. Cal. 2024) (Pitts, J.) (granting request for judicial notice); *Little Woods Mobile Villa LLC v. City of Petaluma*, 736 F. Supp. 3d 757, 765 (N.D. Cal. 2024) (Breyer, J.) (same). Courts have also shown willingness to take judicial notice of legislative history reports. *Perkins v. LinkedIn Corp.*, 53 F. Supp. 3d 1222, 1241 (N.D. Cal. 2014) (Koh, J.) ("Proper subjects of judicial notice when ruling on a motion to dismiss include legislative history reports"); *Anderson v. Holder*, 673 F.3d 1089, 1094 n.1 (9th Cir. 2012) ("Legislative history is properly a subject of judicial notice."). Therefore, judicial notice of **Exhibit B and C** is proper as each document is a public legislative record whose authenticity is not subject to reasonable dispute. Fed. R. Evid. 201(b)(2).

## II. CONCLUSION

For the foregoing reasons, UMG respectfully requests that the Court take judicial notice of **Exhibits A–C** attached to this request for judicial notice.

Dated: June 6, 2025,

Respectfully submitted,

**BAKER & HOSTETLER LLP**

By: /s/ Bethany G. Lukitsch
BETHANY G. LUKITSCH
VICOTRIA L. WEATHERFORD
KAMARAN B. AHMADIAN
ALEXANDRA N. RAHIMI

*Attorneys for Defendant*
UNIVERSAL MUSIC GROUP, INC.

# EXHIBIT A

*Version: 3.0 Global*

UNIVERSAL

UNIVERSAL MUSIC GROUP

# Privacy Policy

Effective Date: January 1, 2023

Universal Music Group is the world leader in music-based entertainment. We are the home for music's greatest artists, innovators, and entrepreneurs. As digital technology refashions the world, our unmatched commitment to lead by developing new services, platforms, and business models for the delivery of music and related content empowers innovators and allows new commercial and artistic opportunities to flourish.

As part of this mission, Universal Music Group operates websites, applications, stores, and other services (which we refer to in this privacy policy as "Apps") to help our artists stay connected with fans in new and exciting ways.

This privacy policy describes Universal Music Group's data practices, including the collection, use, and sharing of data through Apps that link to this privacy policy, along with the choices and rights you have to control those data practices.

## WHO WE ARE

Apps that link to this privacy policy are operated by **Universal Music Investments, Inc.,** located at 2220 Colorado Ave, Santa Monica, CA 90404. As used in this policy, "UMG," "we," and "our" refers to this entity, who acts as a data controller and is responsible for the processing of personal data by the Apps under applicable privacy and data protection laws.

Other entities in the Universal Music Group family of companies may receive or process data in connection with the operation of the Apps, including **UMG Commercial Services, Inc.**, **UMG Recordings, Inc.**, and **UMG Recordings Services, Inc.**, each of which is also located at 2220 Colorado Ave, Santa Monica, CA 90404. Where applicable, each of these entities separately makes the disclosures in this privacy policy.

Apps may be operated on behalf of artists and/or partners who may process personal data in connection with the Apps. In such cases we will disclose the relevant third parties on the Apps and/or at the point of data collection.

## CONTACT US

Questions or comments about this privacy policy, our data practices, or requests regarding your privacy rights may be submitted through our **Privacy Request Form** by **clicking here**. We are only able to respond to requests related to our data practices through this form.

**ALL NON-PRIVACY QUESTIONS**: Please see this FAQ regarding how to contact UMG with questions or requests not related to our privacy practices or your privacy rights.

You may also contact UMG's Data Protection Officer, by writing to Universal Music Group (ATTN: "Data Protection Officer"), 2220 Colorado Ave, Santa Monica, CA 90404 USA.

## INFORMATION WE COLLECT

In our operation of the Apps, we collect the following categories of data:

| Category of information | What may be collected | How it is collected, where applicable |
|---|---|---|
| Information you choose to provide via the App or through other interactions with UMG, such as e-mail, social media, SMS, telephone, or other methods | • your name,<br>• country of residence,<br>• e-mail address,<br>• phone number,<br>• login information, including certain social media profile information if you login with a social media account,<br>• gender,<br>• age or date of birth,<br>• payment card information,<br>• billing and/or shipping address,<br>• clothing sizes or similar physical descriptions,<br>• personal description,<br>• photographs or images,<br>• comments. | • Forms you fill out on our App, including subscribing to direct marketing, creating an account, searches, or linking a social media account,<br>• Correspondence with us (e-mails, phone transcripts or otherwise);<br>• Purchases or orders placed on the App;<br>• Participation in forums, chats, or other social media functions on the App;<br>• Entering a competition, promotion, or survey;<br>• Reporting a problem on the App or requesting support. |
| Information collected through your use of an App | • IP address and network information,<br>• location (based on IP lookup),<br>• user agent string including browser and OS version,<br>• language and time zone,<br>• identifiers set by cookies or similar tracking information (see cookies disclosure below),<br>• unique device identifiers and hardware version,<br>• page response times,<br>• download or content errors,<br>• page interaction information (such as scrolling, | Visiting our App or interacting with us |

| | | |
|---|---|---|
| | clicks, and mouse-overs, length of visit, pages viewed),<br>• methods used to browse away from the page. | |
| Information collected from third parties | • name,<br>• age or birthdate,<br>• address,<br>• phone number,<br>• gender,<br>• household income,<br>• device OS,<br>• brand affinities,<br>• consumer profile category,<br>• music intent scores,<br>• music concert spend category,<br>• music genre interests. | Consistent with applicable laws, we may match and supplement information you provide, such as your email address or phone number, with data held by third party data providers or data brokers. |

## HOW YOUR INFORMATION MAY BE USED

We may use information we collect to:

- Respond requests and/or queries, including customer support queries,
- Fulfil orders, process payments, and provide order-related updates,
- Send requested marketing communications via email, SMS, or direct messages,
- Advertise our products or the products of third parties that we believe may be of interest,
- Create segments of users with similar features for ad targeting or seeding lookalike audiences,
- Operate, measure, and audit online advertisements,
- Build user profiles to assist us in understanding your interests, create marketing or advertising segments, and predict likely sales, marketing, or advertising outcomes,
- Train AI or machine learning models that analyze or predict sales, marketing, or advertising outcomes,
- Personalize and improve our Apps, products, and services,
- Administer promotions, contests, or sweepstakes,
- Operate and administer our Apps, including troubleshooting, data analysis, testing, research, statistics, and other internal operations,
- Manage your access to our Apps, including notifying you of changes to the Apps,
- Analyze usage of our Apps,
- Secure our Apps and prevent fraud or other illegal activities,
- Resolve disputes and/or enforce our agreements,
- Comply with legal and regulatory obligations.

## HOW YOUR INFORMATION MAY BE SHARED

In compliance with applicable laws, we may share information about you with third parties to facilitate the uses described above, including:

- Our affiliates and joint venture partners that we have now or may have in the future,
- Our business partners, suppliers, agents, and sub-contractors who provide services on our behalf;
- Relevant UMG artists and/or their representatives,
- With other users where you leave comments or otherwise contribute content to an App,

- Advertisers, advertising networks and social networks,
- As part of an actual or potential corporate sale, merger, or acquisition, or other transfer of all or part of UMG,
- Pursuant to a subpoena, court order, governmental inquiry, or other legal process or as otherwise required by law, to protect our rights or the rights of third parties, or to protect the safety or security of any person or entity, or
- With your consent or as otherwise disclosed at the time of data collection or sharing.

## STORAGE AND RETENTION OF INFORMATION

We will retain the information we collect in accordance with applicable laws and as reasonably necessary for our processing purposes set out under this privacy policy, including resolution of disputes, enforcement of agreements, securing the Apps, and to comply with our legal obligations. When personal data is no longer necessary for our purposes we will delete or deidentify the data.

We will also take steps to ensure that the information we collect is treated securely and in accordance with this Privacy Policy. We have put in place technical and organisational procedures designed to safeguard the information we collect.

Unfortunately, the transmission of information via the Internet is not completely secure. Although we will do our best to protect the information we collect, we cannot guarantee its security.

## DIGITAL ADVERTISING

We use third party partners to enable targeted advertising on third-party social media platforms, websites, and mobile apps. These companies collect information through our Apps to target users and serve ads. Some of these ads may be personalized, meaning that these ads are intended to be relevant to you based on information the companies collect or receive about your use of our App and third-party sites and apps over time, including through the use of cookies and other tracking technologies.

Visit the DAA Webchoices tool at www.aboutads.info to learn more about targeted advertising and how to opt out of targeted advertising by companies participating in the DAA self-regulatory program. If you delete your cookies or use a different browser or mobile device, you may need to renew your opt-out choices exercised through the DAA Webchoices tool.

To opt-out of targeted advertising in mobile apps by companies participating in the DAA's AppChoices program, you can download that app onto your device from https://youradchoices.com/appchoices. You can also limit data collection and use by third parties for targeted advertising in your mobile device settings, where available.
Note that electing to opt out will not stop advertising from appearing in your browser or applications. It may make the ads you see less relevant to your interests.

## CHILDREN

Our apps are not directed toward children (as defined by local law) nor does UMG knowingly collect information from children (as defined by local law) without parental consent except where in compliance with applicable laws.

## YOUR RIGHTS

You may have certain rights regarding our processing of personal data about you. These rights may include access to, rectification, erasure, and/or portability of your personal data. You can exercise these rights by contacting us as described in the "Contact" section. We may take steps to verify your identity before completing your request. Our verification measures vary based on the risk to the individual and may involve confirming access to the relevant email account, providing a government-issued ID or other identification documents, or providing other account details or information that indicates a valid request.

You may also be entitled, in accordance with applicable law, to lodge a complaint with a supervisory authority if you consider that our processing of your personal data infringes applicable law.

Specific information regarding rights related to data processing of European data and personal data about residents of California, Colorado, Virginia, Connecticut, and Utah can be found on our US State and European Rights page.

## CHANGES TO OUR PRIVACY POLICY

Any material changes we may make to our privacy policy in the future will be posted here. Please check back frequently to see any updates or changes to our privacy policy.

## COOKIES

Our Apps use cookies and other similar technologies to improve your experience and support targeted advertising. For the purpose of this Cookies Policy, cookies, and other similar technologies (like scripts, plug-ins, tags, device fingerprints, Local Stored Objects, beacons, and pixels) are all referred to as "cookies."

You can find more information about the cookies and other tracking technologies we use, the purposes for which we use them, and make certain choices about cookies through the cookie choices tools available on our Apps.

Most internet browsers are automatically set up to accept cookies. However, if you want to refuse or delete any cookies (or similar technologies), please refer to the help and support area on your internet browser for instructions on how to block or delete cookies. Please note you may not be able to take advantage of all the features of our App, including certain personalised features, if you delete or disable cookies.

For more information on managing cookies, please go to www.allaboutcookies.org, or visit www.youronlinechoices.eu which has further information about behavioural advertising and online privacy.

# EXHIBIT B

**Assembly Bill No. 929**

CHAPTER 204

An act to add Sections 638.50, 638.51, 638.52, and 638.53 to the Penal Code, relating to privacy.

[Approved by Governor August 13, 2015. Filed with Secretary of State August 13, 2015.]

LEGISLATIVE COUNSEL'S DIGEST

AB 929, Chau. Pen registers: authorized use.

Existing law authorizes the Attorney General or a district attorney to make a written application to a judge of a superior court for an order permitting the interception of wire communication and electronic communication, as defined. Existing law permits an application to be made informally and granted orally if an emergency situation exists, and other factors are present. Existing law conditions the granting of an oral approval on the filing of a written application by midnight of the second full court day after the oral approval is made. Existing law prohibits a communication interception from lasting for longer than 30 days. Existing law permits an extension of the original order, not to exceed 30 days, upon a showing that there is continued probable cause that the information sought is likely to be obtained under the extension.

This bill would prohibit a person, other than a provider of electronic or wire communication service for specified purposes, from installing or using a pen register or a trap and trace device, as defined. The bill would authorize a peace officer to make a written application to a magistrate for an order permitting the installation and use of a pen register or a trap and trace device. The bill would require the magistrate to enter an ex parte order authorizing the installation and use of a pen register or a trap and trace device only in specified circumstances and would permit the magistrate to question the peace officer pertaining to the need for the information. The bill would also permit an application to be made informally and granted orally if an emergency situation exists, and other factors are present. The bill would condition the grant of an oral approval on the filing of a written application by midnight of the second full court day after the pen register or trap and trace device is installed. The bill would prohibit the installation and use of a pen register or trap and trace device for longer than 60 days. The bill would permit an extension of the original order, not to exceed 60 days, upon a showing that there is continued probable cause that the information sought is likely to be obtained under the extension. The bill would clarify that any location information obtained by a pen register or a track and trace device is limited to the information that can be determined from the telephone number.

The bill would make the prohibited installation or use of a pen register or a trap and trace device punishable by a fine not exceeding $2,500, or by imprisonment in the county jail not exceeding 1 year, or by imprisonment in state prison for offenders with specified prior convictions, or by both that fine and imprisonment. By creating a new crime, the bill would impose a state-mandated local program.

The California Constitution requires the state to reimburse local agencies and school districts for certain costs mandated by the state. Statutory provisions establish procedures for making that reimbursement.

This bill would provide that no reimbursement is required by this act for a specified reason.

*The people of the State of California do enact as follows:*

SECTION 1. Section 638.50 is added to the Penal Code, to read:

638.50. For purposes of this chapter, the following terms have the following meanings:

(a) “Wire communication” and “electronic communication” have the meanings set forth in subdivision (a) of Section 629.51.

(b) “Pen register” means a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication. “Pen register” does not include a device or process used by a provider or customer of a wire or electronic communication service for billing, or recording as an incident to billing, for communications services provided by such provider, or a device or process used by a provider or customer of a wire communication service for cost accounting or other similar purposes in the ordinary course of its business.

(c) “Trap and trace device” means a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication.

SEC. 2. Section 638.51 is added to the Penal Code, to read:

638.51. (a) Except as provided in subdivision (b), a person may not install or use a pen register or a trap and trace device without first obtaining a court order pursuant to Section 638.52 or 638.53.

(b) A provider of electronic or wire communication service may use a pen register or a trap and trace device for any of the following purposes:

(1) To operate, maintain, and test a wire or electronic communication service.

(2) To protect the rights or property of the provider.

(3) To protect users of the service from abuse of service or unlawful use of service.

(4) To record the fact that a wire or electronic communication was initiated or completed to protect the provider, another provider furnishing service toward the completion of the wire communication, or a user of that service, from fraudulent, unlawful, or abusive use of service.

(5) If the consent of the user of that service has been obtained.

(c) A violation of this section is punishable by a fine not exceeding two thousand five hundred dollars ($2,500), or by imprisonment in the county jail not exceeding one year, or by imprisonment pursuant to subdivision (h) of Section 1170, or by both that fine and imprisonment.

(d) A good faith reliance on an order issued pursuant to Section 638.52, or an authorization made pursuant to Section 638.53, is a complete defense to a civil or criminal action brought under this section or under this chapter.

SEC. 3. Section 638.52 is added to the Penal Code, to read:

638.52. (a) A peace officer may make an application to a magistrate for an order or an extension of an order authorizing or approving the installation and use of a pen register or a trap and trace device. The application shall be in writing under oath or equivalent affirmation, and shall include the identity of the peace officer making the application and the identity of the law enforcement agency conducting the investigation. The applicant shall certify that the information likely to be obtained is relevant to an ongoing criminal investigation and shall include a statement of the offense to which the information likely to be obtained by the pen register or trap and trace device relates.

(b) The magistrate shall enter an ex parte order authorizing the installation and use of a pen register or a trap and trace device if he or she finds that the information likely to be obtained by the installation and use of a pen register or a trap and trace device is relevant to an ongoing investigation and that there is probable cause to believe that the pen register or trap and trace device will lead to any of the following:

(1) Recovery of stolen or embezzled property.

(2) Property or things used as the means of committing a felony.

(3) Property or things in the possession of a person with the intent to use them as a means of committing a public offense, or in the possession of another to whom he or she may have delivered them for the purpose of concealing them or preventing them from being discovered.

(4) Evidence that tends to show a felony has been committed, or tends to show that a particular person has committed or is committing a felony.

(5) Evidence that tends to show that sexual exploitation of a child, in violation of Section 311.3, or possession of matter depicting sexual conduct of a person under 18 years of age, in violation of Section 311.11, has occurred or is occurring.

(6) The location of a person who is unlawfully restrained or reasonably believed to be a witness in a criminal investigation or for whose arrest there is probable cause.

(7) Evidence that tends to show a violation of Section 3700.5 of the Labor Code, or tends to show that a particular person has violated Section 3700.5 of the Labor Code.

(8) Evidence that does any of the following:

(A) Tends to show that a felony, a misdemeanor violation of the Fish and Game Code, or a misdemeanor violation of the Public Resources Code, has been committed or is being committed.

(B) Tends to show that a particular person has committed or is committing a felony, a misdemeanor violation of the Fish and Game Code, or a misdemeanor violation of the Public Resources Code.

(C) Will assist in locating an individual who has committed or is committing a felony, a misdemeanor violation of the Fish and Game Code, or a misdemeanor violation of the Public Resources Code.

(c) Information acquired solely pursuant to the authority for a pen register or a trap and trace device shall not include any information that may disclose the physical location of the subscriber, except to the extent that the location may be determined from the telephone number. Upon the request of the person seeking the pen register or trap and trace device, the magistrate may seal portions of the application pursuant to People v. Hobbs (1994) 7 Cal.4th 948, and Sections 1040, 1041, and 1042 of the Evidence Code.

(d) An order issued pursuant to subdivision (b) shall specify all of the following:

(1) The identity, if known, of the person to whom is leased or in whose name is listed the telephone line to which the pen register or trap and trace device is to be attached.

(2) The identity, if known, of the person who is the subject of the criminal investigation.

(3) The number and, if known, physical location of the telephone line to which the pen register or trap and trace device is to be attached and, in the case of a trap and trace device, the geographic limits of the trap and trace order.

(4) A statement of the offense to which the information likely to be obtained by the pen register or trap and trace device relates.

(5) The order shall direct, if the applicant has requested, the furnishing of information, facilities, and technical assistance necessary to accomplish the installation of the pen register or trap and trace device.

(e) An order issued under this section shall authorize the installation and use of a pen register or a trap and trace device for a period not to exceed 60 days.

(f) Extensions of the original order may be granted upon a new application for an order under subdivisions (a) and (b) if the officer shows that there is a continued probable cause that the information or items sought under this subdivision are likely to be obtained under the extension. The period of an extension shall not exceed 60 days.

(g) An order or extension order authorizing or approving the installation and use of a pen register or a trap and trace device shall direct that the order be sealed until otherwise ordered by the magistrate who issued the order, or a judge of the superior court, and that the person owning or leasing the line to which the pen register or trap and trace device is attached, or who has been ordered by the court to provide assistance to the applicant, not

disclose the existence of the pen register or trap and trace device or the existence of the investigation to the listed subscriber or to any other person, unless or until otherwise ordered by the magistrate or a judge of the superior court, or for compliance with Sections 1054.1 and 1054.7.

(h) Upon the presentation of an order, entered under subdivisions (b) or (f), by a peace officer authorized to install and use a pen register, a provider of wire or electronic communication service, landlord, custodian, or other person shall immediately provide the peace officer all information, facilities, and technical assistance necessary to accomplish the installation of the pen register unobtrusively and with a minimum of interference with the services provided to the party with respect to whom the installation and use is to take place, if the assistance is directed by the order.

(i) Upon the request of a peace officer authorized to receive the results of a trap and trace device, a provider of a wire or electronic communication service, landlord, custodian, or other person shall immediately install the device on the appropriate line and provide the peace officer all information, facilities, and technical assistance, including installation and operation of the device unobtrusively and with a minimum of interference with the services provided to the party with respect to whom the installation and use is to take place, if the installation and assistance is directed by the order.

(j) Unless otherwise ordered by the magistrate, the results of the pen register or trap and trace device shall be provided to the peace officer at reasonable intervals during regular business hours for the duration of the order.

(k) The magistrate, before issuing the order pursuant to subdivision (b), may examine on oath the person seeking the pen register or the trap and trace device, and any witnesses the person may produce, and shall take his or her affidavit or their affidavits in writing, and cause the affidavit or affidavits to be subscribed by the parties making them.

SEC. 4. Section 638.53 is added to the Penal Code, to read:

638.53. (a) Except as otherwise provided in this chapter, upon an oral application by a peace officer, a magistrate may grant oral approval for the installation and use of a pen register or a trap and trace device, without an order, if he or she determines all of the following:

(1) There are grounds upon which an order could be issued under Section 638.52.

(2) There is probable cause to believe that an emergency situation exists with respect to the investigation of a crime.

(3) There is probable cause to believe that a substantial danger to life or limb exists justifying the authorization for immediate installation and use of a pen register or a trap and trace device before an order authorizing the installation and use can, with due diligence, be submitted and acted upon.

(b) (1) By midnight of the second full court day after the pen register or trap and trace device is installed, a written application pursuant to Section 638.52 shall be submitted by the peace officer who made the oral application to the magistrate who orally approved the installation and use of a pen register or trap and trace device. If an order is issued pursuant to Section

638.52, the order shall also recite the time of the oral approval under subdivision (a) and shall be retroactive to the time of the original oral approval.

(2) In the absence of an authorizing order pursuant to paragraph (1), the use shall immediately terminate when the information sought is obtained, when the application for the order is denied, or by midnight of the second full court day after the pen register or trap and trace device is installed, whichever is earlier.

(c) A provider of a wire or electronic communication service, landlord, custodian, or other person who provides facilities or technical assistance pursuant to this section shall be reasonably compensated by the requesting peace officer's law enforcement agency for the reasonable expenses incurred in providing the facilities and assistance.

SEC. 5. No reimbursement is required by this act pursuant to Section 6 of Article XIII B of the California Constitution because the only costs that may be incurred by a local agency or school district will be incurred because this act creates a new crime or infraction, eliminates a crime or infraction, or changes the penalty for a crime or infraction, within the meaning of Section 17556 of the Government Code, or changes the definition of a crime within the meaning of Section 6 of Article XIII B of the California Constitution.

O

# EXHIBIT C

**SENATE COMMITTEE ON PUBLIC SAFETY**
**Senator Loni Hancock, Chair**
**2015 - 2016 Regular**

| | | | |
|---|---|---|---|
| **Bill No:** | AB 929 | **Hearing Date:** | June 16, 2015 |
| **Author:** | Chau | | |
| **Version:** | June 4, 2015 | | |
| **Urgency:** | No | **Fiscal:** | Yes |
| **Consultant:** | MK | | |

**Subject:** ***Pen Registers: Authorized Use***

## HISTORY

Source: Los Angeles County District Attorney's Office
Los Angeles County Sheriff's Department

Prior Legislation: None

Support: The Association for Los Angeles Deputy Sheriffs; California Civil Liberties Advocacy; California District Attorneys Association; The California Peace Officers' Association; The California Police Chiefs Association; California State Lodge, Fraternal Order of Police; California State Sheriffs' Association; California Statewide Law Enforcement Association; Long Beach Police Officers Association; Los Angeles County Professional Peace Officers Association; The Los Angeles Police Protective League; The Riverside Sheriffs Association; Sacramento County Deputy Sheriffs' Association; Santa Ana Police Officers Association

Opposition: None known

Assembly Floor Vote: 77 - 0

See Comment 5 for Amendments to be proposed in Committee

## PURPOSE

***The purpose of this bill is to authorize state and local law enforcement to use pen register and trap and trace devices under state law, and to permit the issuance of emergency pen registers and trap and trace devices.***

*Existing Constitutional law* provides that the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized. (U.S. Constitution 4th Amend.; California Constitution art. I, § 13.)

*Existing federal law* provides that, except as provided, no person may install or use a pen register or a trap and trace device without first obtaining a court order under section 3123 of this *title [18*

*USCS § 3123*] or under the Foreign Intelligence Surveillance Act of 1978 (*50 U.S.C. 1801* et seq.). (18 USCS § 3121.)

- The prohibition does not apply with respect to the use of a pen register or a trap and trace device by a provider of electronic or wire communication service relating to the operation, maintenance, and testing of a wire or electronic communication service or to the protection of the rights or property of such provider, or to the protection of users of that service from abuse of service or unlawful use of service; or to record the fact that a wire or electronic communication was initiated or completed in order to protect such provider, another provider furnishing service toward the completion of the wire communication, or a user of that service, from fraudulent, unlawful or abusive use of service; or where the consent of the user of that service has been obtained.

- A government agency authorized to install and use a pen register or trap and trace device under this chapter (18 USCS §§ 3121 *et seq*) or under State law shall use technology reasonably available to it that restricts the recording or decoding of electronic or other impulses to the dialing, routing, addressing, and signaling information utilized in the processing and transmitting of wire or electronic communications so as not to include the contents of any wire or electronic communications. (18 USCS § 3121 (c).)

- Whoever knowingly violates the prohibition shall be fined under this title or imprisoned not more than one year, or both. . (18 USCS § 3121 (a) & (b).)

*Existing federal law* provides that unless prohibited by state law, a state investigative or law enforcement officer may make application for an order or an extension of an order authorizing or approving the installation and use of a pen register or a trap and trace device under this chapter, in writing under oath or equivalent affirmation, to a court of competent jurisdiction of such state. (18 USCS § 3122.)

*Existing federal law* provides that an attorney for the Government, upon an application, the court shall enter an ex parte order authorizing the installation and use of a pen register or trap and trace device anywhere within the United States, if the court finds that the attorney for the Government has certified to the court that the information likely to be obtained by such installation and use is relevant to an ongoing criminal investigation. The order, upon service of that order, shall apply to any person or entity providing wire or electronic communication service in the United States whose assistance may facilitate the execution of the order. Whenever such an order is served on any person or entity not specifically named in the order, upon request of such person or entity, the attorney for the Government or law enforcement or investigative officer that is serving the order shall provide written or electronic certification that the order applies to the person or entity being served. (18 USCS § 3121 (a)(1).)

*Existing federal law* provides that a state investigative or law enforcement officer, upon an application made as specified, the court shall enter an ex parte order authorizing the installation and use of a pen register or trap and trace device within the jurisdiction of the court, if the court finds that the State law enforcement or investigative officer has certified to the court that the information likely to be obtained by such installation and use is relevant to an ongoing criminal investigation. (18 USCS § 3121 (a)(2).)

*Existing federal law* provides that where the law enforcement agency implementing an ex parte order under this subsection seeks to do so by installing and using its own pen register or trap and

trace device on a packet-switched data network of a provider of electronic communication service to the public, the agency shall ensure that a record will be maintained which will identify:

- Any officer or officers who installed the device and any officer or officers who accessed the device to obtain information from the network;
- The date and time the device was installed, the date and time the device was uninstalled, and the date, time, and duration of each time the device is accessed to obtain information;
- The configuration of the device at the time of its installation and any subsequent modification thereof; and
- Any information which has been collected by the device. (18 USCS § 3121(a)(3).)

*Existing federal law* provides to the extent that the pen register or trap and trace device can be set automatically to record this information electronically, the record shall be maintained electronically throughout the installation and use of such device. (18 USCS § 3121(a)(3).)

*Existing federal law* states that the record maintained shall be provided ex parte and under seal to the court which entered the ex parte order authorizing the installation and use of the device within 30 days after termination of the order (including any extensions thereof). (18 USCS § 3121(a)(3).)

*Existing federal law* provides that an order issued for installation of a pen register or track and trace device shall include:

- The identity, if known, of the person to whom is leased or in whose name is listed the telephone line or other facility to which the pen register or trap and trace device is to be attached or applied;
- The identity, if known, of the person who is the subject of the criminal investigation;
- The attributes of the communications to which the order applies, including the number or other identifier and, if known, the location of the telephone line or other facility to which the pen register or trap and trace device is to be attached or applied, and, in the case of an order authorizing installation and use of a trap and trace device, the geographic limits of the order; and
- A statement of the offense to which the information likely to be obtained by the pen register or trap and trace device relates; and
- Shall direct, upon the request of the applicant, the furnishing of information, facilities, and technical assistance necessary to accomplish the installation of the pen register or trap and trace device. : (18 USCS § 3121(b).)

*Existing federal law* provides that an order issued under this section shall authorize the installation and use of a pen register or a trap and trace device for a period not to exceed sixty days.

- Extensions of such an order may be granted, but only upon an application for an order and upon the judicial finding required as specified. The period of extension shall be for a period not to exceed sixty days.

- Nondisclosure of existence of pen register or a trap and trace device. An order authorizing or approving the installation and use of a pen register or a trap and trace device shall direct that the order be sealed until otherwise ordered by the court; and the person owning or leasing the line or other facility to which the pen register or a trap and

trace device is attached, or applied, or who is obligated by the order to provide assistance to the applicant, not disclose the existence of the pen register or trap and trace device or the existence of the investigation to the listed subscriber, or to any other person, unless or until otherwise ordered by the court. (18 USCS § 3121c).)

*Existing federal law* provides that notwithstanding any other provision, any investigative or law enforcement officer, specially designated by the Attorney General, the Deputy Attorney General, the Associate Attorney General, any Assistant Attorney General, any acting Assistant Attorney General, or any Deputy Assistant Attorney General, or by the principal prosecuting attorney of any state or subdivision thereof acting pursuant to a statute of that state, who reasonably determines that:

- an emergency situation exists that involves immediate danger of death or serious bodily injury to any person;
- conspiratorial activities characteristic of organized crime;
- an immediate threat to a national security interest; or
- an ongoing attack on a protected computer that constitutes a crime punishable by a term of imprisonment greater than one year; (18 USCS § 3125.)

*Existing federal law* provides that in the absence of an authorizing order, such use shall immediately terminate when the information sought is obtained, when the application for the order is denied or when forty-eight hours have lapsed since the installation of the pen register or trap and trace device, whichever is earlier. (18 USCS § 3125.)

*Existing law* defines a “search warrant” as an order in writing in the name of the People, signed by a magistrate, directed to a peace officer, commanding him or her to search for a person or persons, a thing or things, or personal property, and in the case of a thing or things or personal property, bring the same before the magistrate. (Penal Code § 1523.)

*Existing law* provides that a search warrant may be issued upon any of the following grounds:

1) When the property was stolen or embezzled;
2) When the property or things were used as the means of committing a felony;
3) When the property or things are in the possession of any person with the intent to use them as a means of committing a public offense, or in the possession of another to whom he or she may have delivered them for the purpose of concealing them or preventing them from being discovered;
4) When the property or things to be seized consist of any item or constitute any evidence that tends to show a felony has been committed, or tends to show that a particular person has committed a felony;
5) When the property or things to be seized consist of evidence that tends to show that sexual exploitation of a child, or possession of matter depicting sexual conduct of a person under the age of 18 years, has occurred or is occurring;
6) When there is a warrant to arrest a person;
7) When a provider of electronic communication service or remote computing service has records or evidence, showing that property was stolen or embezzled constituting a misdemeanor, or that property or things are in the possession of any person with the intent to use them as a means of committing a misdemeanor public offense, or in the

possession of another to whom he or she may have delivered them for the purpose of concealing them or preventing their discovery;

8) When the property to be seized includes evidence of a violation of specified Labor Code sections;
9) When the property to be seized includes a firearm or deadly weapon or any other deadly weapon at the scene of a domestic violence offense;
10) When the property to be seized includes a firearm or deadly weapon owned by a person apprehended because of his or her mental condition;
11) When the property to be seized is a firearm in possession of a person prohibited under the family code;
12) When the information to be received from the use of a tracking device under shows a specified violation of the Fish and Game Code or Public Resources Code;
13) When a sample of blood would show evidence of a DUI; or,
14) Starting January 1, 2016, when the property to be seized is a firearm owned by a person subject to a gun violence restraining order. (Penal Code § 1524(a).)

*Existing law* provides that a search warrant cannot be issued but upon probable cause, supported by affidavit, naming or describing the person to be searched or searched for, and particularly describing the property, thing, or things and the place to be searched. (Penal Code, § 1525.)

*Existing law* requires a magistrate to issue a search warrant if he or she is satisfied of the existence of the grounds of the application or that there is probable cause to believe their existence. (Pen. Code, § 1528 (a).)

*This bill* defines "pen register" as a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication. "Pen register" does not include a device or process used by a provider or customer of a wire or electronic communication service for billing, or recording as an incident to billing, for communications services provided by such provider, or a device or process used by a provider or customer of a wire communication service for cost accounting or other similar purposes in the ordinary course of its business.

*This bill* defines "trap and trace device" as a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication.

*This bill* provides that in general a person may not install or use a pen register or a trap and trace device without first obtaining a court order. However, a provider of electronic or wire communication service may use a pen register or a trap and trace device for any of the following purposes:

- To operate, maintain, and test a wire or electronic communication service.
- To protect the rights or property of the provider.
- To protect users of the service from abuse of service or unlawful use of service.

- To record the fact that a wire or electronic communication was initiated or completed to protect the provider, another provider furnishing service toward the completion of the wire communication, or a sue of that service from fraudulent, unlawful or abusive use of service.
- If the consent of the user of that service has been obtained.

*This bill* provides that illegally installing a pen register or trap and trace device is a misdemeanor with a fine of up to $2,500 and/or up to one year in prison.

*This bill* specifies that a peace officer may make an application to a magistrate for an order or an extension of an order authorizing or approving the installation and use of a pen register or a trap and trace device. The application shall be in writing under oath or equivalent affirmation, and shall include the identity of the peace officer making the application and the identity of the law enforcement agency conducting the investigation. The applicant shall certify that the information likely to be obtained is relevant to an ongoing criminal investigation and shall include a statement of the offense to which the information likely to be obtained by the pen register or trap and trace device relates.

*This bill* states that the magistrate shall enter an ex parte order authorizing the installation and use of a pen register or a trap and trace device if he or she finds that the information likely to be obtained by the installation and the use of a pen register or a trap and trace device is relevant to an ongoing investigation and the that there is probable cause to believe that the pen register or trap and trace device will lead to any of the following:

- Recovery of stolen or embezzled property
- Property or things used as the means of committing a felony.
- Property or things in the possession of a person with the intent to use them as a means of committing a public offense, or in the possession of another to whom he or she may have been delivered them for the purpose of concealing them or preventing them from being discovered.
- Evidence tends to show a felony has been committed or tends to show that a particular person has committed or is committing a felony.
- Evidence tends to show that sexual exploitation of a child or possession of a matter depicting the sexual conduct of a person under 18 years of age has occurred or is occurring.
- The location of a person who is unlawfully restrained or reasonably believed to be a witness in a criminal investigation or for whose arrest there is probable cause.
- Evidence that tends to show specified Labor Code violations.
- Evidence that does any of the following"
    - Tends to show that a felony, a misdemeanor violation of the Fish and Game Code or a misdemeanor violation of the Public Resources Code.
    - Tends to show that a particular person has committed or is committing a felony, a misdemeanor violation of the Fish and Game Code or a misdemeanor violation of the Public Resources Code.
    - Will assist in locating an individual who has committed or is committing a felony, a misdemeanor violation of the Fish and Game Code, or a misdemeanor violation of the Public Resources Code.

*This bill* provides that information acquired solely pursuant to the authority for a pen register or trap and trace device shall not include any information that may disclose the physical location of the subscriber, except to the extent that the location may be determined from the telephone number.

*This bill* provides that an order issued by a magistrate shall specify all of the following:

- The identity, if known, of the person to whom is leased or in whose name is listed the telephone line to which the pen register or trap and trace device is to be attached;
- The identity, if known, of the person who is the subject of the criminal investigation;
- The number and, if known, physical location of the telephone line to which the pen register or trap and trace device is to be attached and, in the case of a trap and trace device, the geographic limits of the trap and trace order;
- A statement of the offense to which the information likely to be obtained by the pen register or trap and trace device relates; and
- The order shall direct, if the applicant has requested, the furnishing of information, facilities, and technical assistance necessary to accomplish the installation of the pen register or trap and trace device.

*This bill* provides that an order issued under this section shall authorize the installation and use of a pen register or a trap and trace device for a period not to exceed 60 days.

*This bill* provides that extensions of the original order may be granted upon a new application for an order if the officer shows that there is a continued probable cause that the information or items sought under this subdivision are likely to be obtained under the extension. The period of an extension shall not exceed 60 days.

*This bill* provides that the magistrate, before issuing the order, may examine on oath the person seeking the warrant and any witnesses the person may produce, and shall take his or her affidavit or their affidavits in writing, and cause the affidavit or affidavits to be subscribed by the parties making them.

*This bill* provides that an order or extension order authorizing or approving the installation and use of a pen register or a trap and trace device shall direct that the order be sealed until otherwise ordered by the magistrate who issued the order, or a judge of the superior court, and that the person owning or leasing the line to which the pen register or trap and trace device is attached, or who has been ordered by the court to provide assistance to the applicant, not disclose the existence of the pen register or trap and trace device or the existence of the investigation to the listed subscriber or to any other person, unless or until otherwise ordered by the magistrate or a judge of the superior court.

*This bill* states that upon the presentation of an order issued by a magistrate for installation of a pen register or trap and trace device, by a peace officer authorized to install and use a pen register, a provider of wire or electronic communication service, landlord, custodian, or other person shall immediately provide the peace officer all information, facilities, and technical assistance necessary to accomplish the installation of the pen register unobtrusively and with a minimum of interference with the services provided to the party with respect to whom the installation and use is to take place, if the assistance is directed by the order.

*This bill* provides upon the request of a peace officer authorized to receive the results of a trap and trace device, a provider of a wire or electronic communication service, landlord, custodian, or other person shall immediately install the device on the appropriate line and provide the peace officer all information, facilities, and technical assistance, including installation and operation of the device unobtrusively and with a minimum of interference with the services provided to the party with respect to whom the installation and use is to take place, if the installation and assistance is directed by the order.

*This bill* states that unless otherwise ordered by the magistrate, the results of the pen register or trap and trace device shall be provided to the peace officer at reasonable intervals during regular business hours for the duration of the order.

*This bill* provides that the magistrate before issuing the order pursuant may examine on oath the person seeking the pen register or the trap and trace device, and any witnesses the person may produce, and shall take his or her affidavit or their affidavits in writing, and cause the affidavit or affidavits to be subscribed by the parties making them.

*This bill* provides that except as otherwise provided, upon an oral application by a peace officer, a magistrate may grant oral approval for the installation and use of a pen register or a trap and trace device, without an order, if he or she determines all of the following:

- There are grounds upon which an order could be issued under specified normal application for a pen register or trap and trace device.
- There is probable cause to believe that an emergency situation exists with respect to the investigation of a crime.
- There is probable cause to believe that a substantial danger to life or limb exists justifying the authorization for immediate installation and use of a pen register or a trap and trace device before an order authorizing the installation and use can, with due diligence, be submitted and acted upon.

*This bill* provides that by midnight of the second full court day after the pen register or trap and trace device is installed by oral application, a written application pursuant to Penal Code Section 638.52 shall be submitted by the peace officer who made the oral application to the magistrate who orally approved the installation and use of a pen register or trap and trace device. If an order is issued the order shall also recite the time of the oral approval and shall be retroactive to the time of the original oral approval.

*This bill* specifies that in the absence of an authorizing order, the use shall immediately terminate when the information sought is obtained, when the application for the order is denied, or by midnight of the second full court day after the pen register or trap and trace device is installed, whichever is earlier.

*This bill* provides that a provider of a wire or electronic communication service, landlord, custodian, or other person who provides facilities or technical assistance pursuant to this section shall be reasonably compensated by the requesting peace officer’s law enforcement agency for the reasonable expenses incurred in providing the facilities and assistance.

RECEIVERSHIP/OVERCROWDING CRISIS AGGRAVATION

For the past eight years, this Committee has scrutinized legislation referred to its jurisdiction for any potential impact on prison overcrowding. Mindful of the United States Supreme Court ruling and federal court orders relating to the state's ability to provide a constitutional level of health care to its inmate population and the related issue of prison overcrowding, this Committee has applied its "ROCA" policy as a content-neutral, provisional measure necessary to ensure that the Legislature does not erode progress in reducing prison overcrowding.

On February 10, 2014, the federal court ordered California to reduce its in-state adult institution population to 137.5% of design capacity by February 28, 2016, as follows:

- 143% of design bed capacity by June 30, 2014;
- 141.5% of design bed capacity by February 28, 2015; and,
- 137.5% of design bed capacity by February 28, 2016.

In February of this year the administration reported that as "of February 11, 2015, 112,993 inmates were housed in the State's 34 adult institutions, which amounts to 136.6% of design bed capacity, and 8,828 inmates were housed in out-of-state facilities. This current population is now below the court-ordered reduction to 137.5% of design bed capacity."( Defendants' February 2015 Status Report In Response To February 10, 2014 Order, 2:90-cv-00520 KJM DAD PC, 3-Judge Court, *Coleman v. Brown*, *Plata v. Brown* (fn. omitted).

While significant gains have been made in reducing the prison population, the state now must stabilize these advances and demonstrate to the federal court that California has in place the "durable solution" to prison overcrowding "consistently demanded" by the court. (Opinion Re: Order Granting in Part and Denying in Part Defendants' Request For Extension of December 31, 2013 Deadline, NO. 2:90-cv-0520 LKK DAD (PC), 3-Judge Court, *Coleman v. Brown*, *Plata v. Brown* (2-10-14). The Committee's consideration of bills that may impact the prison population therefore will be informed by the following questions:

- Whether a proposal erodes a measure which has contributed to reducing the prison population;
- Whether a proposal addresses a major area of public safety or criminal activity for which there is no other reasonable, appropriate remedy;
- Whether a proposal addresses a crime which is directly dangerous to the physical safety of others for which there is no other reasonably appropriate sanction;
- Whether a proposal corrects a constitutional problem or legislative drafting error; and
- Whether a proposal proposes penalties which are proportionate, and cannot be achieved through any other reasonably appropriate remedy.

## COMMENTS

### 1. Need for This Bill

According to the author:

As technology advances, criminals are becoming more and more sophisticated in their use of technology to commit crimes and avoid law enforcement. As a result, law enforcement officials have a variety of electronic tools to counter this and help them apprehend criminals in this age of rapidly changing technology.

One of the tools available to law enforcement is called a "pen register" which allows law enforcement officers to record all outgoing numbers from a particular telephone line. In addition, another tool law enforcement uses is called a "trap and trace device" which allows them to record what numbers have called a specific telephone line, i.e. all incoming phone numbers. Both pen registers and trap and trace devices do not record audio or text messages and cannot be used to obtain real-time location data on a cellular telephone. But these tools are extremely useful for law enforcement in situations such as gang and narcotic investigations.

Federal law (18 USC §3123(a)(1)) allows law enforcement agencies to use pen register and trap and trace devices, but they must obtain a court order from a judge prior to the installation of the device. However, during an emergency situation, they may use these devices without a court order if they obtain the court order within 48 hours of the use of the device. Law enforcement agencies must demonstrate that there is reasonable suspicion that the use of the device is relevant to an ongoing criminal investigation and will lead to obtaining evidence of a crime for a judge to authorize the use. Though federal law authorizes states and local law enforcement officers to use pen register and trap and trace devices by obtaining a court order first, it does not allow them to obtain an emergency order unless there is a state statute authorizing and creating a process for states and local law enforcement officers to do so.

AB 929 would authorize state and local law enforcement officers to use pen register and trap and trace devices, including during emergency situations. This bill would authorize a judge to issue a court order to install a pen register/trap and trace device upon finding that the use of a pen register/trap and trace device is relevant to an ongoing criminal investigation, and that there is probable cause to believe that the pen register or trap and trace device will lead to obtaining evidence of a crime.

This higher standard of proof (probable cause vs. reasonable suspicion) is more restrictive than under federal law and is more consistent with California law governing search warrants. The bill would prohibit the installation and use of the device for longer than 60 days, but would permit an extension if there is proof of continuing probable cause to a judge.

**2. Background on Pen Registers**

Federal law allows law enforcement agencies to use pen register and trap and trace devices, but they must obtain a court order from a judge prior to the installation of the device. However, during an emergency situation, law enforcement agencies may use these devices without a court order if they obtain the court order within 48 hours of the use of the device.
Law enforcement agencies must demonstrate that there is reasonable suspicion that the use of the device is relevant to an ongoing criminal investigation and will lead to obtaining evidence of a crime for a judge to authorize the use.

Though federal law authorizes states and local law enforcement officers to use pen registers and trap and trace devices by obtaining a court order first, it does not allow them to obtain an emergency order unless there is a state statute authorizing and creating a process for states and

local law enforcement officers to do so. To date, California does not have a state statute authorizing the use of pen registers or trap and trace devices.

Pen registers and track and trace devices generally track incoming and outgoing telephone calls. They are often utilized by law enforcement to track which people in an investigation are communicating with one another and at what times. Unlike a wiretap authorization, pen registers and track and trace devices do not provide law enforcement with the content of the messages which are transmitted. Wiretap authorizations are therefore subject to a much higher standard of scrutiny than the orders contained within this bill. Under federal law, these authorizations can be granted on a reasonable suspicion standard, while search warrants are subject to a higher standard of probable cause.

**3. Installation of a Pen Register or Trap and Trace Device Upon a Showing of Probable Cause**

This bill generally prohibits a person from installing or using a pen register or trap and trace device except by court order or by the provider of electronic or wire communication under specified circumstances.

Under this bill, a peace officer may make an application to a magistrate for an order authorizing the installation and use of a pen register or a trap and trace device under specified circumstances. The application shall be in writing under oath. The applicant shall certify that the information likely to be obtained is relevant to an ongoing criminal investigation and shall include a statement of the offense to which the information likely be obtained by the pent register or trap and trace device.

Though the federal standard for the issuance of a pen register or a trap and trace device is "reasonable suspicion" California law arguably requires a higher "probable cause" standard. (86 Ops.Cal.Atty.Gen 198 (2003).) In 2003, the California Attorney General's Office issued an opinion concluding that the "federal statutes governing the installation of pen registers and trap and trace devices do not provide authority for issuance of a state court order permitting a state law enforcement officer to install or use pen registers and trap and trace devices" because the federal pen register statute requires less than probable cause. (86 Ops.Cal.Att.Gen 198 (2003).) This bill imposes the probable cause standard and is therefore compliant with both state and federal law.

**4. Support**

The sponsor of this bill, the Los Angeles County District Attorney's Office states:

> Under federal law, law enforcement agencies must obtain a court order from a judge prior to the installation of a pen register or trap and trace device. According to Section 3123(a)(1) of Title 18 of the United States Code, the court shall enter an ex parte order authorizing the installation and use of a pen register or trap and trace device anywhere within the United States, if the court (state or federal) finds that the attorney for the Government has certified to the court that the information likely to be obtained by such installation and use is relevant to an ongoing criminal investigation.

Once obtained, a pen register or trap and trace device order cannot exceed 60 days in duration. As opposed to a wiretap, a pen register/trap and trace device only records the numbers dialed to or from a particular phone number. It does not record audio or text messages, and cannot be used to obtain real-time location data on a cellular telephone. (47 U.S.C. § 1002(a)(2)(B).)

Section 3125 of Title 18 of the United States Code authorizes the installation and use of a pen register/trap and trace device for 48 hours without a court order if an emergency situation exists, including one that involves "immediate danger of death or serious bodily injury to any person." An emergency order can be obtained if grounds exist to obtain a written order, but the emergency situation requires the installation and use of a pen register or a trap and trace device before an order authorizing such installation and use can, with due diligence, be obtained. Within 48 hours after the installation has occurred, or begins to occur, an order approving the installation or use in accordance with section 3123 must be obtained.

Section 3125 of Title 18 of the United States Code authorizes any investigative or law enforcement officer, specially designated by enumerated prosecutorial agencies, to obtain an emergency pen register/trap and trace device. However, there is no enabling statute in California that allows California District Attorneys to utilize section 3125.

Emergency/warrantless pen registers are lawful in only six states (AL, FL, GA, IA, TX, and WA) which possess emergency state statutes in accordance with section 3125. Notwithstanding, some law enforcement agencies in the remaining 44 states utilize warrantless emergency declarations. The result is that the requesting agency will unlawfully receive pen register or trap and trace data. This is a misdemeanor under federal law (18 U.S.C. § 3121). The individuals who improperly access the information may incur civil liability.

Assembly Bill 929 would authorize state and local law enforcement officers to use pen register and trap and trace devices under state law. AB 929 would also authorize the issuance of emergency pen registers and trap and trace devices. Under the provisions of AB 929 a California court could issue a court order authorizing the use of a pen register and/or a trap and trace device upon a showing of probable cause which is a higher standard than the reasonable suspicion standard required under federal law.

In 2003, the CA Attorney General's Office issued an opinion concluding that the "federal statutes governing the installation of pen registers and trap and trace devices do not provide authority for issuance of a state court order permitting a state law enforcement officer to install or use pen registers and trap and trace devices" because the federal pen register statute requires less than probable cause. (86 Ops.Cal.Att.Gen 198 (2003).) Our office's 2013 Search Warrant Manual cites this opinion and advises state law enforcement officers to establish probable cause in the affidavit seeking the installation or use of a pen register under the applicable federal statute.

AB 929 would create a comprehensive pen register/ trap and trace device statute in the Penal Code to cover all requests for pen registers and trap and trace devices in California, including emergency pen registers.

**5. Author's amendments to be offered in Committee.**

The author will be offering the following amendments to address some issues raised by the ACLU:

Amendment #1
On page 4, line 19 delete the (1)

Amendment #2
On page 5, delete lines 29-38.

Amendment #3
On page 8, delete line 5

**-- END –**