**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
todd@gutridesafier.com
Kali R. Backer (State Bar No. 342492)
kali@gutridesafier.com
Anthony J. Patek (State Bar No. 228964)
anthony@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VISHAL SHAH AND CHRISTINE WILEY, as individuals, on behalf of themselves, the general public, and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNIVERSAL MUSIC GROUP, INC.,<br><br>Defendant. | Case No. 5: 25-CV-03095-PCP<br><br>PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS<br><br>Date: August 21, 2025<br>Time: 10:00 a.m.<br>Judge: Hon. P. Casey Pitts<br>Courtroom: Courtroom 8, 4th Floor<br>San Jose Courthouse<br>280 South First Street, 4th Fl.<br>San Jose, CA 95113 |

# TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. STATEMENT OF FACTS ........ 2

III. LEGAL STANDARD ........ 4

IV. ARGUMENT ........ 4

A. The Complaint Satisfies Federal Rule of Civil Procedure 9(b). ........ 4

B. Plaintiffs Plead a Concrete Injury-in-fact. ..... Error! Bookmark not defined.

C. UMG's Scattershot 12(b)(6) Arguments Fail. Error! Bookmark not defined.

1. Plaintiffs adequately plead their common law privacy claims. ........ 6

a. Statute of Limitations. ........ Error! Bookmark not defined.

b. Plaintiffs have a reasonable expectation of privacy ........ Error! Bookmark not defined.

c. Plaintiffs allege that UMG's invasion of privacy was highly offensive. ........ 11

D. Plaintiffs Have Adequately Pled CIPA Claims. ........ 14

1. Plaintiffs allege "contents" were intercepted. ........ 14

2. Plaintiffs allege "aiding" under CIPA. ........ 16

3. CIPA section 638.51 is not limited to telephones. ........ 18

E. Plaintiffs Adequately Plead Damages for Fraud and Breach of Contract. ........ Error! Bookmark not defined.

F. Plaintiffs' Unjust Enrichment Claim May Proceed. ..... Error! Bookmark not defined.

G. Plaintiffs' Breach of Implied Covenant of Good Faith Claim is Proper. .... 21

H. Plaintiffs' Fraud and Misrepresentation Claims Are Sufficiently Pled. ...... 22

I. Plaintiffs Sufficiently Plead Trespass to Chattels. ........ 23

V. LEAVE TO AMEND SHOULD BE GRANTED ........ 26

VI. CONCLUSION ........ 27

# TABLE OF AUTHORITIES

## CASES

*A.J. v. LMND Med. Grp.*, No. 24-cv-03288-RFL, 2024 U.S. Dist. LEXIS 194480 (N.D. Cal. Oct. 25, 2024) .......... 23

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 4

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696 (9th Cir. 1990) .......... 26

*Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024 (N.D. Cal. 2019) .......... 7, 11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......... 4

*Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110 (N.D. Cal. 2020) .......... 17

*Brown v. Google LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023) .......... 15

*Brown v. Natures Path Foods, Inc.*, No. 21-cv-05132-HSG, 2022 U.S. Dist. LEXIS 42760 (N.D. Cal. Mar. 10, 2022) .......... 4, 5, 20

*Bruton v. Gerber Prod. Co.*, 703 F. App'x 468 (9th Cir. 2017) .......... 22

*Calhoun v Google LLC*, 526 F. Supp. 3d at 634 (N.D. Cal 2021) .......... 22

*Campbell v. Facebook, Inc.*, 951 F.3d 1106 (9th Cir. 2020) .......... 7

*Cantrell v. City of Long Beach*, 241 F.3d 674 (9th Cir. 2001) .......... 7

*Castillo v. Seagate Tech., LLC*, No. 16-cv-01958-RS, 2016 U.S. Dist. LEXIS 187428 (N.D. Cal. Sep. 14, 2016) .......... 21

*Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000 (N.D. Cal. 2018) .......... 17

*D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179 (S.D. Cal. 2024) .......... 11

*Davis v. Facebook, Inc. (In re Facebook Inc. Internet Tracking Litig.)*, 956 F.3d 589 (9th Cir. 2020) .......... passim

*Doe v. Amgen, Inc.*, No. 2:23cv7448-MCS-SSC, 2024 U.S. Dist. LEXIS 144579 (C.D. Cal. Aug. 13, 2024) .......... 16, 17

*Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064 (N.D. Cal. 2023) .......... 22

*eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058 (N.D. Cal. 2000) .......... 23

*ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023 (9th Cir. 2016) .......... 5, 20

*Fields v. Wise Media, LLC*, No. 12-CV-05160 WHA, 2013 U.S. Dist. LEXIS 136914, 2013 WL 5340490 (N.D. Cal. Sept. 24, 2013) .......... 23

*Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023) .......... 19

*Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317 (2000) .......... 22

*Hammerling v. Google LLC*, 615 F. Supp. 3d 1069 (N.D. Cal. July 18, 2022) .......... 13

*Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592 (N.D. Cal. 2021) .......... 9, 12

*Hawkins v. Kroger Co.*, 906 F.3d 763 (9th Cir. 2018) .......... 16

*Heerde v. Learfield Commc'ns, LLC*, No. 2:23-cv-04493-FLA (MAAx), 2024 U.S. Dist. LEXIS 137781 (C.D. Cal. 2024) .......... 15

*Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272 (2009) .......... 10

*Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 26 Cal. Rptr. 2d 834, 865 P.2d 633 (1994) .......... 14

*In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051 (N.D. Cal. 2015) .......... 15

*In re Clorox Consumer Litig.*, 894 F.Supp.2d 1224 (N.D.Cal. 2012) .......... 5

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767 (N.D. Cal. 2019).......... 22

*In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185 (N.D. Cal. 2019) .......... 11

*In re Google Location History Litig.*, 514 F. Supp. 3d 1147 (N.D. Cal. 2021).......... 12

*In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935 (N.D. Cal. 2022).......... 22

*In re iPhone Application Litig.*, 844 F. Supp. 2d 1040 (N.D. Cal. 2012).......... 12, 23, 24

*In re Meta Healthcare Pixel Litig.*, 713 F. Supp. 3d 650 (N.D. Cal. 2024) .......... 9, 10, 24

*In re Southland Supply, Inc.*, 657 F.2d 1076 (9th Cir. 1981).......... 21

*In re Zynga Priv. Litig.*, 750 F.3d 1098 (9th Cir. 2014) .......... 11, 14, 15

*Intel Corp. v. Hamidi*, 30 Cal.4th 1342 (2003).......... 23, 24

*James v. Walt Disney Co.*, 701 F. Supp. 3d 942 (N.D. Cal. 2023) .......... 16

*Katz-Lacabe v. Oracle America, Inc.*, 668 F. Supp. 3d 928 (N.D. Cal. 2023) .......... 12, 23

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009) .......... 4

*Kotlarsz v. Integrity Vehicle Servs., Inc.*, No. 8:24-cv-00569-FWS-JDE, 2024 U.S. Dist. LEXIS 213565 (C.D. Cal. Sep. 3, 2024).......... 17

*Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010 (N.D. Cal. 2012) .......... 9

*Meeks v. Experian Info. Servs., Inc.*, Nos. 21-17023, 22-15028, 2022 U.S. App. LEXIS 35650 (9th Cir. Dec. 27, 2022).......... 21

*Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861 (N.D. Cal. 2012).......... 25

*Mirmalek v. L.A. Times Communs. LLC*, No. 24-cv-01797-CRB, 2024 U.S. Dist. LEXIS 227378 (N.D. Cal. Dec. 12, 2024).......... 19

*Nguyen v. Stephens Institute*, 529 F. Supp. 3d 1047 (N.D. Cal. 2021).......... 16

*O'Shea v. Littleton*, 414 U.S. 488 (1974) .......... 24

*Revitch v. New Moosejaw, LLC*, No. 18-cv-06827-VC, 2019 U.S. Dist. LEXIS 186955 (N.D. Cal. Oct. 23, 2019).......... 14, 16

*Rodriguez v. Autotrader.Com, Inc.*, 762 F. Supp. 3d 921 (C.D. Cal. 2025).......... 8, 11

*Rodriguez v. Ford Motor Co.*, No. 3:23-cv-00598, 2024 U.S. Dist. LEXIS 218685 (S.D. Cal. Dec. 3, 2024).......... 14

*Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2021 U.S. Dist. LEXIS 98074 (N.D. Cal. May 21, 2021) .......... 12

*Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2024 U.S. Dist. LEXIS 1290 (N.D. Cal. Jan. 3, 2024) .......... 8

*Rosales v. FitFlop USA, LLC*, 882 F. Supp. 2d 1168 (S.D. Cal. 2012).......... 5

*Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698 (9th Cir. 2016) .......... 5, 20

*Shah v. Capital One Fin. Corp.*, No. 24-cv-05985-TLT, 2025 U.S. Dist. LEXIS 42677 (N.D. Cal. Mar. 3, 2025).......... 23

*Shah v. Fandom, Inc.*, No. 24-cv-01062-RFL, 2024 U.S. Dist. LEXIS 193032 (N.D. Cal. Oct. 21, 2024).......... 19

*Shahnaz Zarif v. Hwareh.com, Inc.*, No. 23-cv-0565-BAS-DEB, 2025 U.S. Dist. LEXIS 26519 (S.D. Cal. Feb. 12, 2025).......... 17

*Silver v. Stripe, Inc.*, No. 4:20-cv-08196-YGR, 2021 U.S. Dist. LEXIS 141090

(N.D. Cal. July 28, 2021) ... 12

*Smith v. Yeti Coolers, LLC*, No. 24-cv-01703-RFL, 2024 U.S. Dist. LEXIS 194481 (N.D. Cal. Oct. 21, 2024) ... 17, 18

*Spokeo Inc. v. Robins*, 578 U.S. 330 (2016) ... 6

*St. Aubin v. Carbon Health Techs., Inc.*, No. 24-cv-00667-JST, 2024 U.S. Dist. LEXIS 179067 (N.D. Cal. Oct. 1, 2024) ... passim

*Tan v. Quick Box, LLC*, No. 3:20-cv-01082-H-DEB, 2020 U.S. Dist. LEXIS 230427 (S.D. Cal. Dec. 8, 2020) ... 5

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ... 6

*United States v. Christensen*, 828 F.3d 763 (9th Cir. 2015) ... 17

*Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U. S. 765 (2000) ... 7

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097 (9th Cir. 2003) ... 4

*Victor v. R.C. Bigelow, Inc.*, No. 13-cv-02976-WHO, 2014 U.S. Dist. LEXIS 34550 (N.D. Cal. Mar. 14, 2014) ... 25

*Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043 (N.D. Cal. 2018) ... 14

*Yamasaki v. Zicam LLC*, No. 21-cv-02596-HSG, 2021 U.S. Dist. LEXIS 205494 (N.D. Cal. Oct. 25, 2021) ... 25

*Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962 (N.D. Cal. 2023) ... 1

*Yoon v. Lululemon United States*, 549 F. Supp. 3d 1073 (C.D. Cal. 2021) ... 14

*Zeiger v. Wellpet LLC*, 304 F. Supp. 3d 837 (N.D. Cal. 2018) ... 5

**STATUTES**

Cal. Civ. Code § 338 (c) ... 12

Cal. Civ. Proc. Code § 335.1 ... 12

Cal. Penal Code § 631 ... 20

Cal. Penal Code § 631(a) ... 17

Cal. Penal Code § 638.50(b) ... 24

Cal. Penal Code § 638.51 ... 18

Cal. Penal Code § 638.51(a) ... 23

Cal. Penal Code 638.51(b) ... 25

**RULES**

Fed R. Civ. P. 12(b)(1) ... 32

Fed. R. Civ. P. 12(b)(6) ... 4, 32

Fed. R. Civ. P. 9(b) ... 26

## I. INTRODUCTION

Plaintiffs Vishal Shah and Christine Wiley ("Plaintiffs") bring this Complaint against Universal Music Group, Inc. ("UMG" or "Defendant") for causing and aiding third parties' collection of California users' private communications ***against their express instructions***. UMG surreptitiously placed third-party tracking cookies on the devices of California Website visitors, even ***after they explicitly rejected and opted out of such cookies***. As a result, UMG caused the third parties to collect vast swaths of user data, including, without limitation, "browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data" ***despite promising not to do so***. ECF 1 ¶ 3. This deceptive practice is a highly offensive violation of Plaintiffs' privacy rights, as well as a breach of Defendant's promises. *See, e.g., St. Aubin v. Carbon Health Techs., Inc*., No. 24-cv-00667-JST, 2024 U.S. Dist. LEXIS 179067, at *36 (N.D. Cal. Oct. 1, 2024) ("defendant's representations that sensitive information would not be disclosed" made that disclosure highly offensive).

UMG attempts to avoid liability for its blatant privacy violations by arguing that Plaintiffs don't plead any injury. First, it tries to argue that the Complaint does not allege any injury *to the Plaintiffs*, because the screenshot pasted into the Complaint are not screenshots taken by Plaintiffs on the date(s) of their visits to the UMG Websites. That misstates what is required for a complaint under Rule 12(b)(6). Second, UMG tries to argue that Plaintiffs' allegations establish no violations of any of the laws asserted, due to a variety of putative shortcomings. This is bunk. Under controlling law, "a concrete injury for Article III standing purposes occurs when [a] third party tracks a person's internet browser activity without authorization." *Yockey v. Salesforce, Inc*., 688 F. Supp. 3d 962, 969–70 (N.D. Cal. 2023) (cleaned up).

The rest of UMG's arguments are little more than spaghetti thrown at a wall. Its Rule 9(b) argument relies on the false premise that the Complaint must contain conclusive evidence prior to discovery. Its invasion of privacy argument is based on outdated law and ignores the offensiveness of its behavior, as well as law extending statutes of limitation for undiscovered

harms. Its CIPA arguments misrepresent and misconstrue those statutes to adopt positions that other courts have rejected. Finally, in its attempt to convince this Court that Plaintiffs' fraud/misrepresentation, unjust enrichment, and contract claims should *all* be dismissed, UMG misconstrues both the law and the Complaint to insist that Plaintiffs have not adequately pled their facts. But as precedent and ***quoted*** text from the Complaint demonstrate below, Plaintiffs have satisfied their burden on each of their claims. Finally, UMG's Rule 12(f) motion is meritless, as Plaintiffs' allegation that it is seeking a public injunction on behalf of the general public is true and neither impertinent nor immaterial. In short, this Court should deny UMG's motion in its entirety.

## II. STATEMENT OF FACTS

When consumers visit one of UMG's ecommerce websites[1] (the "Websites"), UMG displays to them a popup cookie consent banner in which UMG offers Website users the option to opt-out of tracking cookies, as shown in the following screenshot from the postmalone.com Website, which is substantially similar to the other UMG Websites:




[1] Defendant's websites include, but are not limited to, the following: www.postmalone.com; www.imaginedragonsmusic.com; www.billie-eilish.com; arianagrande.com, icespicemusic.com, universalmusic.com, nickiminajofficial.com, theweekend.com, and lilyachtyofficial.com (each a "Website" and collectively, the "Websites"). (ECF 1 fn. 1). Additional, substantially similar websites are listed in the Complaint.

ECF 1 ¶ 25. Website users who clicked or selected the "Cookie Choices" link (which was accessible via the cookie consent banner shown above) are presented with the cookie consent preferences window ("Cookies Consent Preferences Window") depicted in the screenshots below:







ECF 1, ¶ 26 (screenshots of UMG Website cookie banner, displayed as top and bottom after scrolling down). UMG's Cookies Consent Preferences Window represented that "We want to be transparent about the data we and our partners collect and how we use it, so you can best exercise control over your personal data[,]" and promised users that they could "Decline All" cookies. *Id.* Clicking "Decline All" led Plaintiffs and other visitors to a Cookie Consent Preferences Window, wherein Plaintiffs set the "online advertising" and "Performance and Analytics" cookie settings to an "off" position, and the Website informed Plaintiffs that "0 of 2" were "allowed." *Id*. UMG's Privacy Policy, which is incorporated by reference on the Cookie Banner and Cookie Consent Preferences Window, further represented that UMG California users could "make certain choices about cookies through the cookie choices tools available" on UMG's Websites. *Id*., ¶¶ 23-24.

Defendant's Cookie Banner and Cookie Consent Preferences Window "led Plaintiffs, and all those Website users similarly situated, to believe that they declined all 'Online Advertising' and 'Performance and Analytics' cookies and tracking technologies." Compl. ¶ 28. But despite its repeated representations that it would not use cookies or share user information with third parties if Website users clicked the "Decline All" button, UMG immediately caused several third parties – including Meta Platforms, Inc., Google LLC (Google and DoubleClick cookies), ByteDance Ltd. (TikTok cookies), Snap, Inc. (Snapchat cookies), Appreciation Engine Inc. and

more (collectively, the "Third Parties") to install their cookies on Plaintiffs' computers. *Id.* ¶¶ 29, 38-79. UMG thus caused the Third Party's use of cookies to collect users' personal information "including their browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers," and more ("Private Communications"). *Id.* ¶¶ 33-34. This resulted in disclosure not only of computer data such as IP and email addresses, but specific user communications such as search strings. The Third Parties used the personal information to profile users and target them with advertising for the Third Parties' own financial gain. *Id.* ¶¶ 37–69. This type of tracking and data sharing is exactly what Plaintiffs and Website users who opted-out of cookies sought to avoid.

## III. LEGAL STANDARD

To survive a Rule 12(b)(6) motion, the claimant must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). And the allegations need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555.

## IV. ARGUMENT

### A. The Complaint Satisfies Federal Rule of Civil Procedure 9(b).

Federal Rule of Civil Procedure 9(b) requires the Complaint to allege the "the who, what, when, where, and how of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). As discussed below, Plaintiffs easily meet this requirement for all of their claims. Rule 9(b) requires only that fraud allegations be specific enough to give defendants notice of the particular misconduct which is alleged. *Brown v. Natures Path Foods, Inc.*, No. 21-cv-05132-HSG, 2022 U.S. Dist. LEXIS 42760, at *7 (N.D. Cal. Mar. 10, 2022); *See In re Clorox Consumer Litig.*, 894 F.Supp.2d 1224, 1234 (N.D.Cal. 2012) ("Rule 9(b) demands only a level of detail

sufficient to place a defendant on notice of the basis for a plaintiff's claims and to demonstrate that a plaintiff is not on a 'fishing expedition.'"). Alleging that Plaintiffs "saw and relied on representations on [a] website, advertising, product labels, and packaging" is enough. *See Kanan v. Thinx Inc.*, No. CV 20-10341 JVS (JRPx), 2021 U.S. Dist. LEXIS 191225, at *14-15 (C.D. Cal. June 23, 2021). Moreover, the "heightened pleading standard" of Rule 9(b) only applies to the circumstances of the fraud and not to the defendant's state of mind. *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1031–32 (9th Cir. 2016), citing *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 705 (9th Cir. 2016). "Malice, intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). When essential information is within the other parties' knowledge, Rule 9(b) permits pleading knowledge and intent on "information and belief." *See Blake*, 856 F.2d at 1369.

Here, Plaintiffs have pleaded "the who, what, when, where, and how" of Defendant's fraud and misrepresentations. They allege that Defendant (the who), fraudulently stated that users could "Decline. All" cookies and then immediately installed such cookies from at least five specific Third Parties anyway (the what), in 2024 when Plaintiffs visited and throughout the class period (when), on the UMG-owned Websites visited by the Plaintiffs, such as universalmusic.com and arianagrande.com (where), and that this fraudulent statement appeared on the Cookie Banner and Cookie Consent Preferences Window (the how). *See, e.g.*, ECF 1, ¶¶ 1–5, 25–36, 75–98, 162–173 (alleging fraud); ¶¶ 25–36, 81, 89, 97, 164–165 (alleging intentional conduct); ¶¶ 80, 88, 96, 165–166 (alleging reliance); ¶¶ 79, 87, 95, 170–172 (alleging injury); *see also Zeiger v. Wellpet LLC*, 304 F. Supp. 3d 837, 849-50 (N.D. Cal. 2018) (applying the "the who, what, when, where, and how" analysis). These allegations more than suffice for Rule 9(b). *See Tan v. Quick Box, LLC*, No. 3:20-cv-01082-H-DEB, 2020 U.S. Dist. LEXIS 230427, at *91 (S.D. Cal. Dec. 8, 2020) (plaintiff satisfied Rule 9(b) when she "provide[d] multiple examples of La Pura advertisements and websites containing the alleged misrepresentations and omissions regarding reviews, endorsements, effectiveness, limited supply, price, etc"); *Rosales v. FitFlop USA, LLC*, 882 F. Supp. 2d 1168, 1175-76 (S.D. Cal. 2012) (allegations sufficed when plaintiffs provided "reproductions of Defendant's advertisements throughout the complaint, and attach

substantially similar advertisements to the FAC which contain the alleged misrepresentations that serve as the basis of Plaintiffs' claims.")

While UMG asserts that "there are virtually no factual allegations" to support Plaintiffs claims (MTD at 6), it does not identify any additional information that it needs in order to be on notice of the claims. For example, it says that Plaintiff Shah failed to include a screenshot taken the day of his visit, but glosses over the fact that the Complaint includes a screenshot taken later of the exact same Cookie Banner and Cookie Consent Preferences Window. Similarly, UMG complains that Plaintiffs filed to identify every specific webpage they visited, yet fails to explain why this is necessary given that the Websites themselves are identified. Much of the allegedly missing information (e.g., the individual pages visited) is not essential at this stage of the litigation, and UMG does not meet its burden of explaining why it needs that information to answer the Complaint. And the bulk of what UMG alleges is missing can be uncovered during discovery, is likely already within its possession (e.g., the identity of the cookies that UMG's Websites call and place on visitors' computers), or has actually been disclosed to it (either in the Complaint or Plaintiffs' CLRA letter).

**B. Plaintiffs Plead a Concrete Injury-in-fact for Each of their Claims.**

As discussed below for each cause of action, Plaintiffs have suffered cognizable injuries for all of their claims. A "concrete" injury-in-fact is one that is "real" as opposed to "abstract." *Spokeo Inc. v. Robins*, 578 U.S. 330, 340 (2016). This distinction focuses on "de facto" versus hypothetical harms; "intangible" harms may still be concrete. *See id.* (discussing deprivations of rights as concrete). Examples of concrete but intangible harms include "reputational harms, disclosure of private information, and intrusion upon seclusion," and such harms have been "traditionally recognized as providing a basis for lawsuits in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). In determining whether an intangible harm is concrete, "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Spokeo* at 340–341. Legislative histories are also helpful, because Congress "may elevat[e] to the status of legally cognizable injuries concrete, de facto injuries that were

previously inadequate in law." *Id*., citing *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U. S. 765, 775–777 (2000). "[S]tate law can [also] create interests that support standing in federal courts." *Davis v. Facebook, Inc. (In re Facebook Inc. Internet Tracking Litig.)*, 956 F.3d 589, 599 (9th Cir. 2020) (quoting *Cantrell v. City of Long Beach*, 241 F.3d 674, 684 (9th Cir. 2001)).

**Invasion of Privacy.** Plaintiffs have suffered cognizable injuries for invasion of privacy under Ninth Circuit Law. In *In re Facebook Inc. Internet Tracking Litig.*, the Ninth Circuit held that users had "standing to bring claims for invasion of privacy, intrusion upon seclusion, breach of contract, breach of the implied covenant of good faith and fair dealing, as well as claims under the Wiretap Act and CIPA, because they adequately alleged privacy harms." *Id.*, 956 F.3d at 602–03. The privacy harms alleged there included collection of URLs, IP addresses, and browsing history, in violation of statutes protecting that data as confidential and private. Accordingly, control of URLs and personally-identifiable browsing history is a "concrete" interest, the violation of which is a cognizable injury. *Id.*; *see also Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1119 (9th Cir. 2020) (interception of URLs deemed an injury); *see also Yockey*, 688 F. Supp. 3d at 969–970 ("Statutes such as CIPA . . . 'codify a substantive right to privacy, the violation of which gives rise to a concrete injury sufficient to confer standing.'"; "[A] concrete injury for Article III standing purposes occurs when Google, or any other third party, tracks a person's internet browser activity without authorization."). *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1036, 1040 (N.D. Cal. 2019), the lone case that UMG cites as evidence of courts "consistently" holding that such data collection is not a cognizable injury, pre-dates the Ninth Circuit's recognition of such injuries in *In re Facebook*.

As for UMG's false assertion that "Plaintiffs have alleged no *facts*" to support their claims, the Complaint contains a detailed explanation of at least five different third party cookies (Facebook, Google, TikTok, Snapchat, and Appreciation) installed on users' computing devices as a result of UMG's Website coding and fraudulent Cookie Banner and Cookie Consent Preferences Window. The Complaint then pleads roughly a dozen pages of details about the exact types of information those cookies collected, including URLs, search queries, demographic data,

emails, device information, etc. The Complaint also makes it clear that Plaintiffs each visited the Website, and thus were subject to the data collection alleged. Compl., ¶¶ 85-87, 93-96. These are all facts that corroborate Plaintiffs' claims. In the event that the Court deems any of the current allegations insufficient, Plaintiffs can easily amend to supply additional details, which undermines UMG's request for dismissal with prejudice. *See Rodriguez v. Autotrader.Com, Inc.*, 762 F. Supp. 3d 921, 930 (C.D. Cal. 2025) (granting leave to amend complaint to add missing details).

***Loss of value and control of information.*** UMG argues that all of Plaintiffs' claims fail because Plaintiffs "did not allege facts explaining *how* defendant's collection and use of plaintiffs' information reduced the value of that information." (MTD at 8.) But the Complaint pleads diminution of value only as an "alternative" theory of damage, and only for the common law fraud, deceit, and misrepresentation claims. ECF 1, ¶ 167. It has no relevance to the rest of the claims, and is not essential even for the one claim where it is pled. UMG attempts to conflate diminution of value and "loss of control" (ECF1, ¶ 149) but the possessory right in one's private information is a distinct basis for alleging an injury-in-fact. UMG's concrete invasions of Plaintiffs' privacy and contractual rights are cognizable injuries; valuing those injuries is different. Plaintiffs also plead statutory damages (Compl. ¶ 149, 161) and that "the value of personal data is measured as either the consumer's willingness to accept compensation to sell [their] data or the consumer's willingness to pay to protect [their] information." ECF 1, ¶ 84. This is more than sufficient for standing. *See Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2024 U.S. Dist. LEXIS 1290, at *35 (N.D. Cal. Jan. 3, 2024) (granting *class certification* when Plaintiffs' damages were based on "User's willingness to pay to prevent [their] data collection and [the] organization's willingness to pay for data collection"); *see also In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 598 ("Plaintiffs have adequately pleaded an entitlement to Facebook's profits from users' personal data sufficient to confer Article III standing").

UMG also conflates distinct claims and damages theories to create a rule that purportedly requires Plaintiffs to plead a dissertation of how exactly their personal data lost value. But only *Hubbard* involved a diminution of value theory attached to a fraud claim, and that case cannot

support dismissal with prejudice because diminution was the only theory asserted in that case, whereas it is just one of multiple theories asserted here. Even if the Court agrees that more details are needed, Plaintiffs can amend to assert additional details about how UMG's actions diminish the value of their personal data by increasing its availability (i.e., the law of supply and demand). In contrast, *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1032 (N.D. Cal. 2012), involved a breach of contract claim, and is again based on outdated law, prior to California and the Ninth Circuit's recognition of a property right in personal data. Similarly, *Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 603 (N.D. Cal. 2021), is totally irrelevant, as it was directed to economic damages under the UCL, which is not asserted here. UMG's reliance on those two cases is misplaced.

***Benefit of the Bargain***. In a two-sentence argument, UMG claims that the "benefit of the bargain" theory is inapplicable in this case because Plaintiffs "do not allege they provided any consideration." MTD at 9. Plaintiffs address the sufficiency of their breach of contract claim in detail in Section IV(D)(1) ("Plaintiffs adequately pled the existence of a contract."). In the interim, Plaintiffs note that *In re Facebook*, on which UMG relies, held that the Statement of Rights and Responsibilities ("SRR") in that case did create a contract, and the Privacy Policy in that case was disregarded primarily because there was no basis for incorporating it into the SRR. This case is distinguishable because UMG promised to follow its privacy policy in its Cookie Banner and Cookie Consent Preferences Window, in which it offered to not use advertising and performance cookies in exchange for an opportunity to collect more limited data (i.e., necessary cookies) and plaintiff's time and consideration of the UMG Website and goods and services offered therein.

***Reduction of Storage and Value of Computing Devices.*** UMG also contends that Plaintiffs "do not . . . describe any loss of storage or value" to their devices, which are two of three bases for damages Plaintiffs allege for trespass of chattels (the third being nominal damages). Compare MTD at 9; ECF 1, ¶ 208. As with UMG's other arguments above, UMG conflates injury-in-fact with economic damages. Setting that aside, "[a]n allegedly unconsented, surreptitious, non-temporary placement of software on devices that reduces storage has a measurable impact" sufficient to constitute damages. *Compare In re Meta Healthcare Pixel*

*Litig.*, 713 F. Supp. 3d 650, 659 (N.D. Cal. 2024) (denying Motion to dismiss trespass to chattels claim where, as here, Plaintiffs have "alleged measurable harm from the loss of available storage space on their devices[.]"). As a result, Plaintiffs have "alleged measurable harm from the loss of available storage space on his devices" sufficient to demonstrate damages here. *Id.*, 713 F. Supp. 3d at 659 (internal quotations omitted). Under Ninth Circuit law, such breaches of privacy are an injury-in-fact sufficient to support standing to assert trespass to chattels. *See, e.g., In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 601 (privacy violation establishes standing for alleged trespass to chattels); *see In re Meta Healthcare Pixel Litig.*, 713 F. Supp. 3d 650, 659 (N.D. Cal. 2024) (trespass to chattels properly pled where plaintiff "ha[s] alleged measurable harm from the loss of available storage space on their devices"). The rest of UMG's argument on this point is directed to fictitious arguments that Plaintiffs have not pled.

**1. Plaintiffs adequately pled common law privacy claims.**

California's common law invasion of privacy and intrusion upon seclusion are analyzed together and require that Plaintiffs show: (1) an intentional intrusion into a matter as to which the plaintiff has a reasonable expectation of privacy, and (2) the intrusion must be "highly offensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 606; *see also Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 285–97 (2009). Plaintiffs satisfy both requirements.

***a.* The Statute of Limitation**

UMG argues that the Complaint should be dismissed with prejudice because Plaintiff Wiley did not specify the exact date of her visit. UMG is wrong. The Complaint alleges that Plaintiff Wiley visited multiple Websites belonging to UMG "during the last four years," the majority of which is well within the two- and three-year statute of limitations for her claims; *see* Cal. Civ. Proc. Code § 335.1 and Cal. Civ. Code § 338 (c), respectively. In any event, this was a scrivener's error, and Plaintiff Wiley visited the Websites within a year of the filing date of the Complaint. If the Court agrees that Plaintiff Wiley's allegations must identify the date of her visit with more specificity, Plaintiffs can amend to place her visit within one year of filing. Accordingly, the Court should deny the request for dismissal or grant leave to amend.

***b.* Plaintiffs have properly pled expectation of privacy.**

Defendant also asserts the Complaint fails to plead a reasonable expectation of privacy. MTD at 8. As noted above, the Complaint alleges that Plaintiffs have a reasonable expectation of privacy in their browsing behavior and communications, ***particularly where UMG has promised them not to collect such data***. Compl. ¶¶ 25-30. UMG makes a blanket assertion that "courts consistently have held that the mere collection of browsing history, page views and IP addresses, absent a tangible or concrete harm, does not constitute a sufficient injury to support legal [sic] claim." (*Id.*) But neither of the two cases they cite support that broad assertion. While *Rodriguez* required amendment to plead additional details for CIPA clams (but not common law invasion of privacy), it did not hold that there is no expectation of privacy in the above types of information; it merely noted that some types of information are confidential, while others are not. *Rodriguez v. Autotrader.Com, Inc.*, 762 F. Supp. 3d 921, 930 (C.D. Cal. 2025) (granting leave to amend complaint to add missing details). And *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1036, 1040 (N.D. Cal. 2019), did not even address an invasion of privacy claim, and is thus does not support UMG's assertion.

UMG relies heavily on outdated law to argue that Plaintiffs have no expectation of privacy in the data UMG caused to be collected. Both *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108-09 (9th Cir. 2014), and *In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 198 (N.D. Cal. 2019), predate *In re Facebook* and thus failed to take into account current Ninth Circuit law. As for *D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1206 (S.D. Cal. 2024), that case is easily distinguishable because the dismissal was premised entirely on the finding that the defendant had not created any expectation of privacy. The very opposite is true here, where Plaintiffs made clear that they expected their browsing data to remain private, and UMG promised (falsely) that it would respect that expectation as part of its inducement for Plaintiffs to view the Websites.

**c. Plaintiffs allege that UMG's invasion of privacy was highly offensive.**

UMG's collection and disclosure of data after promising visitors it would not do so is highly offensive. *See St. Aubin*, 2024 U.S. Dist. LEXIS 179067, at *36 (finding that "defendant's

representations that sensitive information would not be disclosed" made the disclosure highly offensive); *Rodriguez v. Google LLC*, 2021 U.S. Dist. LEXIS 98074, at *28–29 ("Per the FAC, Google intercepted data akin to 'browsing habits and histories,' including 'detailed URL requests, app browsing histories, and search queries which [p]laintiffs . . . sent to those apps[.]' . . . In sum, the Ninth Circuit has left little doubt as to plaintiffs' intrusion upon seclusion and invasion of privacy claims. Both survive Google's motion to dismiss.").

Ignoring its broken promise, UMG tries to paint its conduct as "routine commercial behavior." MTD at 11. But UMG relies on outdated cases, including *In re iPhone Application Litig.* (*"In re iPhone"*), 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012). Privacy law has evolved since the iPhone Application case was decided in 2012. More recent cases, such as *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 602–03 (discussed *supra*, at 7), have overruled *In re iPhone*. Under current law, the "use of cookies to track and compile internet browsing histories" can invade users' privacy because they enable "access to a category of information otherwise unknowable and implicate privacy concerns." *Id.* at 603. Thus, many recent district court decisions have recognized that the tracking and amassing of online data without consent is highly offensive. *See, e.g., Katz-Lacabe v. Oracle America, Inc.*, 668 F. Supp. 3d 928, 942 (N.D. Cal. 2023) (the accumulation of online data was an invasion of privacy); *Silver v. Stripe, Inc.*, No. 4:20-cv-08196-YGR, 2021 U.S. Dist. LEXIS 141090, at *17–18 (N.D. Cal. 2021) (finding plaintiff stated claims for intrusion upon seclusion based on the aggregation of data); *In re Google Location History Litig.*, 514 F. Supp. 3d 1147, 1157–58 (N.D. Cal. 2021) (finding the continuous collection of data when users turned off the "location history" setting was highly offensive); *Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2021 U.S. Dist. LEXIS 98074, at *27 (N.D. Cal. May 21, 2021) (users have a privacy interest in their internet-wide browsing history); *Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 600 (N.D. Cal. 2021) (collection and sharing of data when the app was closed was an invasion of privacy).

This case is also far more compelling than a typical lack of consent case because UMG solicited, then immediately disregarded, Plaintiffs' rejection of consent. *See* Compl. ¶¶ 25-30. Here, UMG sets the expectation of privacy *itself* by promising that it would not use third party

cookies to share user data. It is one thing to be subjected to tracking without being aware of it. But promising not to track, and then tracking anyway, is a different and more egregious violation of social norms than just tracking someone, as acknowledged by cases like *St. Aubin*, 2024 U.S. Dist. LEXIS 179067, at *36. Indeed, that is a key difference between this case and *Hammerling*, on which UMG relies. In *Hammerling*, the plaintiff failed to allege reliance on any representations by the defendant. The court in *Hammerling* also emphasized that "conduct is more likely to be 'highly offensive' where the defendant 'surreptitious[ly]' collects sensitive information even while the plaintiff has logged off and is not even using the defendant's services." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. July 18, 2022) (citing *Facebook Tracking*, 956 F.3d at 606 & n.8). The *Hammerling* court noted that the defendant's "data collection is not blatantly deceitful" and therefore rendered it "a different case than *Facebook Tracking*, where Facebook's surreptitious data collection contravened its affirmative promises to its users." *Id.*

Here, unlike in *Hammerling*, Plaintiffs have specifically pled that they relied on UMG's affirmative promises not to track their activities when they browsed the Websites, and UMG's conduct was blatantly deceitful. Compl. ¶¶ 91, 98. UMG fails to acknowledge that its invasion of privacy allowed the Third Parties to obtain users' Personal Information that tracked their browsing history and private communications on the Website, even though UMG represented in the popup cookie consent banner and Privacy Statement that it would not do so. Compl. ¶¶ 91, 98. Indeed, the facts here are actually ***more*** egregious than those in *In re Facebook Tracking Litigation*. Unlike in *Facebook*—where "Facebook's privacy disclosures at the time allegedly failed to acknowledge its tracking of logged-out users, ***suggesting*** that users' information would not be tracked"—here, UMG explicitly told users that they could "Decline All" non-essential third-party tracking cookies. *Cf. In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 602 (emphasis added). That is the difference between an omission and a falsehood. It is also the difference between a question of consent and a wanton disregard for Plaintiff's express rejection of tracking. Thus, it stands to reason that if Facebook's *omission* gave rise to a "cognizable

privacy interest," then UMG's *affirmative falsehood* must as well. UMG's conduct therefore qualifies as highly offensive.

In any event, the question of whether an intrusion is "highly offensive" is one that courts do not resolve on the pleadings because it is fact-intensive and entails weighing the "extent and gravity of the invasion." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 37, 26 Cal. Rptr. 2d 834, 865 P.2d 633 (1994); *see also In re Facebook, Inc., Internet Tracking Litig.*, 956 F.3d at 606 (stressing the uniquely subjective nature of the "highly offensive inquiry" before concluding it "cannot be resolved at the pleading stage"); *Revitch v. New Moosejaw, LLC*, No. 18-cv-06827-VC, 2019 U.S. Dist. LEXIS 186955, at *9 (N.D. Cal. Oct. 23, 2019) ("a jury could conclude" that the intrusion into plaintiff's identity and browsing habits "is a highly offensive breach of norms"); *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1054 (N.D. Cal. 2018) (whether conduct rises to the level of highly offensive "is indeed a factual question best left for a jury").

**2. Plaintiffs have adequately pled CIPA claims.**

Plaintiffs allege two claims under CIPA.[2] First, Plaintiffs allege a wiretapping claim under the fourth prong of Section 631(a) which makes liable persons who aid others who "unlawfully do, or permit, or cause to be done" either "(1) intentional wiretapping, (2) willfully attempting to learn the contents or meaning of a communication in transit over a wire, [i.e., eavesdropping,] and (3) attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *Rodriguez v. Ford Motor Co.*, No. 3:23-cv-00598, 2024 U.S. Dist. LEXIS 218685, at *12 (S.D. Cal. Dec. 3, 2024) (cleaned up). Plaintiffs allege that UMG aids and abets Third Party violations of clauses 2 and 3. Second, Plaintiffs allege that UMG's conduct violates CIPA § 638.51, which prohibits the unconsented installation and use of "pen registers" and "trap and trace devices." UMG's challenges to these claims are meritless.

**a. Plaintiffs allege that "contents" were intercepted.**

CIPA prohibits interception of "contents" communications. "Contents" communications "refer[] to the intended message conveyed by the communication, and does not include record

[2] UMG argues that the first three clauses of CIPA do not apply to the alleged conduct. ECF 21 at 12–15. Plaintiffs do not allege that UMG is directly liable under these clauses.

information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014); *see also Yoon v. Lululemon United States*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) (explaining CIPA protects "user-generated material" but not "routine identifiers"). Here, Plaintiffs allege Third Party interception of "contents," including search terms, which UMG aids and abets.

Contrary to UMG's broad assertion, Plaintiffs' browsing behavior includes personal communications. *See* Compl. ¶ 144 (information collected includes, *inter alia*, "the Website user's affirmative decisions, actions, choices, [and] preferences," including "user input data" and URLs); *id.*, ¶ 19 ("user input data" includes "search queries, the user's name, age, gender, email address, location, and/or payment information"); *Heerde v. Learfield Commc'ns, LLC*, No. 2:23-cv-04493-FLA (MAAx), 2024 U.S. Dist. LEXIS 137781, at *14 (C.D. Cal. 2024) ("Search terms constitute 'contents' of a communication."); *see also Zynga*, 750 F.3d at 1108–09 (explaining URL data may contain communication "contents" if a user's search terms are included); *St. Aubin,* 2024 U.S. Dist. LEXIS 179067, at *11 (URLs that reveal a user's queries reflect the "contents" of a communication); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 936 (N.D. Cal. 2023) ("full-string detailed URL[s]" containing "users' actions on a website, and their search queries" can constitute content); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1083 (N.D. Cal. 2015) (finding search terms implicate "content").

Here, where the primary reasons to visit the Website include searching for musical artists and tour information, among other things, Plaintiffs have adequately pled that "content" in the form of user's search strings was intercepted. For example, Plaintiffs alleged that UMG allowed cookies from Google, LLC, via the www.google-analytics.com domain, to collect user information. Compl. ⁋ 46. By its software's very nature, this means Google, LLC collected communication "contents" from Plaintiffs. The precise scope and full details of the "contents" intercepted is not a requirement at the pleadings stage—nor would it be possible for Plaintiffs to provide details of what exactly UMG intercepted without discovery. The caselaw and Complaint make clear that Plaintiffs adequately pled that content was indeed intercepted by the Third Parties. Alternatively, should the Court deem additional facts necessary, Plaintiffs can amend the

Complaint to supply additional details about search strings being entered into UMG's interactive Website.

**3. Plaintiffs properly allege "aiding" under CIPA.**

UMG argues that Plaintiffs do not and cannot allege intent to aid and abet the Third Parties' CIPA violations. MTD at 15. The crux of UMG's argument is not that it did not know the cookies were being used, but that it cannot have violated the law because it did not have specific knowledge and intent to violate the law. This argument is either an affirmative defense (which cannot be raised in a motion to dismiss if it is based on disputed facts; *see, e.g., Nguyen v. Stephens Institute*, 529 F. Supp. 3d 1047, 1056 (N.D. Cal. 2021)), or is an impermissible request for the Court to infer UMG's lack of intent in its favor, notwithstanding Plaintiffs' allegations to the contrary. *See Hawkins v. Kroger Co.*, 906 F.3d 763, 767 n.2 (9th Cir. 2018) (This Court must "accept the complaint's well-pleaded factual allegations as true, and construe all inferences in the plaintiff's favor for the purposes of evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)").

The plain text of CIPA "does not include an intent standard." *St. Aubin*, 2024 U.S. Dist. LEXIS 179067, at *20. Indeed, Judge Chen rejected this same argument in *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 953 (N.D. Cal. 2023). In *James*, the plaintiff brought CIPA claims under Section 631 against Disney for causing a third-party to intercept user data including "search terms entered," "pages viewed," and other data similar to the allegations here. *Id*. at 945–46. Like here, the defendant argued that it "cannot be held liable under . . . CIPA unless it *intended* to have [a third party] intercept the information at issue." *Id.* at 953. The court rejected that argument, holding that plaintiff pled "aiding," because "it can be reasonably inferred that [Defendant] entered into a contractual agreement with [third party] under which [the third party] would collect information. . . . so that [Defendant] could market to and attract new customers." *Id*. at 954. So too here. Plaintiffs allege that "Defendant voluntarily integrated 'third-party resources' from the Third Parties into its Website programming" which was "done so pursuant to agreements between Defendant and [the] Third Parties" resulted in the collection of valuable user data. Compl. ¶ 15.

The decision in *James* is consistent with other decisions from this Circuit holding that intent under CIPA is satisfied by pleading that UMG intentionally "enable[d] a third party's eavesdropping on or interception of the communication." *See, e.g.*, *Doe v. Amgen, Inc.*, No. 2:23-cv-7448, 2024 U.S. Dist. LEXIS 144579, at *5 (C.D. Cal. Aug. 13, 2024); *Revitch*, 2019 U.S. Dist. LEXIS 186955, at *4 ("[T]he complaint adequately alleges that [Defendant] violated section 631 by enabling [a third party's] wrongdoing"); *Kotlarsz v. Integrity Vehicle Servs., Inc.*, No. 8:24-cv-00569, 2024 U.S. Dist. LEXIS 213565, at *22 (C.D. Cal. Sep. 3, 2024) ("it was the [D]efendant's website on which the [third party] operated."). And, regardless of whether UMG had the specific intent to enable *unlawful* conduct, courts routinely find sufficient allegations that the defendant intended the *act* which "enable[d]" the privacy violation. *See, e.g., Doe*, 2024 U.S. Dist. LEXIS 144579, at *5.

Because "[t]he analysis for a violation of CIPA is the same as that under the federal Wiretap Act," the Ninth Circuit's analysis of intent in the Wiretap Act is instructive. *Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) (quoting *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1051 (N.D. Cal. 2018)). "The Ninth Circuit rejected that the word 'intentionally' in the Wiretap Act 'must be read to require a defendant to know that [its] conduct is unlawful . . . Rather, the statute only requires "an intentional act, defined as an act that is being done on purpose." *Shahnaz Zarif v. Hwareh.com, Inc.*, No. 23-cv-0565, 2025 U.S. Dist. LEXIS 26519, at *20 (S.D. Cal. Feb. 12, 2025) (quoting *United States v. Christensen*, 828 F.3d 763, 774 (9th Cir. 2015)).

As such, UMG's reliance on *Smith v. Yeti Coolers, LLC,* 754 F. Supp. 3d 933, 943-44 (N.D. Cal. Oct. 21, 2024) is misplaced. MTD at 15. In *Yeti*, the plaintiff alleged that the website owner was liable under the fourth prong of CIPA for aiding a third-party payment processor that "incorporates customers' financial information into its fraud prevention system, which it then markets to merchants without customers' consent" to violate the statute. No. 24-cv-01703-RFL, 2024 U.S. Dist. LEXIS 194481, at *1 (N.D. Cal. Oct. 21, 2024). The *Yeti* court concluded that the plaintiff failed to allege that the defendant was "acting with the third party *in order* to have the third party perform acts that violate the statute." *Id.* at *12. In other words, the court found

that the defendant did not intend to enable the third party to collect user information (which plaintiff alleged violated the statute); it only intended to enable the third party to process payments made on its Website. Here, Plaintiffs have alleged that UMG integrated the third-party resources on the Website which placed and transmitted cookies *in order* to obtain user data for advertising purposes. Compl. ¶¶ 4, 15, 20-24. UMG did not disable this software or prevent the Third Parties from obtaining user data even after it solicited user consent and obtained users' rejection of cookies. *Id.* ¶¶ 1–3. UMG cannot claim that it did not intend to cause the Third Parties to wiretap and eavesdrop on users' Personal Communications since it integrated the Third Party code into its Website to do exactly that.

Moreover, UMG's characterization of *Yeti* is contrary to the prevailing standard in this Circuit discussed above. The defendant in *Yeti*, like UMG does here, argued that the plaintiff must show the "'specific intent to commit the unlawful acts'" 2024 U.S. Dist. LEXIS 194481, at *11. But the plaintiff, by contrast, argued that CIPA did not require specific intent. *Id*. The court acknowledged that CIPA "does not necessarily incorporate the common law [intent] requirement for aiding and abetting. . . [but] other language in [CIPA's] fourth clause does require ***some*** level of knowledge and intent." *Id*. (emphasis added). Here, Plaintiffs alleges more than "some" level of intent and knowledge (as explained above) because UMG owns the website and installed the third-party resources which allowed the Third Parties to track the Website users.

**4. CIPA section 638.51 is not limited to telephones.**

CIPA Section 638.51(a) prohibits any person from "install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order." The statute defines a "pen register" as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b). Plaintiffs adequately plead each element of this claim. Plaintiffs allege that the Third Party cookies and the corresponding software code installed by UMG on its Website operate as pen registers under the meaning of the statute because they record users' IP address and user-agent information, which is "routing, addressing, or signaling information." Cal. Penal Code

§ 638.50(b). Plaintiffs also allege that the cookies that UMG causes to be placed on visitors' computer record additional information, such as operating system information, browser information, geolocation data, and email addresses, for use by Defendant and third parties.

UMG incorrectly claims that the pen register statute is limited to telephones. MTD at 16–18. But courts in this District have repeatedly rejected UMG's argument as contrary to the statute's plain language. *See, e.g.*, *Mirmalek v. L.A. Times Communs. LLC*, No. 24-cv-01797-CRB, 2024 U.S. Dist. LEXIS 227378, at *7 (N.D. Cal. Dec. 12, 2024) (collecting cases; rejecting argument that § 638.51 is limited to telephones); *Shah v. Fandom, Inc.*, No. 24-cv-01062-RFL, 2024 U.S. Dist. LEXIS 193032, at *9 (N.D. Cal. Oct. 21, 2024) (holding statute's plain text is not limited to telephones); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050–51 (S.D. Cal. 2023) (applying plain meaning of statute to include "processes" that collect "dialing, routing, addressing, or signaling information").

This is because "the California' Legislature's chosen definition" of a pen register is "specific as to the *type of data* [collected]," but "vague and inclusive as to the form of *the collection tool*" (i.e., a "device or process"). *Mirmalek*, 2024 U.S. Dist. LEXIS 227378, at *7 (citing Section 638.51(b)). "Thus, the Court applies the plain meaning of a 'process' to [CIPA]. A process can take many forms. Surely among them is software that identifies consumers, gathers data, and correlates that data through unique 'fingerprinting," like Plaintiff alleges here. *Greenley*, 684 F. Supp. 3d at 1050. "By the plain meaning of § 638.50(b), collection of the recipient phone number or IP address is not a required element. All that is required is that the Trackers record addressing information transmitted by the user's *computer or smartphone* in connection with the outgoing HTTP request to [the] website, regardless of whether that addressing information pertains to the sender or the recipient of the communication at issue." *Shah*, 2024 U.S. Dist. LEXIS 193032, at *9. "[T]he Court's analysis must begin with the statutory text, and if that text is clear, must end there. . . . Nothing in the statutory definition limits pen registers to those that operate the same way as a traditional phone pen register." *Id.*

Like the plaintiffs in *Mirmalek*, *Greenley*, and *Shah*, Plaintiffs allege that the Third Party cookies and the corresponding software code installed by UMG on its Website are each a "device

or process." *Compare Mirmalek*, 2024 US Dist. LEXIS 227378, at *12 *with* Compl. ¶ 155 (explaining "cookies and the corresponding software code installed by Defendant on its Website are each 'pen registers' because they are 'device[s] or process[es]' that 'capture[d]' the 'routing, addressing, or signaling information'—including, the IP address and user-agent information—from the electronic communications transmitted by Plaintiffs' and the Class's computers or devices."). Thus, UMG's argument limiting pen register claims to telephones fails.

**C. Plaintiffs' Fraud and Misrepresentation Claims Are Sufficiently Pled.**

UMG repeats the same intent arguments addressed above to argue that the Complaint fails to satisfy Fed. R. Civ. P. 9(b) for the fraud and misrepresentation claims. MTD at 17-18. Rule 9(b) requires only that fraud allegations be specific enough to give defendants notice of the particular misconduct which is alleged. *Brown v. Natures Path Foods, Inc.*, No. 21-cv-05132-HSG, 2022 U.S. Dist. LEXIS 42760, at *7 (N.D. Cal. Mar. 10, 2022). The "heightened pleading standard" of Rule 9(b) only applies to the circumstances of the fraud and not to the defendant's state of mind. *ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1031–32 (9th Cir. 2016), citing *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 705 (9th Cir. 2016). "Malice, intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). When essential information is within the other parties' knowledge, Rule 9(b) permits pleading knowledge and intent on "information and belief." *See Blake*, 856 F.2d at 1369.

UMG argues that Plaintiffs' fraud claim fails because "Plaintiffs have failed to plead any behavior with respect to their own experience, knowledge by UMG of any errant or unintended collection of data and/or portions of the incorporated Privacy Policy and cookie banners supporting any claimed misrepresentation or fraud by UMG." MTD at 17. But the Complaint plainly alleges that "[UMG's] representations that consumers could adjust their "Cookie Choices" and "Decline All" cookies and tracking technologies… if they clicked the "Decline All" button … was untrue." Compl. at ¶ 169. UMG's other points are rehashed arguments claiming it lacked scienter (contrary to Plaintiffs' allegations at ¶¶ 2, 3, 15, 120, 123, 126-127, 130, 142, 146, 163, 165, 170, 175, 205). None provide a reason to dismiss Plaintiffs' fraud claims.

### D. Plaintiffs Have Adequately Pled Breach of Contract Claims

#### 1. Plaintiffs adequately pled the existence of a contract.

UMG argues that there is *not* an enforceable contract between the Parties, because Plaintiffs "do not allege they provided any consideration" to visit UMG's Websites, and because the Complaint supposedly failed to identify any agreement or terms. MTD at 9. This is untrue. The Complaint alleges that UMG offered not to use certain Third Party cookies as a condition of Plaintiffs' and other consumers' visits to UMG's Websites, and that Plaintiffs and other consumers accepted that promise and spent time and effort browsing UMG's Websites and agreed to "necessary" data collection per the cookie banner and the incorporated Privacy Policy. Thus, UMG made a commitment to Plaintiffs, which promised that users "could either choose to 'Decline All' cookies or move the toggles to the left, indicating their choice and/or agreement to reject all 'Online Advertising' and 'Performance and Analytics' cookies." Compl. at ¶ 27.

Consequently, UMG's "conduct in permitting the Third Parties to track and collect the Private Communications of Website users who chose to reject all cookies and tracking technologies evaded the spirit of the bargain made between Defendant and Plaintiffs and Class members since it caused Plaintiffs and Class members to surrender more data than they had otherwise bargained for." *Id*. at ¶ 189. A "party's promise to be bound[,]" even in an online contract, "itself serves as adequate consideration[.]" *Meeks v. Experian Info. Servs., Inc*., Nos. 21-17023, 22-15028, 2022 U.S. App. LEXIS 35650, at *6 (9th Cir. Dec. 27, 2022). In exchange, Plaintiffs allege that UMG received a benefit—namely, that "Plaintiff and class members . . . surrendered [more] data" that they bargained for and that such data is valuable. Compl. at ¶¶ 189-190. These allegations are sufficient at the pleading stage to state a claim for breach of contract. *See Castillo v. Seagate Tech., LLC*, No. 16-cv-01958-RS, 2016 U.S. Dist. LEXIS 187428, at *29 (N.D. Cal. Sep. 14, 2016) (holding that plaintiffs provided consideration for the creation of a contract when they provided personal information to the defendant); *Daneshmand v. City of San Juan Capistrano*, 60 Cal. App. 5th 923, 934, 275 Cal. Rptr. 3d 245, 255 (2021) (holding "the amount of consideration necessary in any case is merely that of a peppercorn"). Moreover, UMG prematurely raises this issue at the pleadings stage, when "[t]he adequacy of

consideration is generally a question of fact[.]" *In re Southland Supply, Inc.*, 657 F.2d 1076, 1081 (9th Cir. 1981). Plaintiffs' claims here are thus properly pled and should not be dismissed.

**2. Plaintiffs' adequately pled breach of implied covenant of good faith.**

UMG again argues that the "breach of implied covenant" claims must be dismissed because "there is no contract here." MTD at 19. But numerous courts have found that being caused to surrender more data without consent supports a breach of contract claim. *See, e.g.*, *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1084–85 (N.D. Cal. 2023) (allowing breach of contract claims to proceed against defendant for collecting communications off-site without consent); *In re Google RTB Consumer Priv. Litig.*, 606 F. Supp. 3d 935, 939–40 (N.D. Cal. 2022) (same).

Additionally, UMG argues that the implied covenant claim "must be dismissed because it is based on the same conduct as the breach of contract claim." ECF 1, 19. But breach of implied covenant is not duplicative of a breach of contract claim when a plaintiff alleges that the defendant acted in bad faith. *See Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 352 (2000). Here, Plaintiffs allege UMG's bad faith in seeking consent from users of its Websites to place advertising cookies and still tracking them despite their express rejection. *Calhoun v Google LLC*, 526 F. Supp. 3d at 634 (N.D. Cal 2021) (denying dismissal of breach of implied covenant claim where "Plaintiffs allege not only that Google violated the contract between the parties, but also that Google acted in bad faith, such as by circumventing cookie blockers."). Furthermore, as discussed above, Plaintiffs seek different remedies for each claim, since damages for each claim are provided under different sections of California code. Because these claims are plead in the alternative and provide different remedies, they are not redundant.

**E. Plaintiffs' Unjust Enrichment Claim May Proceed.**

UMG contends that Plaintiffs' unjust enrichment claim—pled in the alternative—is barred as a matter of law. MTD at 18. UMG again seeks to have it "both ways." It argues there is no express contract or consideration such that the breach of contract claim must be dismissed, while also arguing the unjust enrichment must be dismissed because Plaintiffs allege an express contract and a breach. *Id*. Not so. The Ninth Circuit regularly allows independent claims for

unjust enrichment to proceed. *See Bruton v. Gerber Prod. Co.*, 703 F. App'x 468, 470 (9th Cir. 2017); *see also In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 803 (N.D. Cal. 2019) (permitting unjust enrichment claim to proceed).

To successfully plead unjust enrichment, "a plaintiff must show that the defendant received an unjustly retained a benefit at the plaintiff's expense." *Katz-Lacabe*, 668 F. Supp. 3d at 945. Here, Plaintiffs allege that UMG benefited from using their Private Communications and that the remedies at law are inadequate. Compl. ¶¶ 174–183. Indeed, if UMG is correct that Plaintiffs have not shown damages for their breach of contract claims, Plaintiffs will lack an adequate remedy at law for UMG's misuse of their private communications. "These allegations are all that is necessary at this stage in the proceedings." *Shah v. Capital One Fin. Corp.*, No. 24-cv-05985-TLT, 2025 U.S. Dist. LEXIS 42677, at *30–31 (N.D. Cal. Mar. 3, 2025) (refusing to dismiss unjust enrichment claims in a privacy case); *see also A.J. v. LMND Med. Grp.*, No. 24-cv-03288-RFL, 2024 U.S. Dist. LEXIS 194480, at *4 (N.D. Cal. Oct. 25, 2024) (same).

**F. Plaintiffs Sufficiently Plead Trespass to Chattels.**

"In order to prevail on a claim for trespass based on accessing a computer system, the plaintiff must establish: (1) defendant intentionally and without authorization interfered with plaintiff's possessory interest in the computer system; and (2) defendant's unauthorized use proximately resulted in damage." *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058, 1069–70 (N.D. Cal. 2000) (citation omitted). A plaintiff may satisfy the damages element by pleading that the trespass "impaired the condition, quality, or value of the personal property." *Fields v. Wise Media, LLC*, No. 12-CV-05160 WHA, 2013 U.S. Dist. LEXIS 136914, 2013 WL 5340490, at *4 (N.D. Cal. Sept. 24, 2013) (citing *Intel Corp. v. Hamidi*, 30 Cal.4th 1342, 1356 (2003)). This includes where the alleged changes "interfere[] with the intended functioning of the system." *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1069 (N.D. Cal. 2012).

The Complaint properly pleads trespass to chattels. UMG's conduct interferes with Plaintiffs' computers' security, which is an important and intended function of those systems. The Ninth Circuit has already ruled that such breaches of privacy are an injury-in-fact sufficient to support standing to assert trespass to chattels. *See, e.g., In re Facebook Inc. Internet Tracking*

*Litig.*, 956 F.3d at 601 (privacy violation establishes standing for alleged trespass to chattels). Just as breaking open a safe would constitute a trespass to chattel by interfering with that safe's function, placing tracking cookies on a user's computer interferes with that computer's ability to function as its owner intends. The cookies also interfere with the function of Plaintiffs' computers by taking up storage space. *See In re Meta Healthcare Pixel Litig.*, 713 F. Supp. 3d 650, 659 (N.D. Cal. 2024) (trespass to chattels properly pled where plaintiff "ha[s] alleged measurable harm from the loss of available storage space on their devices"); Compl. ¶ 208.

The cases UMG cites are distinguishable. For example, UMG's reliance on *Intel Corp. v. Hamidi* is misplaced because, as noted by the *In re Meta Healthcare* court, "cookies remain on users' devices and continue to use storage and resources," which supports a trespass to chattels claim. 713 F. Supp. 3d at 658–659. But as described above, this area of law has developed significantly over the past decade, including several key decisions from the Ninth Circuit all but abrogating *In re iPhone Application Litig.*, 844 F. Supp. at 1040.

**G. The Motion to Strike is Baseless.**

UMG moves to strike numerous factual allegations and legal claims that it does not like. This use of a motion to strike to obtain factual judgements is an egregious abuse of Rule 12(b)(1). For instance, the bulk of UMG's objection to the screenshots is that they are undated. On a practical level, UMG is attempting to argue that the screenshots—which, to be clear, were taken by counsel as part of the pre-filing investigation in this matter—cannot even be included in the Complaint because they were not generated contemporaneously with the actual violation alleged. This is absurd. Just because the screenshots were generated at a later date does not make then "immaterial" or "scandalous." The Complaint offers the screenshots as representative of what the Website displayed to Plaintiffs and other consumers, and that is sufficient and material at this stage. UMG will have an opportunity to challenge this evidence and provide its own counter-evidence during discovery. There is no requirement that every image presented in a complaint must have been generated during the events that give rise to the claim pled in that complaint. UMG cites no authority to support such a rule for the simple reason that no such rule exists.

UMG's other arguments in its motion to strike are equally specious. It cites *O'Shea v.*

*Littleton*, 414 U.S. 488, 494 (1974), for the proposition that Plaintiffs cannot plead a class action without first establishing an Article III case or controversy. But *O'Shea* never even mentioned a motion to strike allegations from a complaint, and any Article III standing arguments should have been presented in a motion under Rule 12(b)(6), not a motion to strike.

Next, UMG argues that UMG sites not visited by Plaintiffs should not be listed in the Complaint. This argument directly parallels the "no standing for unpurchased products" argument typically presented in false advertising cases. *See Victor v. R.C. Bigelow, Inc.*, No. 13-cv-02976-WHO, 2014 U.S. Dist. LEXIS 34550, at *24 (N.D. Cal. Mar. 14, 2014) (collecting cases, discussing merits of addressing as a question of standing on motion under Rule 12(b)(6) versus at class certification). But there is widespread agreement that plaintiffs can have standing to sue for false advertising of unpurchased products if the products and alleged false claims are substantially identical. *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012). Here, all of UMG's Websites are alleged to run on a common platform and make the same false promise that UMG will not use online advertising and performance and analytics cookies if visitors decline them. The claims thus involve physically similar Websites that cause essentially identical injuries giving rise to essentially identical claims. They are thus "substantially similar," *see Yamasaki v. Zicam LLC*, No. 21-cv-02596-HSG, 2021 U.S. Dist. LEXIS 205494, at *6 (N.D. Cal. Oct. 25, 2021) (laying out "substantial similarity" test), such that Plaintiffs have standing to pursue claims involving the related Websites. If UMG had wished to argue that Plaintiffs lack Article III standing to sue UMG for privacy violations involving other UMG websites based on the same platform as those Plaintiffs visited, it should have made that argument under Rule 12(b)(6), not in a motion to strike.

Ironically, having argued that all screenshots taken of its Websites at any other time then during the Plaintiffs' visits must be stricken, UMG turns around and argues that Plaintiffs must include screenshots of every single website listed in the Complaint as run by UMG. It is obvious that UMG seeks to immunize itself by creating a pleading standard so strict that the only way to meet it is to document being defrauded while being defrauded, which is absurd, because no one who recognized a transaction as fraudulent would go through with it.

## V. LEAVE TO AMEND SHOULD BE GRANTED

Plaintiffs respectfully request leave to amend to correct any defects the Court identifies. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1990) (a court should grant leave to amend "if it appears at all possible that the plaintiff can correct the defect").

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court fully deny Defendant's Motion to Dismiss or, in the alternative, grant Plaintiffs leave to amend.

Dated: July 7, 2025

**GUTRIDE SAFIER LLP**

*/s/ Anthony J. Patek*

Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
todd@gutridesafier.com
Kali R. Backer (State Bar No. 342492)
kali@gutridesafier.com
Anthony J. Patek (State Bar No. 228964)
anthony@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*