**BAKER & HOSTETLER LLP**
Bethany G. Lukitsch (SBN 314376)
*blukitsch@bakerlaw.com*
Kamran B. Ahmadian (SBN 314566)
*kahmadian@bakerlaw.com*
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067
Telephone: 310.820.8800
Facsimile   310.820.8859

**BAKER & HOSTETLER LLP**
Victoria L. Weatherford (SBN 267499)
*vweatherford@bakerlaw.com*
600 Montgomery Street, Suite 3100
San Francisco, CA 94111
Telephone: 415.659.2600
Facsimile:  415.659.2601

*Attorneys for Defendant*
UNIVERSAL MUSIC GROUP, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VISHAL SHAH and CHRISTINE WILEY, individually, on behalf of themselves, the general public, and those similarly situated, | CASE NO.:  5:25-CV-03095-PCP |
| Plaintiffs, | [*Assigned to Hon. P. Casey Pitts*] |
| v. | **REPLY IN SUPPORT OF DEFENDANT UNIVERSAL MUSIC GROUP, INC.'S MOTION TO DISMISS THE CLASS ACTION COMPLAINT, AND MOTION TO STRIKE** |
| UNIVERSAL MUSIC GROUP, INC., | |
| Defendant. | **Date**:   August 21, 2025<br>**Time**:   10:00 a.m.<br>**Dept.**:   Courtroom 8, 4th Floor |
| | **Action Filed:** April 4, 2025 |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................ 1

II.     PLAINTIFFS' ALLEGATIONS FAIL TO SATISFY RULE 9(b) ................................ 1

III.    PLAINTIFFS FAIL TO ALLEGE A COGNIZABLE INJURY REQUIRING
        DISMISSAL OF ALL COUNTS ...................................................................... 2

        A.    Plaintiffs' Reliance on *In re Facebook* is Misplaced. ......................... 2

        B.    Plaintiffs Fail to Allege an Invasion of Privacy. ................................ 4

        C.    Plaintiffs' Remaining Damage Theories Fail. .................................... 4

IV.     PLAINTIFFS' COMMON LAW PRIVACY CLAIMS FAIL ...................................... 6

        A.    Plaintiffs Have Not Alleged a Reasonable Expectation of Privacy in Their
              Data. ....................................................................................... 6

        B.    Nothing UMG did was "highly offensive." ....................................... 7

V.      PLAINTIFFS' WIRETAPPING (CIPA § 631) CLAIM FAILS ................................ 8

        A.    Plaintiffs Failed to Plead that Their "Communications" were "Intercepted"
              While "In Transit". ..................................................................... 8

        B.    Plaintiffs Have Failed To Allege The Requisite Scienter Requirement. ........ 9

VI.     PLAINTIFFS' PEN REGISTER CLAIM SHOULD BE DISMISSED ........................ 10

VII.    THE REMAINING COMMON LAW CLAIMS SHOULD BE DISMISSED .............. 12

        A.    Plaintiff's Unjust Enrichment Claim Fails as a Matter of Law. ............. 12

        B.    Plaintiffs' Contract Claims Fail. .................................................. 12

VIII.   PLAINTIFFS' TRESPASS TO CHATTELS CLAIM MUST BE DISMISSED. ........... 13

IX.     THE COMPLAINT'S IMMATERIAL AND CLASS ALLEGATIONS SHOULD
        BE STRICKEN. ......................................................................................... 14

X.      CONCLUSION. .......................................................................................... 15

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguilera v. Pirelli Armstrong Tire Corp.*,
223 F.3d 1010 (9th Cir. 2000) ........................................................................ 12

*C.M. v. MarinHealth Med. Grp., Inc.*,
2024 WL 217841 (N.D. Cal. Jan. 19, 2024) ................................................... 12

*Castillo v. Seagate Tech., LLC*,
2016 WL 9280242 (N.D. Cal. Sept. 14, 2016) ................................................ 13

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024) ............................................................. 9

*Daneshmand v. City of San Juan Capistrano*,
60 Cal. App. 5th 923 (2021) ........................................................................... 13

*Doe 1 v. Univ. of San Francisco*,
685 F. Supp. 3d 882 (N.D. Cal. 2023) ........................................................... 15

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ..................................................... 6, 9, 14

*In re Facebook*,
956 F.3d 589 (9th Cir. 2020) ................................................................. *passim*

*In re Facebook*,
956 F.3d at 598–99 .......................................................................................... 6

*Gabrielli v. Motorola Mobility, LLC*,
2025 WL 1939957 (N.D. Cal. July 14, 2025) ..................................... 2, 5, 13, 14

*Gardiner v. Walmart Inc.*,
2021 WL 2520103 (N.D. Cal. Mar. 5, 2021) ................................................ 5, 13

*In re Google Assistant Privacy Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ............................................................. 5

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023) .......................................................... 11

*Hameed v. IHOP Franchising*,
520 F. App'x 520 (9th Cir. 2013) ................................................................... 12

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ........................................................... 7

Baker & Hostetler LLP
Attorneys at Law
Los Angeles

*Hill v. Nat'l Collegiate Athletic Ass'n*,
    7 Cal. 4th 1 (1994) .................................................................................................................... 8

*Huynh v. Quora, Inc.*,
    2019 WL 11502875 (N.D. Cal. Dec. 19, 2019) ...................................................................... 5, 13

*In re iPhone Application Litig.*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) ................................................................................... 14

*James v. Walt Disney Co.*,
    701 F. Supp. 3d 942 (N.D. Cal. 2023) ..................................................................................... 10

*Jones v. Tonal Sys., Inc.*,
    751 F. Supp. 3d 1025 (S.D. Cal. 2024) ...................................................................................... 8

*Khamooshi v. Politico LLC*,
    2025 WL 1408896 (N.D. Cal. May 13, 2025) ............................................................................ 3

*Konop v. Hawaiian Airlines, Inc.*,
    302 F.3d 868 (9th Cir. 2002) ...................................................................................................... 9

*In re LinkedIn User Privacy Litig.*,
    932 F. Supp. 2d 1089 (N.D. Cal. 2013) ..................................................................................... 5

*In re Meta Healthcare Pixel Litig.*,
    713 F. Supp. 3d 650 (N.D. Cal. 2024) ................................................................................... 5, 6

*Mikulsky v. Bloomingdale's, LLC*,
    713 F. Supp. 3d 833 (S.D. Cal. 2024) ........................................................................................ 9

*Mirmalek v. L.A. Times Commc'ns LLC*,
    2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) .......................................................................... 11

*Morilha v. Alphabet Inc.*,
    2024 WL 5205542 (N.D. Cal. Dec. 23, 2024) ............................................................................ 8

*Resnick v. Hyundai Motor America, Inc.*,
    2017 WL 1531192 (C.D. Cal. Apr. 13, 2017) ........................................................................... 15

*Rodriguez v. Autotrader.com, Inc.*,
    762 F. Supp. 3d 921 (C.D. Cal. 2025) .................................................................................... 4, 5

*Rodriguez v. Google LLC*,
    2021 WL 2026726 (N.D. Cal. May 21, 2021) .......................................................................... 4, 5

*Rodriguez v. Google LLC*,
    2022 WL 214552 (N.D. Cal. 2022) ............................................................................................. 9

*Rosenow v. Facebook, Inc.*,
    2020 WL 1984062 (S.D. Cal. 2020) ........................................................................................... 9

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Schulz v. Cisco Webex, LLC*,
    2014 WL 2115168 (N.D. Cal. May 20, 2014) ........................................................ 12

*Shah v. Fandom, Inc.*,
    2024 WL 4539577 (N.D. Cal. Oct. 21, 2024) ........................................................ 11

*Smith v. Yeti Coolers*,
    LLC, 754 F. Supp. 3d 933 (N.D. Cal. 2023) ........................................................ 10

*Valenzuela v. Kroger Co.*,
    2024 WL 1336959 (C.D. Cal. Mar. 28, 2024) ........................................................ 9

*Williams v. What If Holdings*,
    LLC, 2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ........................................... 8

*Winsor v. Sequoia Benefits & Ins. Servs., LLC*,
    62 F.4th 517 (9th Cir. 2023) ........................................................................... 4

*In re Yahoo Mail Litig.*,
    7 F. Supp. 3d 1016 (N.D. Cal. 2014) ................................................................. 6

*In re Zynga Priv. Litig.*,
    750 F.3d 1098 (9th Cir. 2014) ...................................................................... 6, 7

**Statutes**

Cal. Penal Code § 20 .......................................................................................... 9

Cal. Penal Code § 638.51 ..........................................................................9, 10, 11, 12

Cal. Penal Code § 631(a) second clause ..........................................................8, 9, 10

**Other Authorities**

California Constitution ....................................................................................... 6

Rule 9(b) ....................................................................................................1, 2, 12

Rule 12(b)(6) ................................................................................................. 15

Rule 12(f) ..................................................................................................... 15

iv

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## I.    INTRODUCTION

Plaintiffs' Opposition ("Opp.") fails to confront the fundamental pleading deficiencies in their Complaint as identified in UMG's Motion to Dismiss ("Motion"). Rather than identify specific factual allegations about their ***own experiences*** with the Websites and the alleged misrepresentations and harms—which they cannot—Plaintiffs rely on generalized and conclusory assertions and overstated holdings of inapposite case law.  Plaintiffs' heavy reliance on *Davis v. Facebook, Inc.* ("*In re Facebook*"), 956 F.3d 589 (9th Cir. 2020), is particularly misplaced. The case simply does not support the propositions they advance given that Plaintiffs have failed to allege similar factual allegations that underpinned the Ninth Circuit's holding. As such, Plaintiffs cannot invoke its authority. Moreover, Plaintiffs concede critical pleading defects concerning the statute of limitations. As a result, they fail to establish timeliness for any of their claims, and each cause of action should be dismissed with prejudice.

To the extent the Complaint survives dismissal, the Court should strike the impertinent allegations concerning Websites Plaintiffs do not claim to have visited, as well as the facially overbroad class allegations.

## II.    PLAINTIFFS' ALLEGATIONS FAIL TO SATISFY RULE 9(B)

Plaintiffs contend that their generalized allegations satisfy Rule 9(b)'s heightened pleading standard by asserting the "who, what, when, where, and how" of UMG's purported misrepresentations. *See* Opp. at 5:12–22. But Plaintiffs fail to confront UMG's central point: the Complaint lacks specific factual allegations detailing how *they themselves* were supposedly defrauded. Rule 9(b) requires more than abstract or illustrative examples—it demands particularized facts showing how each named plaintiff personally encountered and relied upon the alleged misrepresentations.

Courts routinely reject fraud-based claims that omit such individualized allegations. *See* Mot. at 6. The authorities Plaintiffs cite are inapposite. In *Tan v. Quick Box, LLC*, the plaintiff provided multiple examples of the challenged advertisements and websites when making *her* purchase, specifically alleged the ads and websites *she* viewed when making her purchase that made similar or identical misrepresentations, and most importantly, that her inability to provide the exact

1

URL and ads she viewed was due to the defendant's deliberate deletion. 2020 WL 7226440, at *25 (S.D. Cal. Dec. 8, 2020). Likewise, in *Rosales v. FitFlop, LLC*, the plaintiffs referenced the actual advertisements *and* attached substantially similar advertisements they allegedly viewed, which formed the basis of their claims. 882 F. Supp. 2d 1168, 1176. Here, by contrast, Plaintiffs allege no such facts. The Complaint is silent as to what device(s) or browser(s) Plaintiffs used to access the Websites, what cookie settings were enabled, whether cookies were automatically accepted or deleted, whether Plaintiffs viewed or clicked on the "Privacy Policy" linked in the Cookie Banner, or how the select few examples of the thirty-nine websites from unknown times in the Complaint are identical or similar to alleged misrepresentations made *to Plaintiffs*.[1] Absent these critical details, Plaintiffs have not met the particularity requirement of Rule 9(b).

### III.    PLAINTIFFS FAIL TO ALLEGE A COGNIZABLE INJURY REQUIRING DISMISSAL OF ALL COUNTS

#### A.    Plaintiffs' Reliance on *In re Facebook* is Misplaced.

In their Opposition, Plaintiffs rely heavily on *In re Facebook* to support their claim that they have adequately pleaded that they have suffered a cognizable privacy injury. But Plaintiff's presentation of *In re Facebook* lacks the requisite factual context, broadly mischaracterizes the scope of the Ninth Circuit's holding, and advances sweeping assertions that bear little resemblance to the facts or legal issues presented in this case. Indeed, the factual allegations advanced by the plaintiffs in *In re Facebook* are glaringly different from the scant facts pled by Plaintiffs here.

For example, in *In re Facebook* the Ninth Circuit held that the plaintiffs had adequately pled a reasonable expectation of privacy based on several factors. *See id.* at 602. First, the Ninth Circuit concluded that the amount of data allegedly collected was significant based on allegations that Facebook obtained "an enormous amount of individualized data" constituting an individual's "comprehensive browsing history" by collecting "URLs of third-party websites … ***operating***

---

[1] Respectfully, this Court should not be persuaded by Judge Tigar's decision in *Gabrielli v. Motorola Mobility, LLC*, 2025 WL 1939957, at *14 (N.D. Cal. July 14, 2025). In *Gabrielli*, unlike here, Plaintiff brought claims involving a single website. But more importantly, it is impossible to evaluate if and *how* any statements made by Defendant (which differ from Motorola's) are misleading without more detail regarding Plaintiffs' own interactions (if any) with the thirty-nine websites and what cookies or information (if any) of theirs was transmitted.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*outside of Facebook's platform.*" *Id.* at 603, 605. Additionally, the Ninth Circuit emphasized that some of the alleged data collected was sensitive, such as information about plaintiff's visits to sensitive websites. *Id.* Plaintiffs further alleged that Facebook collected communications data, including the "full referral URL (including the exact subpage of the precise items being purchased)," created from a user's click on a link returned from a search on Google. *Id.* at 605. After noting the large amount and high sensitivity of the data collected, the court considered whether the manner of the data collection "violate[d] social norms." *Id.* at 603. The court emphasized that the data collection occurred after users had logged out of their Facebook accounts, which contravened its affirmative statements to users that "[i]f you log out of Facebook, we will not receive this information about partner websites, but you will also not see personalized experiences on these websites." *Id.* at 602–04. Accordingly, the court found that plaintiffs plausibly alleged that based on Facebook's representations, "a user might assume that only logged-in user data would be collected." *Id.*

In stark contrast, Plaintiffs here allege only that they visited UMG's website and interacted with a cookie banner. The Complaint is otherwise devoid of any specific allegations regarding what pages Plaintiffs visited, what information (if any) they entered, or how they interacted with the site in any meaningful way. Plaintiffs do not—and cannot—allege that UMG collected anything remotely resembling a "comprehensive browsing history," nor do they (or could they) claim that any sensitive or confidential information was obtained. Moreover, unlike in *In re Facebook*, Plaintiffs' allegations of UMG's "misrepresentations" are directly contradicted by the Privacy Policy and cookie banner—which do not state that cookies will not be placed, that previously placed cookies will be deleted, or that declining tracking by certain third-party cookies mean a user is declining placement or tracking by *all* cookies, including essential cookies.

Given these fundamental factual differences, *In re Facebook* is readily distinguishable and does not support Plaintiffs' claims. It certainly does not undermine the well-established authority cited in UMG's Motion, which Plaintiffs otherwise fail to distinguish. *See* Mot. at 7:14–8:14; *see also Khamooshi v. Politico LLC*, 2025 WL 1408896, at *6 (N.D. Cal. May 13, 2025) (dismissing similar allegations for lack of cognizable injury).

Baker & Hostetler LLP
Attorneys at Law
Los Angeles

3

**B.      Plaintiffs Fail to Allege an Invasion of Privacy.**

As discussed above, Plaintiffs' heavy reliance on *In re Facebook*, 956 F.3d 589 (9th Cir. 2020), to establish a cognizable privacy injury is unavailing. *See* Opp. at 7:6–8:7. The Opposition only underscores Plaintiffs' failure to allege that any of ***their own personal information*** was collected by a website cookie after interaction with the cookie banner.  For example, Plaintiffs do not allege they entered search terms, submitted data, or meaningfully engaged with a website.  This omission is dispositive. *See Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517, 523 (9th Cir. 2023) ("[P]laintiffs must … show that they ***personally have been injured***.") (emph. added).

Plaintiffs' remaining authorities are similarly inapposite. Each involved factual allegations regarding the high sensitivity or private nature of the allegedly collected information. *See* Opp. at 7 (citing *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1119 (9th Cir. 2020) (finding injury where Facebook allegedly intercepted and catalogued URLs *shared in private messages* without consent); *Yockey v. Salesforce, Inc.*, 688 F. Supp. 3d 962, 969–70 (N.D. Cal. 2023) (finding injury where plaintiffs disclosed *highly sensitive personal health* information *over private chat*); *In re Facebook*, 956 F.3d at 603 ("[T]he nature of the allegedly collected data is [] important.")). Plaintiffs here allege no such facts. While Plaintiffs claim "Private Communications" were collected, they do not allege any *facts* to support this conclusory label by showing that any information collected was in fact a "communication," let alone that it contained sensitive or confidential information. That omission is fatal. *See Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921, 926–27 (C.D. Cal. 2025) ("Not all information will qualify; the information must be sufficiently personal or sensitive that its disclosure is harmful.").

**C.      Plaintiffs' Remaining Damage Theories Fail.**

***No Loss of Value or Control of Information:*** Whether framed as an "alternative" theory of harm or not, Plaintiffs' Opposition fails to address the core deficiency in their pleading: they do not allege any facts showing that *their* data has independent economic value or that any purported loss of control over such data caused *them* personal economic harm. *See* Opp. at 8. Additionally, Plaintiffs' reliance on *In re Facebook* and *Rodriguez v. Google* is misplaced. *Id*. As discussed above, *In re Facebook* is distinguishable due to the absence of comparable factual allegations.

4

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Likewise, *Rodriguez* involved similar allegations regarding the collection of plaintiffs' personal information by Google on mobile applications that were not owned by Google—a wholly different scenario than what is alleged here. *See Rodriguez v. Google LLC*, 2021 WL 2026726, at *3 (N.D. Cal. May 21, 2021). Critically, Plaintiffs cite no authority supporting the proposition that a loss of value or control over unpled, nonspecific personal information—without more—can constitute a viable theory of damages. As explained in UMG's Motion, Courts have consistently rejected such speculative theories in the absence of concrete allegations of harm. *See* Mot. at 8:15–9:3.

*No Benefit of the Bargain:* Plaintiffs' reliance on a "lost benefit of the bargain" theory is legally insufficient to establish damages where, as here, they do not allege that they paid anything—either in monetary form or in data they intended to monetize—*in exchange* for access to UMG's websites. *See Huynh v. Quora, Inc.*, 2019 WL 11502875, at *10 (N.D. Cal. Dec. 19, 2019); *Gabrielli*, 2025 WL 1939957, at *13 (rejecting benefit-of-the-bargain theory where defendant's services were free). Plaintiffs do not dispute that UMG's websites are *freely accessible* and that users are *not required* to interact with the cookie banner to gain access (let alone that their access depends on *how* they interact with the cookie banner). As such, Plaintiffs' reliance on the benefit of the bargain as a damage theory should be rejected as a matter of law. *See In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 834 (N.D. Cal. 2020) (benefit-of-the-bargain theory fails where plaintiffs did not pay for services); *Gardiner v. Walmart Inc.*, 2021 WL 2520103, at *6 (N.D. Cal. Mar. 5, 2021) (same); *In re LinkedIn User Privacy Litig.*, 932 F. Supp. 2d 1089, 1093 (N.D. Cal. 2013) (same).

*Reduction of storage and value of computing devices:* To be clear, it is Plaintiffs who are conflating injury-in-fact and economic injury. *See* Mot. at 7 (arguing that Plaintiffs failed to allege damages, a required element for each of the claims, and not raising a challenge to Article III standing)). Plaintiffs again cite factually distinguishable and inapplicable cases to argue they have alleged sufficient harm from the loss of available storage space in their devices. *See In re Facebook,* 956 F.3d. at 599 (in context of Article III standing, not whether the plaintiff had pled the elements of a trespass to chattels claim); *In re Meta Healthcare Pixel Litig.*, 713 F. Supp. 3d 650, 659 (N.D. Cal. 2024) (trespass to chattels properly pled where plaintiffs alleged *non-temporary* placement of

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

software on devices that reduced storage). Mere allegations that placing tracking cookies interferes with the function of computing devices as the owners intend, without any factual support, are too conclusory to state a claim for trespass to chattels. *See Doe I v. Google LLC*, 741 F. Supp. 3d 828, 846 (N.D. Cal. 2024) ("[N]othing about the...existence of cookies physically impairs the functioning of Plaintiffs' or other users' computing devices in any way."). Unlike in *In re Meta Healthcare*, Plaintiffs fail to specifically allege impairment like "measurable increases in web-page loading time." *See In re Meta Healthcare,* 713 F. Supp. 3d at 657.

## IV.    PLAINTIFFS' COMMON LAW PRIVACY CLAIMS FAIL[2]

### A.    Plaintiffs Have Not Alleged a Reasonable Expectation of Privacy in Their Data.

Once again, Plaintiffs' Opposition fails to confront the central deficiency in their Complaint: the absence of any facts specific to the named Plaintiffs. Critically, Plaintiffs do not allege what data was purportedly collected during their visits to the public Websites, nor do they explain how any such data qualifies as sensitive or personal. These omissions are fatal. Under California law, an invasion of privacy claim demands a high threshold—one that cannot be met without concrete allegations of sensitive data collection. *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1038 (N.D. Cal. 2014) ("The California Constitution sets a 'high bar' for establishing an invasion of privacy claim."). Instead of addressing this requirement, Plaintiffs assert a vague expectation of privacy in their undefined "browsing behavior and communications" with a public website, allegedly based on UMG's supposed "promise" not to collect such information. *See* Opp. at 11:2–5. This argument is both legally unsupported and factually deficient. Plaintiffs cite no authority holding that a cookie banner or privacy notice on a free, public website constitutes a binding promise sufficient to create a reasonable expectation of privacy of all of Plaintiffs' interactions and data. Even in *In re Facebook*, a case Plaintiffs heavily rely on, the court emphasized that the presence of sensitive data—not merely the existence of a statement made in a privacy notice—was central to its analysis. 956 F.3d at 602–05. Moreover, Plaintiffs' attempt to sidestep *In re Zynga Priv. Litig.*, 750 F.3d

---

[2] Plaintiffs concede that the Complaint fails to include *any facts* sufficient to place Plaintiff Wiley's common law privacy claims within the two-year statute of limitations for her. *See* Opp. at 10:18 –27. Accordingly, these claims must be dismissed.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1098 (9th Cir. 2014), is unavailing. The Ninth Circuit in *In re Facebook* distinguished *Zynga* on its facts and did not overrule it. *See In re Facebook*, 956 F.3d at 605 ("In *Zynga*, we concluded that the collected information was not problematic because it differed from the URLs containing sensitive information."). Conversely, in *In re Facebook*, the court found a plausible privacy violation where plaintiffs alleged the collection of their **sensitive** personal information and a promise made by Facebook to not collect it. *See id.* at 602–05.

In any event, UMG made no such "promises." The Privacy Notice—properly before the Court—speaks for itself. As detailed in Section III.A, Plaintiffs' attempt to recharacterize it as promises is both overbroad and unsupported. This Court should reject that characterization and dismiss the Plaintiffs' privacy claims accordingly.

### B.      Nothing UMG did was "highly offensive."

Even assuming that Plaintiffs had a reasonable expectation of privacy in their unspecified browsing data (they do not), their common law privacy claims still fail because the collection of general browsing data is not "highly offensive." *See Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1085 (N.D. Cal. 2022). Plaintiffs' Opposition relies on inapposite cases involving the collection of highly sensitive health or financial information, or instances of pervasive cross-site tracking that continued even after users left the defendants' websites. *See* Opp. at 12:7–26 (citing *In re Facebook*, 956 F.3d at 598–99 (cross-website tracking even when logged off); *St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675, at *12 (N.D. Cal. Oct. 1, 2024) (disclosure of **confidential medical information**); *Katz-Lacabe v. Oracle*, 668 F. Supp. 3d 928, 942 (N.D. Cal. 2023) (collection of "**sensitive health and personal safety information**"); *Silver v. Stripe*, 2021 WL 3191752, at *6 (N.D. Cal. July 28, 2021) (aggregating **financial information**); *In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1155 (N.D. Cal. 2021) (geolocation data even while not using apps); *Hart v. TWC Prod. & Tech. LLC*, 526 F. Supp. 3d 592, 602 (N.D. Cal. 2021) (**precise location data** while not using apps)). No such allegations appear here, and Plaintiffs' attempted analogies to those materially different scenarios underscores their theory's weakness.

Moreover, Plaintiffs are mistaken in suggesting that the question of whether an intrusion is "highly offensive" cannot be resolved at the pleadings stage. Courts routinely dismiss privacy

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

claims as a matter of law where the alleged conduct does not rise to the level of an egregious violation. *See Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 40 (1994) ("[I]f Plaintiffs' allegations "show no reasonable expectation of privacy or an insubstantial impact on privacy interests, the question of invasion may be adjudicated as a matter of law."). Recent decisions confirm this principle. In *Morilha v. Alphabet Inc.*, 2024 WL 5205542, at *4 (N.D. Cal. Dec. 23, 2024), the court dismissed a privacy claim at the pleading stage, holding that the disclosure of IP addresses and geolocation data was not sufficiently egregious. Similarly, in *Jones v. Tonal Sys., Inc.*, 751 F. Supp. 3d 1025, 1043–44 (S.D. Cal. 2024), the court found no actionable intrusion where the plaintiff failed to allege that the data collected—via a website chat feature—was likely to be embarrassing or socially stigmatizing. The same result is warranted here. Plaintiffs' allegations fall well short of the "highly offensive" threshold. As such, they must be dismissed.

## V.    PLAINTIFFS' WIRETAPPING (CIPA § 631) CLAIM FAILS

The Opposition fails to address UMG's argument that Plaintiff Shah's CIPA claims are time-barred and thereby waives it, requiring dismissal. Plaintiffs also concede that UMG is not directly liable for violating § 631(a); rather, Plaintiffs attempt to advance their CIPA wiretapping claim through the aiding and abetting prong. *See* Opp. at 14, n. 2. Consequently, if the Court proceeds beyond the limitations issue, Plaintiffs otherwise failed to sufficiently allege an underlying predicate violation by a third party. *Williams v. What If Holdings*, LLC, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022) (holding aiding and abetting liability is "based entirely on whether [the third party] violated Section 631(a) in some way.").

### A.    Plaintiffs Failed to Plead that Their "Communications" were "Intercepted" While "In Transit".

Plaintiffs have failed to allege the two essential elements to state a claim under the second clause of California Penal Code § 631(a).

First, Plaintiffs assert that "user input data"—such as search queries, names, demographic information, email addresses, locations, or payment details—qualifies as a "communication" under § 631(a). *See* Opp. 15:4–10. Even *assuming arguendo* that such data could constitute a communication, Plaintiffs do not allege that they personally entered any such information on a

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

UMG website and their generalized assertions fall short. *See Mikulsky v. Bloomingdale's, LLC*, 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024) (dismissing § 631(a) claim where plaintiffs alleged only that their "interactions" were intercepted, without identifying the contents of any communication).

Second, Plaintiffs fail to plausibly allege that any communication was intercepted while "in transit." As the Ninth Circuit has made clear, interception under § 631(a) requires acquisition of the communication during transmission. *See Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) ("This conclusion is consistent with the ordinary meaning of 'intercept,' which is 'to stop, seize, or interrupt in progress or course before arrival.'"). The Complaint contains no factual allegations explaining how a third party acquired, let alone read or attempted to read, Plaintiffs' communications during transmission. Instead, Plaintiffs rely on conclusory assertions that an interception occurred. Courts have consistently held that such boilerplate allegations are insufficient. *See Rosenow v. Facebook, Inc.*, 2020 WL 1984062, at *7 (S.D. Cal. 2020) (dismissing wiretap claim where allegations of interception "in transit" were conclusory); *Rodriguez v. Google LLC*, 2022 WL 214552, at *2 (N.D. Cal. 2022) ("Using the word 'intercept' repeatedly is [] not enough without [] specific facts that make it plausible Google is intercepting their data in transit.").

Because Plaintiffs have failed to allege a viable violation of § 631(a), their derivative claim against UMG necessarily fails. *See Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1003 (N.D. Cal. 2024) (dismissing claim under Section 631(a)'s fourth clause where plaintiff failed to establish "underlying third-party violation" of preceding clauses).

**B.     Plaintiffs Have Failed To Allege The Requisite Scienter Requirement.**

Plaintiffs fail to identify any facts in the Complaint that would establish that UMG intentionally permitted third parties to track Plaintiffs after they rejected cookies. *See Doe I*, 741 F. Supp. 3d at 844 ("CIPA liability only extends to willful or intentional conduct."). Instead, Plaintiffs argue that criminal intent is not required merely because the CIPA does not explicitly require it. *See* Opp. at 16. Plaintiffs, however, do not identify any explicit language in Section 638.51 (nor can they) that dispenses with the default intent requirement built in every criminal violation. *See* Cal. Penal Code § 20; *Valenzuela v. Kroger Co.*, 2024 WL 1336959, at *4 (C.D. Cal. Mar. 28, 2024) ("In the absence of an explicit statutory scienter requirement, in California civil actions, the

common law definition [of aiding and abetting] applies.").

Thus, Plaintiffs must allege that UMG **intended** to aid and abet a third party's illegal wiretapping of Plaintiffs' communication. They do not. The only plausible inference from the Complaint is that UMG's cookie banner may have malfunctioned when users rejected non-essential cookies. *See* Compl. ¶ 30 ("[W]hen users rejected all 'Online Advertising' and 'Performance and Analytics' cookies, Defendant nonetheless continued to cause the Third Parties' cookies to be placed on users' devices and/or transmitted to the Third Parties."). Plaintiffs offer no facts suggesting UMG intended to wiretap its users or to facilitate such conduct by others.

Rather than identify factual allegations demonstrating intent (which they cannot do) Plaintiffs argue that courts have rejected the intent requirement—Plaintiffs are wrong. *See* Opp. at 16. For example, in *James*, a case that did not involve a cookie banner or the rejection of cookies on a website, there was no dispute that intent **was** a required element of a § 631(a) aiding and abetting claim. *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 954 (N.D. Cal. 2023) ("Plaintiffs do not fundamentally dispute that there must have been intent on the part of Disney to have Oracle intercept."). And while the court in *James* was willing to infer Disney intended to have Oracle intercept because Disney entered into a contract with Oracle, there is no basis for that inference here. Again, a far more reasonable inference, given the facts alleged, is that UMG's cookie banner *unintentionally* malfunctioned. Likewise, Plaintiffs' attempt to distinguish *Smith v. Yeti Coolers*, LLC, 754 F. Supp. 3d 933, 943–44 (N.D. Cal. 2023), fails. As in *Yeti*, Plaintiffs have failed to allege any facts to demonstrate that UMG was "acting with the third party in order to have the third party perform acts that violate the statute." *See id.* at 942. As the *Yeti* court recognized, "that requires both knowledge of the conduct that **will violate the statute** and a **purpose** of aiding, agreeing with, or employing the third party to commit those acts." *Id.* (emph. added). Plaintiffs' vague references to "some level of intent and knowledge" (Opp. at 18, citing Compl. ¶¶ 4, 15, 20–24) are conclusory and, as discussed, defy common sense.

## VI.    PLAINTIFFS' PEN REGISTER CLAIM SHOULD BE DISMISSED

As a threshold matter, Plaintiffs fail to respond to UMG's argument that their own allegations foreclose a claim under § 638.51. Specifically, Plaintiffs allege that cookies collect the

10

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

"contents" of their communications—yet by statutory definition, pen registers cannot capture content. Plaintiffs' silence on this point in their Opposition constitutes waiver. Their allegations are dispositive, and accordingly, their § 638.51 claim should be dismissed with prejudice.

Plaintiffs' remaining arguments are unavailing. They fail to meaningfully engage with the statutory requirement—or with § 638.52, which outlines the procedural steps law enforcement must follow before using a pen register—and ignore the statute's repeated references to telephonic devices. Instead, Plaintiffs rely on CIPA's broad definition of "pen register," which does not expressly limit its scope to telephonic surveillance. *See* Opp. at 18:25–28; 19:13–15. But this misses the point. The question is not merely whether website technology *could theoretically* fall within the definition. Section 638.51 prohibits the use of a pen register **only "without first obtaining a court order** pursuant to Section 638.52 or 638.53." This language is purposeful and limits the statute's reach to devices for which such a court order is available—i.e., **those used on telephone lines**. *See* Cal. Penal Code § 638.51. Plaintiffs offer no explanation for why the Legislature would prohibit the use of pen registers on non-telephonic technologies while simultaneously making it impossible to obtain the required court order for such use. This interpretation lacks common sense, would make compliance with the statute impossible, and would render half of the statute entirely superfluous.

The cases cited by Plaintiffs suffer from this flawed reasoning. *See* Opp. at 19 (citing *Mirmalek, Shah, Greenley*). For example, in each of these cases, the courts relied on the "expansive" definitions of "pen registers" and "electronic communication" in holding that Section 638.51 *could* apply to website technology. *See e.g., Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023) ("The Court cannot ignore the expansive language in the California Legislature's chosen definition."); *Shah v. Fandom, Inc.*, 2024 WL 4539577, at * (N.D. Cal. Oct. 21, 2024) (same). But none of these decisions meaningfully analyzed the statute's "court order" requirement or the cross-referenced provisions in §§ 638.52–53. *See generally, Greenley*, 684 F. Supp. 3d 1024; *Shah*, 2024 WL 4539577; *Mirmalek v. L.A. Times Commc'ns LLC*, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024). Nor did they examine the legislative history to determine whether their interpretations aligned with legislative intent. As explained in UMG's Motion—

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

11

which Plaintiffs do not address—the legislative history makes clear that § 638.51 was never intended to apply to online cookies. *See* Mot. at 16.

## VII.   THE REMAINING COMMON LAW CLAIMS SHOULD BE DISMISSED[3]

### A.   Plaintiff's Unjust Enrichment Claim Fails as a Matter of Law.

To be clear, it is Plaintiffs who are seeking to have it "both ways." Plaintiffs cannot seek restitution under a quasi-contract theory (unjust enrichment) while simultaneously alleging that there is an enforceable contract that governs that subject matter.  *See Hameed v. IHOP Franchising*, 520 F. App'x 520, 522 (9th Cir. 2013) ("[U]nder California law, unjust enrichment claims cannot proceed when the parties have a valid contract[.]") (citing *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1388)). That is precisely what Plaintiffs are doing in the Complaint.  *See* Compl., ¶¶ 174–191. While Plaintiffs may be permitted to "assert inconsistent theories of recovery at the pleading stage" and "even inconsistent claims alleging both the existence and the absence of an enforceable contract," plaintiffs may not "plead the existence of an enforceable contract and maintain a quasi-contract claim at the same time, ***unless the plaintiff has pled facts suggesting that the contract may be unenforceable or invalid***." *Schulz v. Cisco Webex, LLC*, 2014 WL 2115168, at *5 (N.D. Cal. May 20, 2014) (emph. added) (citing *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1389 (2012)). Plaintiffs have not identified any facts in the Complaint that suggest any contract is unenforceable.  As such, Plaintiffs' unjust enrichment claim fails as a matter of law.

### B.   Plaintiffs' Contract Claims Fail.

Plaintiffs have not adequately pled the existence of a contract, and in particular, they fail to allege the essential element of consideration for either an express or implied contract. Plaintiffs argue that consideration exists because they "surrendered [more] data" than expected and that such data is valuable. Opp. at 21 (citing Compl. ¶¶ 189–190). But courts have routinely rejected such generalized allegations. *See Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000) ("Under California law, a breach of contract claim requires a showing of appreciable and actual damage."); *C.M. v. MarinHealth Med. Grp., Inc.*, 2024 WL 217841, at *3 (N.D. Cal.

---

[3] Plaintiffs' Opposition merely repeats the flawed assertion that general allegations about UMG's purportedly false representations satisfy Rule 9(b)'s heightened pleading standard.  As detailed in Section I, *supra*, they do not.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Jan. 19, 2024) (requiring specific allegations of consideration for implied contract claims involving data privacy); *Huynh*, 2019 WL 11502875, at *10 (dismissing claim where plaintiffs failed to show they paid anything for the alleged privacy protections). As discussed above in Section III.C, Plaintiffs' reliance on a "lost benefit of the bargain" theory is unavailing—particularly where they neither paid for access to UMG's websites nor were required to interact with the cookie banner. *See, e.g., Gardiner*, 2021 WL 2520103, at *6; *Gabrielli*, 2025 WL 1939957, at *15 (dismissing contract claims for lack of consideration because website access was free).

The cases cited in Plaintiffs' Opposition are distinguishable and ultimately unhelpful. *See* Opp. at 21–22. For instance, *Castillo v. Seagate Tech., LLC*, 2016 WL 9280242, at *8 (N.D. Cal. Sept. 14, 2016), involved employees—not website visitors—who were ***required*** to provide personal information to their employer as a ***condition*** of receiving employment benefits. Similarly, *Daneshmand v. City of San Juan Capistrano*, 60 Cal. App. 5th 923, 934 (2021), concerned a written agreement supported by express consideration—neither of which is adequately alleged here. Plaintiffs' reliance on *Doe v. Meta Platforms, Inc.* and *In re Google RTB Consumer Priv. Litigation* is also misplaced. Contrary to Plaintiffs' characterization, neither case held that "being caused to surrender more data without consent" is sufficient to establish a breach of contract. *See* Opp. at 22.  In *Doe*, the existence of a contract was not in dispute; Facebook was attempting to invoke a limitation of liability clause to bar the plaintiff's contractual claims. *See* 690 F. Supp. 3d 1064, 1084 (N.D. Cal. 2023). And in *Google RTB*, plaintiffs alleged that they affirmatively accepted Google's Terms and Privacy Policy—which is not the case here. *See* 606 F. Supp. 3d 935, 943 (N.D. Cal. 2022). These cases involved much firmer (or undisputed) contractual relationships and do not support Plaintiffs' theory here, where no such agreement or consideration is alleged.

## VIII.    PLAINTIFFS' TRESPASS TO CHATTELS CLAIM MUST BE DISMISSED.

The Opposition confirms that the Complaint lacks any factual allegations supporting the essential element of damage for their trespass to chattels claim. Plaintiffs merely assert a generalized "reduction of storage, disk space, and performance" allegation. Compl. ¶ 208. But such conclusory allegations fall short of the required showing of harm—namely, a "***significant reduction in service*** constituting an interference with the intended functioning of the system"

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

proximately caused by the defendant's conduct. *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1069 (N.D. Cal. 2012) (emph. added). Absent factual allegations explaining how the placement of cookies caused substantial degradation in device performance, courts have consistently rejected such claims. *See, e.g., Doe I,* 741 F. Supp. 3d at 846 ("[N]othing about the source code or the existence of cookies physically impairs the functioning of the plaintiffs' computing devices"); *Gabrielli*, 2025 WL 1939957, at *15 (dismissing nearly identical allegations as "too conclusory" and unsupported by facts).

## IX.    THE COMPLAINT'S IMMATERIAL AND CLASS ALLEGATIONS SHOULD BE STRICKEN.

Once again, Plaintiffs either overlook or deliberately sidestep the central argument of UMG's Motion to Strike. UMG does not contend that the Complaint must include "contemporaneous screenshots." Rather, Plaintiffs must simply comply with bare minimum federal pleading standards by only including screenshots that have *some connection* to the claims asserted and factual allegations made by the Plaintiffs elsewhere in the Complaint. As set forth  in the Motion, and confirmed by Plaintiffs in their Opposition, the Complaint is bereft of any factual allegations that connect the undated exemplar screenshots to Plaintiffs' alleged visits.  In fact, the Complaint improperly includes screenshots from web pages Plaintiffs do not claim to have visited, using devices and browsers they do not allege to have used—critical distinctions in the context of cookie placement and retention. *See* Compl., ¶¶ 31–32, 39–42, 50, 53, 62, 65, 68.  By Plaintiffs' logic, a slip-and-fall complaint could permissibly include undated photos from areas the plaintiff never entered, or even from entirely different stores. This is patently absurd and flies in the face of widely accepted federal pleading standards. Absent factual allegations connecting the screenshots to the named Plaintiffs and their interactions with UMG's websites, the screenshots are irrelevant and immaterial and should be stricken.

Plaintiffs further contend that UMG's request to strike references in the Complaint to UMG websites Plaintiffs did not visit (see Compl. ¶ 1, n.1) is improper because those websites are purportedly "substantially similar" to those actually visited. *See* Opp. at 25:5–22. But as with their other arguments, Plaintiffs offer no factual allegations to support this assertion. The only

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

14

screenshots included in the Complaint are from a single website—postmalone.com—which is one of a few websites Plaintiffs claim to have visited and one of thirty-nine websites cited in the Complaint. There are no facts pled that would allow the Court to reasonably infer that the referenced websites are "substantially similar" in any relevant respect.

Plaintiffs also contend that UMG's challenge is, in substance, a "standing" argument that should have been brought under Rule 12(b)(6), not Rule 12(f). *See* Opp. at 25:19–22. UMG disagrees. The allegations concerning websites Plaintiffs did not visit are plainly irrelevant and immaterial to their claims, and thus properly subject to a motion to strike. Even if the Court were to accept Plaintiffs' framing (which it should not), it may still consider the standing issue in the context of a Rule 12(f) motion. *See, e.g., Doe 1 v. Univ. of San Francisco*, 685 F. Supp. 3d 882, 908 (N.D. Cal. 2023) (conducting standing analysis on a motion to strike).

Finally, Plaintiffs fail to respond to UMG's request to strike the class allegations. That silence constitutes waiver. *See Resnick v. Hyundai Motor America, Inc.*, 2017 WL 1531192, at *22 (C.D. Cal. Apr. 13, 2017) ("Failure to oppose an argument raised in a motion to dismiss constitutes waiver of that argument"). In any event, UMG's Motion demonstrates that, while striking class allegations at the pleading stage is uncommon, this case presents precisely the circumstances where such relief is warranted.

## X.    CONCLUSION

For all of the foregoing reasons, UMG respectfully requests that Plaintiff's Complaint be dismissed in its entirety with prejudice or, in the alternative, that certain allegations be dismissed and/or stricken.

Dated: July 28, 2025                    BAKER & HOSTETLER LLP

                                        By:    */s/ Victoria L. Weatherford*
                                               Bethany G. Lukitsch
                                               Victoria L. Weatherford
                                               Kamran B. Ahmadian

                                               *Attorneys for Defendant*
                                               UNIVERSAL MUSIC GROUP, INC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES