**BAKER & HOSTETLER LLP**
Bethany G. Lukitsch (SBN 314376)
*blukitsch@bakerlaw.com*
Kamran B. Ahmadian (SBN 314566)
*kahmadian@bakerlaw.com*
Jaein Cho (SBN 360090)
*jcho@bakerlaw.com*
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067
Telephone: 310.820.8800
Facsimile 310.820.8859

**BAKER & HOSTETLER LLP**
Victoria L. Weatherford (SBN 267499)
*vweatherford@bakerlaw.com*
600 Montgomery Street, Suite 3100
San Francisco, CA 94111
Telephone: 415.659.2600
Facsimile: 415.659.2601

*Attorneys for Defendant*
UNIVERSAL MUSIC GROUP, INC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

VISHAL SHAH and CHRISTINE WILEY, individually, on behalf of themselves, the general public, and those similarly situated,

Plaintiffs,

v.

UNIVERSAL MUSIC GROUP, INC.,

Defendant.

CASE NO.: 5:25-cv-03095-PCP

[*Assigned to Hon. P. Casey Pitts*]

**DEFENDANT UNIVERSAL MUSIC GROUP, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

*[Filed Concurrently with Request for Judicial Notice]*

**Date**: April 23, 2026
**Time**: 10:00 a.m.
**Dept.**: Courtroom 8, 4th Floor

**Action Filed:** April 4, 2025
**FAC Filed:** January 14, 2026

**TO THE HONORABLE COURT, AND TO PLAINTIFF AND ITS COUNSEL OF RECORD HEREIN:**

**NOTICE IS HEREBY GIVEN** that on, April 23, 2026, at 10:00 a.m., in Courtroom 8 of the above-entitled Court located on the 4th Floor of the Robert F. Peckham Courthouse, at 280 South First Street, San Jose, California, 95113, Defendant Universal Music Group, Inc. ("UMG")[1], will and hereby does move to dismiss with prejudice the First Amended Class Action Complaint ("FAC") of Plaintiffs Vishal Shah and Christine Wiley ("Plaintiffs"), filed individually and on behalf of others similarly situated [Dkt. No. 42].

UMG respectfully submits this Motion pursuant to Fed. R. Civ. P. 12(b)(6) on the ground that Plaintiffs fail to allege sufficient facts to plead: (1) a violation of the California Invasion of Privacy Act ("CIPA"), California Penal Code § 631(a); (2) a violation of CIPA, California Penal Code § 638.51; (3) invasion of privacy or intrusion upon seclusion; and (4) unjust enrichment.

This Motion is based on this Notice, the Memorandum of Points and Authorities, Request for Judicial Notice, all pleadings, papers and records on file in this Action, and such other oral argument and documentary evidence as may be presented at or before the time of adjudication of this Motion.

Dated: February 13, 2026

Respectfully submitted,
**BAKER & HOSTETLER LLP**

By: */s/ Kamran B. Ahmadian*
Bethany G. Lukitsch
Victoria L. Weatherford
Kamran B. Ahmadian
Jaein Cho

*Attorneys for Defendant*
UNIVERSAL MUSIC GROUP, INC.

---

[1] As explained in Defendant's Motion to Dismiss Plaintiffs' Class Action Complaint [Dkt. No. 21], Universal Music Investments, Inc., ***not*** Universal Music Group, Inc., is the proper defendant.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF CONTENTS


I. INTRODUCTION ........ - 1 -

II. FACTUAL BACKGROUND ........ - 2 -

A. UMG Lawfully and Transparently Uses Third-Party Cookies. ........ - 2 -

B. UMG Provides Visitors with Information Necessary to Make Choices About Data Sharing. ........ - 3 -

C. Plaintiffs' Allegations About Their Own Experiences Lack Basic and Necessary Facts. ........ - 5 -

III. ISSUES TO BE DECIDED ........ - 6 -

IV. LEGAL STANDARD ........ - 6 -

V. ARGUMENT ........ - 7 -

A. Plaintiffs' Claims Are Outside the Statutes of Limitations. ........ - 7 -

*1. Plaintiff Shah's CIPA claims are untimely.* ........ - 8 -

*2. Plaintiff Wiley's CIPA and common law claims are untimely.* ........ - 8 -

*3. There is no possibility of tolling for Plaintiffs' untimely claims.* ........ - 10 -

B. Plaintiffs' Section 631(a) Wiretapping Claims Should Be Dismissed. ........ - 11 -

*1. Plaintiffs have not alleged a predicate violation of Section 631(a)'s second clause.* ........ - 11 -

*2. UMG lacks the requisite criminal intent to establish aiding abetting liability under Section 631(a).* ........ - 15 -

C. Plaintiffs' Pen Register (CIPA Section 638.51) Claim Still Fails. ........ - 15 -

D. The Court Should Reconsider Its Article III Standing Analysis in light of *Popa v. Microsoft*. ........ - 16 -

VI. CONCLUSION ........ - 19 -




BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al-Ahmed v. Twitter, Inc.*,
648 F. Supp. 3d 1140 ........ 8, 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 6

*Brodsky v. Apple, Inc.*,
445 F. Supp. 3d 110 (N.D. Cal. 2020) ........ 7, 12

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ........ 7

*Cervantes v. City of San Diego*,
5 F.3d 1273 (9th Cir. 1993) ........ 10

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024) ........ 14

*D'Angelo v. FCA US, LLC*,
726 F. Supp. 3d 1179 (S.D. Cal. 2024) ........ 11

*Davis v. Facebook, Inc.*,
956 F.3d 589 (9th Cir. 2020) ........ 17

*Doe I v. Google LLC*,
741 F. Supp. 3d 828, 844 (N.D. Cal. 2024) ........ 14

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011) ........ 18

*Griffin Indus., Inc. v. Irvin*,
496 F.3d 1189 (11th Cir. 2007) ........ 8

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) ........ 15, 16

*Hinton v. Pac. Enters.*,
5 F.3d 391 (9th Cir. 1993) ........ 10

*James v. Allstate Ins. Co.*,
2023 WL 8879246 (N.D. Cal. Dec. 22, 2023) ........ 14

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Jones v. Tonal Sys., Inc.*,
2024 WL 4357558 (S.D. Cal. Sept. 30, 2024) ........ 11

*Kearns v. Ford Motor Co.*,
*567 F.*3d 1120 (9th Cir. 2009) ........ 6

*Khamooshi v. Politico*,
2025 WL 2822879 (N.D. Cal. Oct. 2, 2025) ........ 18

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ........ 6

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) ........ 11, 13

*Lau v. Gen Digit. Inc.*,
2024 WL 1880161 (N.D. Cal. Apr. 3, 2024) ........ 11

*Marich v. MGM/UA Telecomm, Inc.*,
113 Cal. App. 4th 415 (2003 ........ 18

*Joseph v. J.J. Mac Intyre Cos., L.L.C.*,
238 F. Supp. 2d 1158 (N.D. Cal. 2002) ........ 18

*Mikulsky v. Bloomingdale's, LLC,*
713 F. Supp. 3d 833 (S.D. Cal. 2024) ........ 13

*Nev. Power Co. v. Monsanto Co.*,
955 F.2d 1304 (9th Cir. 1992 ........ 7

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ........ 16, 17, 18

*Ritchie v. U.S.*,
210 F.Supp.2d 1120 ........ 9

*Rodriguez v. Google LLC*,
2022 WL 214552 (N.D. Cal. 2022) ........ 14

*Romero v. Securus Techs., Inc.*,
331 F.R.D. 391 (S.D. Cal. 2018) ........ 16

*Rosenow v. Facebook, Inc.*,
2020 WL 1984062 (S.D. Cal. Apr. 27, 2020) ........ 14

*Smith v. YETI Coolers, LLC*,
2024 WL 4539578 (N.D. Cal. Oct. 21, 2024) ........ 15

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001) ........ 6, 13

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007)....................6

*Tapia Carmona v. Cnty. of San Mateo*,
2019 WL 4345973 (N.D. Cal. Sept. 12, 2019) ....................8

*Van Saher v. Norton Simon Museum of Art at Pasadena*,
592 F.3d 954, 969 (9th Cir. 2010)) ....................7, 9

*Williams v. What If Holdings, LLC*,
2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ....................11

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ....................13

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ....................14

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ....................12

**Statutes**

Cal. Penal Code § 20....................16

Cal. Penal Code § 631(a) ....................11

Cal. Penal Code § 637.2(a) ....................18

Cal. Penal Code § 638.50(b) ....................15

Cal. Penal Code § 638.51(a) ....................15

California Consumer Privacy Act ....................3

**Other Authorities**

Fed. R. Civ. P. 9(b) ....................10

Fed. R. Civ. P. 12(b)(6)....................6

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs Vishal Shah and Christine Wiley ("Plaintiffs"), serial cookie suit litigants, amended their complaint (the "FAC") following Defendant Universal Music Group, Inc.'s ("UMG") motion to dismiss, leaving only privacy-related claims under California common law (invasion of privacy and intrusion upon seclusion) and the California Invasion of Privacy Act ("CIPA") arising out of Plaintiffs' alleged visits to various UMG-operated websites. In partially granting UMG's initial motion to dismiss, the Court dismissed Plaintiffs' CIPA claims because Plaintiffs failed to allege that they ever "communicated" with a UMG website.[2] Plaintiffs fail to cure this defect.

Despite an opportunity to amend, and the Court's clear guidance, the FAC still contains no facts explaining how Plaintiffs' routine web surfing ***on UMG-operated sites*** resulted in the supposed "egregious privacy violations" or could support their "communication-based" CIPA allegations. The FAC still provides few details as to Plaintiffs' experiences with the UMG websites and interactions with UMG. *See* FAC ¶¶ 98-116. For example, Plaintiff Shah vaguely alleges that he clicked unspecified "links and buttons" to learn about a 2024 Stagecoach show, yet he only alleges one "communication"—a single full string URL from a third-party website (bandsintown.com) with no alleged connection to UMG or UMG's cookie behavior. *See id.* ¶ 102. The FAC still is completely silent as to what cookies, if any, were installed or fired *after* Plaintiffs made their toggle selections on each relevant website during each visit, what "personal information" or "private communications" Plaintiffs allegedly transmitted during that alleged visit, or how any such transmission occurred. Nor do Plaintiffs amend to specifically identify the collection of any "dialing, routing, addressing, or signaling information," of theirs as required to state a CIPA pen register claim. These pleading defects are fatal to Plaintiffs' CIPA claims under any federal pleading standard.

---

[2] Plaintiffs' FAC is void of any detail regarding Universal Music Group, Inc.'s connection to the websites, privacy policy or privacy function—yet another pleading failure. As advised in a pre-filing meet and confer, Universal Music Investments, Inc., the entity appearing on the Privacy Policy, is the proper named defendant in the UMG family group of entities.

Moreover, Plaintiffs now allege new facts for the first time regarding their website visits that undermine the Court's prior ruling in their favor on the common-law claims. Unlike the initial complaint, the FAC identifies specific dates on which Plaintiffs allegedly visited certain UMG websites. These new allegations confirm that some, if not all, of Plaintiffs' claims—both under CIPA and at common law—based on those visits are time-barred.

In addition, UMG respectfully requests that the Court reconsider the Ninth Circuit's decision in *Popa v. Microsoft* as applied to Plaintiffs' common-law claims. The FAC's newly added, specific allegations make clear that none of the information Plaintiffs allege was shared with third parties constitutes "private information." Under *Popa*, Plaintiffs therefore cannot state a viable common-law privacy claim, and dismissal is required.

Accordingly, UMG respectfully requests that the Court dismiss Plaintiffs' CIPA claims, as well as the untimely common-law privacy and unjust enrichment claims, without leave to amend.

## II. FACTUAL BACKGROUND[3]

### A. UMG Lawfully and Transparently Uses Third-Party Cookies.

The basic facts of the FAC are simple and virtually unchanged from Plaintiffs' initial complaint. Universal Music Group is the world's leading music-based entertainment company and the home for music's greatest artists. UMG's family of companies, which includes industry-leading record labels, publishing, and merchandising companies, work with artists and songwriters to produce, develop, release, and promote the music that is the heartbeat of our lives. As part of these activities, Universal Music Investments, Inc., not named Defendant, "Universal Music Group, Inc.," operates the free, public websites of numerous recording artists, including the websites listed in footnote 1 of Plaintiffs' FAC (the "Websites"). The features of each Website vary; depending on the Website, a user can watch music videos, view photographs of the artist, learn about past or upcoming tours, purchase memorabilia or music, or sign-up to receive newsletters, among other actions. And contrary to Plaintiffs' allegations, not all of the Websites have a search function. For

---

[3] As this Court already is familiar with the factual background, UMG provides an abbreviated version of the facts, focusing on Plaintiffs' factual interactions with the Websites that this Court previously found deficient.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

example, postmalone.com has no search function; shop.postmalone.com does but also has its own "cookie banner."

Like virtually all companies, UMG embeds first- and third-party code for analytics, website functionality and security, advertising, and marketing purposes on its Websites. FAC ¶¶ 24-25. This code may deploy additional small text files of code, referred to as "cookies," that website servers can cause to be placed on an Internet user's browser. *Id.* ¶ 18. Cookies serve a variety of functions, including helping websites operate efficiently and enabling website owners to personalize advertisements. Internet browsers (i.e., Chrome, Edge, and Safari) and certain privacy focused add-ons (like uBlock Origin or "Incognito Mode") allow users to configure settings that *automatically accept* all cookies or only selected cookies. These tools also allow users to *automatically delete* the browser's cookie cache at the end of a browsing session, on a daily, weekly, or monthly basis, upon system reboot, or on demand. In addition, cookies themselves—including the cookies referenced in Plaintiffs' FAC—contain expiration dates that range from the end of a browsing session to multiple years.

### B. UMG Provides Visitors with Information Necessary to Make Choices About Data Sharing.

***While not required under any U.S. law***, in an effort to be transparent and provide consumers with an easier and less burdensome method to opt out of the collection of information by certain third-party technology, UMG deploys a cookie management tool including a "cookie banner" pop-up notification on its Websites, that provides visitors with a direct link to UMG's comprehensive Privacy Policy, and includes certain toggles for visitors to manage their choices.[4]

The FAC contains screenshots of only one Website cookie banner from UMG-operated Websites—the postmalone.com website for artist Post Malone. FAC ¶¶ 1, 27-28. Although Plaintiffs now allege they *and* other Website users are presented with cookie banners, they still do

[4] California law does not prohibit companies from placing third-party technology on their websites or prohibit the placement of a cookie by the third-party technology. Rather, California law only provides that a company must give consumers the ability to *opt out* of the collection of data by that third-party technology if it is "sold" or used for the purpose of cross-context behavioral advertising, as defined by the California Consumer Privacy Act.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

not allege what the banners looked like on the Websites they encountered at the time they encountered them. *See id.* For example, Plaintiff Wiley claims she visited the universalmusic.com website as early as 2021 and as late as 2024, yet fails to allege whether a banner was presented during each visit and, if so, what that banner looked like and what options if any she selected. *See id.* ¶¶ 108-11. But even in the single specific example depicted in the FAC, the Post Malone cookie banner conspicuously links UMG's Privacy Policy from both the initial primary banner and the pop-up banner shown when a user clicks "Cookie Choices." *Id.* ¶¶ 27-28. This second pop-up banner informs visitors about information UMG and third parties may collect using cookies. *Id.* Users are given the opportunity to toggle off two categories: "Online Advertising," and "Performance and Analytics". *Id.* Users can toggle each preference individually or select "Decline All" to decline further tracking action. *Id.* ¶ 29. Nowhere on the banner does UMG state that it will not (or has not) place cookies on a visitor's device, or that UMG will delete any cookies already placed on a visitor's device. And nowhere on the banner does UMG state that a visitor can decline other categories of cookies, such as essential cookies.

The version of Privacy Policy alleged in the FAC (January 1, 2023), was conspicuously linked in both the initial cookie banner and second pop-up banner, informs visitors that UMG uses cookies on its Websites. *Id.* ¶¶ 27-28. The Policy identifies the categories of information UMG may collect, explains how UMG collects and uses that information, and describes how UMG may share it. The Policy also generally educates visitors about cookies, stating in part:

> You can find more information about the cookies and other tracking technologies we use, the purposes for which we use them, and make certain choices about cookies through the cookie choices tools available on our Apps.
>
> Most internet browsers are automatically set up to accept cookies. However, if you want to refuse or delete any cookies (or similar technologies), please refer to the help and support area on your internet browser for instructions on how to block or delete cookies.
>
> Please note you may not be able to take advantage of all the features of our App, including certain personalised features, if you delete or disable cookies.

Request for Judicial Notice ("RJN"); Dkt. 21-2, Declaration of Sheryl Gold ("Gold Decl."), Ex. A; UMG Privacy Policy (Effective Date: January 1, 2023) (current version available at https://privacy.umusic.com/) (the "Privacy Policy"); FAC ¶¶ 25-26 n. 2. As the Privacy Policy



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

informed users, "[M]ost internet browsers are automatically set up to accept cookies," and if a user wishes to block, refuse, or delete cookies, a user should consult their internet browser instructions. RJN, Gold Decl., Ex. A.

The FAC's various other screenshots allegedly depicting the transmission of third-party cookies after visiting the postmalone.com website are also not Plaintiffs' screenshots but purportedly demonstrate an unknown "Website user," using an unknown device and browser, with unknown device and browser settings, at an unknown time. *See generally* FAC ¶¶ 33-34, 39, 44, 51, 62, 66, 75, 78, 81.

### C. __Plaintiffs' Allegations About Their Own Experiences Lack Basic and Necessary Facts.__

Plaintiff Shah alleges he visited two Websites: postmalone.com and imaginedragonsmusic.com, "to browse information about the artists' music and related products," at various times including sometime "in or around March 15, 2024." FAC ¶ 98. Although Plaintiff Shah added two paragraphs (¶¶ 102-103) about his purported "interactions" with each Website, he still does not specifically describe what private communications of his were allegedly shared with any technology from a UMG operated Website. For example, the only potential "communication" referenced in newly added Paragraph 102 is a descriptive URL from ***a third-party website*** bandsintown.com without any alleged connection to UMG. Likewise, Plaintiff Shah only alleges browsing and clicking buttons during his visit to the imaginedragonsmusic.com separate shop website. No user input "communications" are found in these newly added allegations. Plaintiff Shah does not allege he entered any content such as his name, email, or other information into any field, used a search bar on a specific UMG Website, or sent any messages or communications through either Website. He also does not describe how or when any of his actions were allegedly intercepted or provide any dialing, signaling or addressing information in conjunction with his actions on the two Websites. Finally, Plaintiff Shah still fails to allege that he has suffered *any* harm whatsoever from any alleged misrepresentation, other than to say that he would not have visited the free websites or "would have interacted with the Websites differently." *Id.* ¶ 105.

Plaintiff Wiley's added allegations are equally deficient. As in the original complaint, Plaintiff Wiley alleges she visited six Websites (arianagrande.com, icespicemusic.com, universalmusic.com, nikiminajofficial.com, theweekend.com, and lilyachtyofficial.com) but now pleads specific visit dates for only three of them: universalmusic.com, nikiminajofficial.com, and icespicemusic.com. *See* FAC ¶ 108. Those dates fall primarily outside the applicable statute of limitations. Like Plaintiff Shah, Plaintiff Wiley provides virtually no details regarding these visits in the ***single paragraph*** she added on amendment. *See id.* ¶ 112. That paragraph vaguely alleges that Plaintiff Wiley clicked certain buttons in December 2023 on shop.nickiminajofficial.com and on the third-party website pinkfridaynails.com, which Plaintiffs do not allege has any connection to UMG. *Id.* Plaintiff Wiley does not identify which third parties allegedly received these clicks, what specific communications were transmitted, or any facts showing that the communications were "intercepted in transit" or accompanied by routing or addressing information. *See id.*

## III. ISSUES TO BE DECIDED

- Have Plaintiffs satisfied the Rule 12(b)(6) standard for each of their claims?

## IV. LEGAL STANDARD

To withstand a motion to dismiss under Rule 12(b)(6), a complaint must set forth factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must contain "more than [mere] labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Furthermore, "courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

\\

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## V. ARGUMENT

### A. Plaintiffs' Claims Are Outside the Statutes of Limitations.

Because Plaintiffs bring state law claims, California's statutes of limitations apply. *See Nev. Power Co. v. Monsanto Co.*, 955 F.2d 1304, 1306 (9th Cir. 1992). The applicable statutes of limitations are ***one year*** for the CIPA wiretapping and pen register claims, *Brodsky v. Apple, Inc.*, 445 F. Supp. 3d 110, 134 (N.D. Cal. 2020) (Koh, J); Civ. Proc. Code § 340, and ***two years*** for the invasion of privacy and intrusion upon seclusion claims, *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1069 (N.D. Cal. 2021) (Koh, J.) (citing Cal. Civ. Proc. Code § 335.1).

UMG recognizes that, as the Court noted in its prior Order Denying in Part, and Granting in Part UMG's Motion to Dismiss [Dkt. No. 38] (the "Order"), a court may dismiss a claim as untimely at the pleading stage only when "the running of the statute is apparent on the face of the complaint." *See* Order at 4:23-26 (quoting *Van Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010)). In the initial complaint, Plaintiffs offered only vague allegations as to when they visited the Websites. Plaintiff Shah identified only a month and a year (March 2024), while Plaintiff Wiley alleged that she visited the Websites at some point "during the last four years," without providing a single specific date. Based on these imprecise allegations, the Court concluded that Plaintiffs' claims ***could*** encompass conduct that fell within the applicable one-year or two-year statutes of limitations, making timeliness impossible to resolve at the pleading stage. *Id.* at 5:7-9.

This time, however, Plaintiffs have pleaded themselves out of their claims by "admit[ting] all the ingredients of an impenetrable [statute of limitations] defense." *See* Order at 4:19-20 (quoting *Dunford v. MusclePharm Corp.*, 907 F.3d 595, 604 n. 8 (9th Cir. 2018)). Both Plaintiffs now allege specific dates on which they purportedly visited the Websites. *See* FAC ¶ 98 (Plaintiff Shah); ¶ 108 (Plaintiff Wiley). By providing specific visit dates, the Court is no longer limited to assessing vague, open-ended allegations, and can evaluate the timeliness of their claims on the pleadings. *See Van Saher*, 592 F.3d at 969.

Although Plaintiffs attempt to hedge by characterizing these dates as merely illustrative, the FAC contains no factually specific interactions between Plaintiffs and UMG outside of those

identified dates. *See* FAC ¶¶ 98, 102-103, 108, 112. The Court should not disregard the specificity Plaintiffs have now chosen to provide in an attempt to resuscitate their dismissed CIPA claims. *See Tapia Carmona v. Cnty. of San Mateo*, 2019 WL 4345973, at *9 (N.D. Cal. Sept. 12, 2019) (Koh, J.) ("General, conclusory allegations need not be credit…when they are belied by more specific allegations of the complaint") (quoting *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995); *see also Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205-06 (11th Cir. 2007) ("Our duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations."). Applying the relevant statutes of limitations to these newly alleged dates leaves no doubt—Plaintiffs' claims fall outside the relevant limitations periods and are therefore time-barred.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

### *1. Plaintiff Shah's CIPA claims are untimely.*

Plaintiff Shah affirmatively pleads the "ingredients of an impenetrable defense" as to his CIPA claims by alleging that he visited the postmalone.com and imaginedragonmusic.com websites "in or around March 15, 2024." FAC ¶¶ 98, 102-103. By his own allegations, every instance of purported misconduct underlying his CIPA claims—including his interaction with the cookie banner on these websites (*see id.* ¶¶ 99-101), and the newly added allegations regarding links associated with the 2024 Stagecoach tour dates (*see id.* ¶¶ 102-03)—occurred during that March 15, 2024 visit. Said differently, every factual allegation supporting Plaintiff Shah's CIPA claims is anchored to that single date. Consequently, the one-year statute of limitations for Plaintiff Shah's CIPA claims expired one year later, on March 15, 2025. Plaintiffs did not initiate this action until April 4, 2025 (*see* Dkt. No. 1), after the limitations period had run. Plaintiff Shah's CIPA claims are therefore untimely as a matter of law.

To the extent Plaintiff Shah bases his unjust enrichment claim on the same alleged CIPA violations, that claim fails as well. *See Al-Ahmed v. Twitter, Inc.,* 648 F. Supp. 3d 1140, 1155 n.1 (N.D. Cal. 2023) (Chen, J.) (the statutes of limitations for unjust enrichment, promissory estoppel, and civil conspiracy are based on the underlying wrong).

### *2. Plaintiff Wiley's CIPA and common law claims are untimely.*

Similarly, Plaintiff Wiley's CIPA and common law invasion of privacy claims based on her

alleged visits to several of the Websites are also time-barred. Although the Court previously found that Plaintiffs' invasion of privacy and intrusion upon seclusion claims have been sufficiently pled, the FAC's newly added allegations clarifying the specific dates of Plaintiff Wiley's website visits place those claims outside the applicable statutes of limitations. *See Van Saher*, 592 F.3d at 969; *see also Ritchie v. U.S.*, 210 F.Supp.2d 1120, 1123 (N.D. Cal. 2002) (Patel, C.J.) ("Where the facts and dates alleged in a complaint demonstrate that the complaint is barred by the statute of limitations, a Federal Rule of Civil Procedure 12(b)(6) motion should be granted.").

Because CIPA carries a one-year statute of limitations, Plaintiff Wiley's claim related to the purported visit to universalmusic.com is time-barred. Plaintiff Wiley alleges she first visited universalmusic.com on July 15, 2021. *See* FAC ¶ 108. Although she also alleges three additional visits—September 15, 2022; April 15, 2024; and December 15, 2024—she does not allege with any specificity what occurred during each of these visits, nor does she allege that any of the subsequent visits resulted in any distinct CIPA violation. *See id.* ¶¶ 108-116 (using vague group pleading and failing to set forth any specific interactions on the universalmusic.com website). As a result, the statute of limitations for any alleged CIPA violation arising from a visit to universalmusic.com expired on July 15, 2022.[5]

Similarly, Plaintiff Wiley alleges she visited nickiminajofficial.com on December 28, 2023. *Id.* ¶ 108. The one-year limitations period for any CIPA claim based on that visit expired on December 28, 2024—months before April 2025 when the initial complaint was filed.

Finally, Plaintiff Wiley's allegation that she visited icespicemusic.com on December 15, 2024 does not salvage her CIPA claims. Other than stating she visited icespicemusic.com, Plaintiff has no other allegations that could plausibly constitute "communications" with UMG during that visit. The only purported misconduct alleged by Plaintiff Wiley to support her CIPA claims is based on a visit ***to an entirely different website***. Indeed, the newly supplemented allegations concerning merchandise links she viewed or clicked relates only to her December 28, 2023 visit to

[5] Even under a liberal reading of the FAC, only Plaintiff Wiley's April 15, 2025 and December 15, 2024 visits fall within the statute of limitations. Her CIPA claims based on the two earlier visits are time-barred as a matter of law.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

nickiminajofficial.com (*see* FAC ¶ 112), which as discussed above, occurred on a specific date that falls ***outside the limitations period***. Her *later* visit to a *different* website without any allegation of data interception or communications sent during that visit cannot revive or extend her time-barred CIPA claims.

Plaintiff Wiley's invasion-of-privacy and intrusion-upon-seclusion claims fare no better. Those claims carry a two-year statute of limitations. Any claims based on her alleged visits to universalmusic.com in 2021 or 2022 therefore expired, at the latest, in 2024—well before Plaintiffs filed this action on April 4, 2025. To the extent Plaintiff Wiley bases her common-law privacy claims on those earlier visits, the claims are untimely as a matter of law.[6]

And as with Plaintiff Shah, to the extent Plaintiff Wiley bases her unjust enrichment claim on the same untimely CIPA and common law privacy claims, that claim fails as well and should be dismissed. *See Al-Ahmed,* 648 F. Supp. 3d at 1155 n.1.

***3. There is no possibility of tolling for Plaintiffs' untimely claims.***

Equitable tolling cannot save Plaintiffs' claims because the FAC alleges no facts that could support such tolling. To survive a motion to dismiss, Plaintiffs must plead "facts showing the potential applicability of the equitable tolling doctrine". *Cervantes v. City of San Diego*, 5 F.3d 1273, 1277 (9th Cir. 1993); *see also Hinton v. Pac. Enters*., 5 F.3d 391, 395 (9th Cir. 1993) ("The burden of alleging facts which would give rise to tolling falls upon the plaintiff."). Plaintiffs do not meet that burden here. The FAC alleges ***no facts*** suggesting delayed discovery, fraudulent concealment, or any other basis that would give rise to tolling. Accordingly, dismissal of Plaintiffs' untimely claims is appropriate.

And because Plaintiffs have pleaded (on amendment) themselves out of their claims by

[6] Although the Court previously held that Plaintiffs' level of specificity was sufficient and that 9(b) did not apply to all claims, this is but one example of how Plaintiffs' lack of factual detail under either Rule 8 or 9(b) prevents UMG from assessing the validity of the claims at the pleading stage. Cookie banners function such that users who do not clear their cookies, or who purposefully go back and edit their cookie preferences at a later time, may not be presented with the banner again. Additionally, the cookies and advertising technology deployed on each UMG website varies over time. Yet Plaintiff Wiley provides no facts describing what actions she took during each visit, whether she encountered or interacted with any cookie banner during that visit, or what, if any, communications occurred during those visits.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

admitting all the ingredients of an impenetrable defense, Plaintiffs' untimely claims should be dismissed without leave to amend.

### B. <u>Plaintiffs' Section 631(a) Wiretapping Claims Should Be Dismissed.</u>

Even after amendment, Plaintiffs' wiretapping claim under Section 631(a) of CIPA fails to state a viable claim. As this Court recognized, Section 631(a) prohibits a defendant from either directly engaging in, or aiding another in engaging in, one of three forms of conduct: (1) "intentional wiretapping," (2) "willfully attempting to learn the contents or meaning of a communication in transit over a wire," or (3) using or "attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." *See D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1196 (S.D. Cal. 2024) (citing *Tavernetti v. Super. Ct.*, 22 Cal. 3d 187, 192 (1978); *see also* Order at 10:10-19 (citing Cal. Penal Code § 631(a)). In order to impose liability under an aiding-and-abetting theory, Plaintiffs must first plausibly allege that a third party committed a predicate violation of one of the first three clauses. *See Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022) (Alsup, J.) ("An aiding-and-abetting defendant's liability is based entirely on whether [a third party] violated Section 631(a) in some way."). Plaintiffs fail to do so here, and their Section 631(a) claim again fails as a matter of law.

#### ***1. Plaintiffs have not alleged a predicate violation of Section 631(a)'s second clause.***[7]

The second clause of Section 631(a) is violated only where a third party "***reads***, or attempts to read, or to learn the ***contents*** or meaning of any message, report, or communication while the same is ***in transit***." *Jones v. Tonal Sys., Inc.*, 2024 WL 4357558 at *4 (S.D. Cal. Sept. 30, 2024) (emph. added); *see Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002); *Lau v. Gen Digit. Inc.*, 2024 WL 1880161, at *1 (N.D. Cal. Apr. 3, 2024) (Lin, J.) (wiretapping concerns "the unauthorized *interception* of communications, not any subsequent storage and/or use"). This Court previously rejected Plaintiffs' Section 631(a) claim because they failed to allege that, when

---

[7] Given that Plaintiffs previously disavowed any claim that the UMG's alleged conduct at issue violates the first clause, *see* Order at 10:24 n. 3, and the FAC alleges no new facts indicating that UMG engaged in any telephonic conduct, Plaintiffs presumably are not asserting a claim under the first clause of § 631(a).



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

interacting with UMG's Websites, they themselves engaged in any communications whose ***contents*** could plausibly have been intercepted. *See* Order at 12:4-18. Because Plaintiffs did not plausibly allege a communication, the Court declined to assess UMG's separate argument that Plaintiffs also failed to plead the "in transit" requirement. *See id.* Even after amendment, Plaintiffs still fail to plausibly allege either essential element.

First, Plaintiffs fail again to plausibly allege that they transmitted any communications—much less communications with ***contents*** capable of interception. *See Brodsky*, 445 F. Supp. 3d at 127 (Section 631 prohibits only the "unauthorized access of the contents of any communication"). Under CIPA, the "contents" of a communication are limited to "the intended message conveyed by the communication and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014). This Court previously acknowledged that certain website interactions—such as user input data, shopping behaviors, or in some circumstances referring URLs—*could* convey the contents of a user's communication with a website *if they revealed what the user was seeking to do or searching for*. *See* Order at 11:23-27. Because Plaintiffs failed to allege even the most basic facts about their own interactions with UMG's Websites, the Court dismissed their Section 631(a) claims while granting leave to amend and provided clear guidance on the specific facts required to survive a pleading challenge. *See id.* at 12:4-18.

Plaintiffs have clearly ignored those instructions, and just like their original complaint, the FAC lacks key facts about Plaintiffs' *actual interactions* with UMG's Websites. *See* FAC ¶¶ 98, 102-103, 105, 108, 112 (amended paragraphs in Plaintiffs' Experiences section of the FAC). Neither Plaintiff Shah nor Plaintiff Wiley alleges that they entered any user-input information into any field on UMG's Websites. *See id.* At most, Plaintiff Shah alleges that on March 15, 2024—a date that, as discussed above, is outside the one-year statute of limitations—he clicked unspecified buttons, after which unidentified third parties, through an unspecified mechanism and timeline, allegedly "caused the transmission" of a non-UMG URL (bandsintown.com) and recorded a page view of shop.imaginedragonsmusic.com. *See id.* ¶¶ 98, 102-103. Those allegations do not come close to pleading that Plaintiff Shah interacted with a UMG website in a manner that involved



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

communications that had content capable of being intercepted. Undefined button clicks and page views—particularly on third-party websites—do not convey an "intended message" and therefore fall outside Section 631(a). *See Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) (finding "keystrokes, mouse clicks, pages viewed, and shipping and billing information ... [and] the date and time of the visit, the duration of the visit, Plaintiff's IP address, her location at the time of the visit, her browser type, and the operating system on her device" are not "contents" under Section 631(a)); *Sprewell*, 266 F.3d at 988 ("Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.").

Plaintiff Wiley's allegations fare no better. She alleges that she searched for and clicked product-category and product buttons and links on nickiminajofficial.com. *See* FAC ¶ 112. Aside from alleging that she visited the Website on December 28, 2023—again well outside the one-year statute of limitations—she provides no detail about which buttons she clicked or which pages she viewed during that visit. *See id.* Rather than pleading facts, she offers a scattershot list of purported "examples" of product-category and product buttons and links she claims to have clicked. *See id.* Critically, however, every URL Plaintiff Wiley identifies points to entirely different websites—shop.nickiminajofficial.com and the third-party site pinkfridaynails.com—not to the ***single website she alleges she "interacted" with***. *See id.* Plaintiffs cannot allege an interaction with one website and then rely on vague references to pages, buttons, and links from sites she never claims to have accessed. These undefined buttons and links do not constitute the "contents" of any communication and therefore do nothing to cure the deficiencies in the FAC. *See Mikulsky v. Bloomingdale's, LLC,* 713 F. Supp. 3d 833, 845 (S.D. Cal. 2024) (dismissing Section 631(a) claims where plaintiffs alleged only that their "interactions" were intercepted without identifying the contents of any communication).

<u>Second</u>, even if Plaintiffs have alleged timely communications including content with a UMG Website (they have not), they still fail to allege any facts showing that those communications were intercepted *while in transit*. The Ninth Circuit has made clear that an interception requires acquisition of a communication during its transmission—that is, to "stop, seize, or interrupt in





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

progress or course ***before arrival***." *Konop*, 302 F.3d at 878 (emph. added). Rather than plead facts explaining how any such real-time interception occurred, Plaintiffs rely on conclusory, boilerplate allegations that simply assume an interception took place. *See* FAC ¶ 159. Courts have consistently held that such boilerplate allegations are insufficient. *See Rodriguez v. Google LLC*, 2022 WL 214552, at *1-2 (N.D. Cal. Jan. 25, 2022) (Seeborg, C.J.) ("Using the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible Google is intercepting their data in transit."); *Rosenow v. Facebook, Inc.*, 2020 WL 1984062, at *7 (S.D. Cal. Apr. 27, 2020) (dismissing wiretap claim where allegations of interception "in transit" were conclusory); *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) (dismissing wiretap claim because the "conclusory allegation that Vizio intercepted their electronic communications 'during transmission'" was only supported by "vague allegations about how Vizio's data collection occurs in real-time.").

And even if Plaintiffs alleged an interception (they have not), they still need to allege facts demonstrating that the intercepting party "read or attempted to read" Plaintiffs' purported communications *in real time during the transmission.* As courts have recognized, this requires the third party to do ***more*** than intercept or redirect the contents of the communication to another server. *See e.g., James v. Allstate Ins. Co.*, 2023 WL 8879246, at *3 (N.D. Cal. Dec. 22, 2023) (Corley, J.) (allegations that data was stored with and could be accessed by a third party were insufficient to support a plausible interference the third party attempted to read or learn the contents of the communication while in transit); *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 844 (N.D. Cal. 2024) (Chhabria, J.) (dismissing Section 631(a) claim finding Google code acted more like passive tape recorder that did not read or attempt to read communications in real time).

Because Plaintiffs plead no non-conclusory facts establishing their communications were intercepted and read in real time during transmission, their Section 631(a) claim under the Second Clause fails as a matter of law.[8]

[8] Because Plaintiff "failed to allege … violation of the first or second clauses, [they have] also failed to plead a violation of the third clause." *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1003 (N.D. Cal. 2024) (Martínez-Olguín, J.). And because Plaintiffs have failed to allege any viable violation



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

### *2. UMG lacks the requisite criminal intent to establish aiding abetting liability under Section 631(a).*

Even if Plaintiffs plausibly alleged violations of Clauses 2 or 3—which they do not—they still fail to state a claim under the fourth clause of Section 631(a). To proceed under that clause, Plaintiffs must plausibly allege that UMG caused Plaintiffs' browsers to store third-party cookies and transmit information with "knowledge of the conduct that will violate the statute and a purpose of aiding, agreeing with, or employing the third party to commit those acts." *Smith v. YETI Coolers, LLC*, 2024 WL 4539578, at *4 (N.D. Cal. Oct. 21, 2024) (Lin, J.); *see also Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007, 1019 (C.D. Cal. 2023) (dismissing CIPA complaint where plaintiff did "not allege facts demonstrating Defendant acted with the requisite knowledge or intent to aid and abet [a third party's] purported CIPA violation."). Here, Plaintiffs do not—and cannot—plausibly allege that UMG knew that the ubiquitous cookie technology at issue, which was designed and offered for commercial use by reputable companies like Meta, inherently violates CIPA, and that UMG placed these technologies on their site *for the purpose of* aiding or employing these third parties to violate CIPA, as opposed to the legitimate, commercial business purposes these technologies are so clearly intended for. Indeed, Plaintiffs themselves acknowledge that UMG used these cookies for analytics and advertising. *See* FAC ¶ 26. That admission forecloses any inference that UMG acted with the intent to violate CIPA or to assist others in doing so.

Absent factual allegations showing that UMG intended to intercept communications or knowingly assisted third parties in intercepting them, Plaintiffs' claims cannot survive. The Court should therefore dismiss Plaintiffs' Section 631(a) claim with prejudice.

### C. <u>Plaintiffs' Pen Register (CIPA Section 638.51) Claim Still Fails.</u>

CIPA also precludes "a person…[from] install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order." Cal. Penal Code § 638.51(a). Under CIPA, a "pen register" is "a device or process that records or decodes dialing, routing, addressing, or

---

of § 631(a), their derivative aiding and abetting claim against UMG necessarily fails. *See id.* (dismissing claim under Section 631(a)'s fourth clause where plaintiff failed to establish "underlying third-party violation" of preceding clauses).

signaling information, . . . but not the contents of a communication." Cal. Penal Code § 638.50(b). Plaintiffs assert that third-party cookies and related software code qualify as pen register devices. When it previously dismissed this claim, the Court made clear that should Plaintiffs choose to amend their pen register claim, they must "identify not only their communications with UMG's websites but also the ***specific 'dialing, routing, addressing, or signaling information'*** for outgoing communications that were tracked." *See* Order at 14:9–14 (emph. added). Plaintiffs fail to do so. As discussed above, the FAC is completely devoid of any allegations regarding what allegedly collected information constitutes *Plaintiffs'* communications with the Websites. *See generally,* FAC. And, not surprisingly, in the absence of any allegations that they personally communicated with the Websites, Plaintiffs cannot allege what specific "dialing, routing, addressing, or signaling information" for those alleged outgoing communications were tracked, as the Court ordered. Because Plaintiffs do not provide the requisite information, their pen register claims should be dismissed.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Moreover, as discussed above with Plaintiffs' wiretap claim, because CIPA is a criminal statute, Plaintiff must establish scienter. *See Heiting*, 709 F. Supp. 3d at 1019; *see also* Cal. Penal Code § 20 (scienter); *Romero v. Securus Techs., Inc.*, 331 F.R.D. 391, 402 (S.D. Cal. 2018) (scienter is presumed in criminal statutes). Plaintiffs must allege, therefore, that UMG installed the third-party cookies and corresponding source code *with knowledge and intent* that the cookies would misfire and/or *illegally* collect information about Plaintiffs. *See Heiting*, 709 F. Supp. 3d at 1019. Here, Plaintiffs have not and cannot allege that UMG had any intent to engage in or further any third party's criminal activity, and their failure to do so dooms their CIPA claim.

### D. <u>The Court Should Reconsider Its Article III Standing Analysis in Light of *Popa v. Microsoft*.</u>

UMG recognizes that the Court has already considered *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025), in concluding that Plaintiffs sufficiently alleged a cognizable privacy injury and understands the Court's position regarding *Popa*. *See* Order at 9:8-10:6. At the same time, UMG notes that it had no meaningful opportunity to brief *Popa*, as the decision was issued only after UMG had completed all briefing in support of its initial Motion to Dismiss. In light of that

timing and UMG's understanding of *Popa*, UMG respectfully submits this instant briefing to ensure that the Court has the benefit of full presentation of *Popa* and requests that the Court reconsider its analysis with the complete context, the additional detail pled by Plaintiffs regarding their own limited interactions with the Websites, and arguments now before it.

In its prior Order, the Court identified UMG's alleged affirmative misrepresentation that it would not track the users' activities as a factual distinction from *Popa* that could alone be the basis for finding a cognizable privacy injury. *See* Order at 9:17-10:6. Even accepting that distinction, however, *Popa* still requires the Court to examine the specific data of Plaintiffs that was allegedly collected, the nature of that data, and whether it plausibly gives rise to a cognizable privacy injury.

In *Popa*, the Court examined *both* the mechanism of collection (session replay deployed without the user's consent and knowledge) *and* the type of data collected in concluding that no privacy harm occurred. *Popa*, 153 F.4th at 786, 791. There, the plaintiff alleged the collection of more than thirty categories of information, including "the date a user visited the website, the device the user accessed the website on, the type of browser the user accessed the website on, the operating system of the device used to access the website, the country where the user accessed the website from, a user's mouse movements, a user's screen swipes, text inputted by the user on the website, and how far down a webpage a user scrolls." *Id.* at 786. The Ninth Circuit held that these allegations failed to establish standing because the plaintiff "identifie[d] no embarrassing, invasive, or otherwise private information collected." *Id.* at 791. The court instead analogized the alleged data collection to a store clerk observing shoppers to determine which aisles attract the most traffic or to identify obstacles that interfere with potential sales. *Id.*

As in *Popa*, even if the Court distinguishes the mechanism of collection—session replay without consent versus cookie transmission without consent—Plaintiffs still fail to identify the collection of "embarrassing, invasive, or otherwise private information." *See id*. This case therefore bears no resemblance to *Davis v. Facebook, Inc.*, 956 F.3d 589 (9th Cir. 2020) ("*In re Facebook*"), where the Ninth Circuit found a sufficiently pleaded privacy injury based on Facebook's alleged collection of "an enormous amount of individualized data" constituting an individual's "comprehensive browsing history" by collecting "URLs of third-party websites …



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

***operating outside of Facebook's platform***," including sensitive data about plaintiff's visits to sensitive or embarrassing websites. *Id.* at 603, 605 (emph. added).

Here, by contrast, the FAC alleges only information related to what Plaintiffs did during the very website visit at issue—and nothing more. Merely labeling that information "private" does not make it so. The only specific example Plaintiffs identify involves a long-form URL for a hoodie sweatshirt on a UMG website. Plaintiffs fail to explain how viewing a hoodie on a public website implicates any egregious or protected privacy interest. *See Popa*, 153 F.4th at 791 (distinguishing generalized non-sensitive information collected by a pet store website with allegations against websites that could potentially collect sensitive "medical or financial information.").

Because Plaintiffs allege no collection of private or sensitive information, the data-collection practices described in the FAC—even if undertaken for advertising purposes—are analogous to a department store tracking customer foot traffic or a grocery store linking purchases to phone numbers. Courts routinely recognize such conduct as ordinary commercial behavior, not actionable under common law, and therefore insufficient to establish a cognizable privacy injury. *See id.*; *see also Khamooshi v. Politico*, 2025 WL 2822879, at *1 (N.D. Cal. Oct. 2, 2025) (Kim, M.J.) (relying on *Popa* in holding plaintiffs have failed to allege a concrete privacy injury sufficient to establish Article III standing). This interpretation of *Popa* also aligns with California law, which similarly treats routine commercial data practices as non-egregious. *See, e.g., Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011) ("Here, the supposed invasion of privacy essentially consisted of [Defendant] obtaining plaintiff's address without his knowledge or permission and using it to mail him coupons and other advertisements. ***This conduct is not an egregious breach of social norms, but routine commercial behavior***.") (emph. added).

Under this reading of *Popa*, Plaintiffs neither allege, nor can allege, a cognizable injury and therefore fail to state a claim under CIPA. California law requires a plaintiff asserting an invasion-of-privacy claim to plead an actual injury, damage, loss, or harm. *See Marich v. MGM/UA Telecomm, Inc.*, 113 Cal. App. 4th 415, 423 (2003) (an essential element of a claim for invasion of privacy is that "[t]he intrusion caused plaintiff to sustain injury, damage, loss or harm"); *Joseph v. J.J. Mac Intyre Cos., L.L.C.*, 238 F. Supp. 2d 1158, 1169 (N.D. Cal. 2002) (Chen, M.J.) (same for

intrusion upon seclusion claim); Cal. Penal Code § 637.2(a) (CIPA statutory standing requires plaintiff has been "injured by" a violation of CIPA).

## VI. CONCLUSION

Plaintiffs' FAC suffers from a host of the same incurable defects that existed in their initial complaint. Accordingly, UMG respectfully requests that the Court dismiss Plaintiffs' CIPA claims, as well as the untimely common law privacy claims and unjust enrichment claim, without leave to amend.

Dated: February 13, 2026

Respectfully submitted,
**BAKER & HOSTETLER LLP**

By: */s/ Kamran B. Ahmadian*
Bethany G. Lukitsch
Victoria L. Weatherford
Kamran B. Ahmadian
Jaein Cho

*Attorneys for Defendant*
UNIVERSAL MUSIC GROUP, INC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES