**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
todd@gutridesafier.com
Anthony J. Patek (State Bar No. 228964)
anthony@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

VISHAL SHAH AND CHRISTINE WILEY, as individuals, on behalf of themselves, the general public, and those similarly situated,

Plaintiffs,

v.

UNIVERSAL MUSIC GROUP, INC.,

Defendant.

Case No. 5: 25-CV-03095-PCP

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT

Date: April 23, 2026
Time: 10:00 a.m.
Judge: Hon. P. Casey Pitts
Courtroom: Courtroom 8, 4th Floor
San Jose Courthouse
280 South First Street, 4th Fl.
San Jose, CA 95113

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. STATEMENT OF FACTS .......... 2

III. LEGAL STANDARD .......... 4

IV. ARGUMENT .......... 4

- A. Plaintiffs' Claims Are Within the Statute of Limitations. .......... 4
- B. Plaintiffs have adequately pled CIPA claims. .......... 9
  - 1. Plaintiffs allege that "contents" were intercepted .......... 9
  - 2. The "Contents" were intercepted "in Transit" .......... 12
  - 3. Plaintiffs properly allege "aiding" under CIPA. .......... 16
  - 4. Plaintiffs Allege a Pen Register Violation Under CIPA § 638.51. .......... 19
- C. Plaintiffs Have Article III Standing Under *Popa*. .......... 20

V. LEAVE TO AMEND SHOULD BE GRANTED .......... 21

VI. CONCLUSION .......... 22

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .... 4

*B.K. v. Desert Care Network*, 2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) .... 7

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696 (9th Cir. 1990) .... 21

*Beheshta Mahboob v. Educ. Credit Mgmt. Corp.*, No. LA CV21-08585-JAK-GJS, 2023 U.S. Dist. LEXIS 245751 (C.D. Cal. Dec. 20, 2023) .... 7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .... 4

*Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110 (N.D. Cal. 2020) .... 18

*Brown v. Google LLC*, 525 F.Supp.3d 1049 (C.D. Cal. March 12, 2021) at 1070 .... 7

*Bush v. Rust-Oleum Corp.*, No. 20-cv-03268-LB, 2021 U.S. Dist. LEXIS 507 (N.D. Cal. Jan. 4, 2021) .... 6

*Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876 (9th Cir. 2010) .... 8

*Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000 (N.D. Cal. 2018) .... 18

*D'Angelo v. Penny Opco, LLC, No. 23-cv-0981-BAS-DDL,* 2023 U.S. Dist. LEXIS 191054 (S.D. Cal Oct. 24, 2023) .... 13

*Davis v. Facebook*, 956 F.3d 589 (9th Cir. 2020) ("*In re Facebook*") .... 21

*Doe I v. Google LLC*, 741 F. Supp. 3d 828 (N.D. Cal. 2024) .... 16

*Doe v. Amgen, Inc.*, No. 2:23cv7448-MCS-SSC, 2024 U.S. Dist. LEXIS 144579 (C.D. Cal. Aug. 13, 2024) .... 17

*Doe v. Eating Recovery Ctr. LLC*, No. 23-cv-05561-VC, 2025 U.S. Dist. LEXIS 207952 (N.D. Cal. Oct. 17, 2025) .... 15

*Doe v. Fullstory*, 712 F. Supp. 3d (N.D. Cal. 2024) .... 7, 8

*Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814 (E.D. Cal. 2025) .... 13

*Durnford v. MusclePharm Corp.*, 907 F.3d 595 (9th Cir. 2018) .... 5

*Esparza v. UAG Escondido A1 Inc.*, 2024 U.S. Dist. LEXIS 24429 (S.D. Cal. Feb. 12, 2024) .... 13, 14

*Foman v. Davis*, 371 U.S. 178 (1962) .... 8

*Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797 (2005) .... 7

*Hawkins v. Kroger Co.*, 906 F.3d 763 (9th Cir. 2018) .... 16

*Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007 (C.D. Cal. 2023) .... 19

*Huynh v. Chase Manhattan Bank*, 465 F.3d 992 (9th Cir. 2006) .... 5

*Jackson v. Linkedin Corp.*, 744 F. Supp. 3d 986 (N.D. Cal. 2024) .... 14

*James v. Allstate Ins. Co.*, 2023 WL 8879246 (N.D. Cal. Dec. 22, 2023) .... 15

*Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868 (9th Cir. 2002) .... 15

*Kotlarsz v. Integrity Vehicle Servs., Inc.*, No. 8:24-cv-00569-FWS-JDE, 2024 U.S. Dist. LEXIS 213565 (C.D. Cal. Sep. 3, 2024) ........ 17

*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) ........ 8

*Mitchell v. Sonesta Int'l Hotels Corp.*, 2024 U.S. Dist. LEXIS 186701 (C.D. Cal. Oct. 4, 2024) ........ 15

*Nguyen v. Stephens Institute*, 529 F. Supp. 3d 1047 (N.D. Cal. 2021) ........ 16

*Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025) ........ 20, 21

*Rabin v. Google LLC*, 725 F. Supp. 3d 1028 (N.D. Cal. Mar. 26, 2024) ........ 5

*Ribas v. Clark*, 38 Cal. 3d 355 (1985) ........ 15

*Rodriguez v. Ford Motor Co.*, No. 3:23-cv-00598, 2024 U.S. Dist. LEXIS 218685 (S.D. Cal. Dec. 3, 2024) ........ 9

*Shahnaz Zarif v. Hwareh.com, Inc.*, No. 23-cv-0565-BAS-DEB, 2025 U.S. Dist. LEXIS 26519 (S.D. Cal. Feb. 12, 2025) ........ 18

*Smith v. Yeti Coolers, LLC*, No. 24-cv-01703-RFL, 2024 U.S. Dist. LEXIS 194481 (N.D. Cal. Oct. 21, 2024) ........ 18, 19

*St. Aubin v. Carbon Health Techs., Inc.*, No. 24-cv-00667-JST, 2024 U.S. Dist. LEXIS 179067 (N.D. Cal. Oct. 1, 2024) ........ 13, 14

*Turner v. Google LLC*, 737 F. Supp. 3d 869 (N.D. Cal. 2024) ........ 5

*United States v. Christensen*, 828 F.3d 763 (9th Cir. 2015) ........ 18

*United States v. McGee*, 993 F.2d 184 (9th Cir. 1993) ........ 5

*Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751 (N.D. Cal. 2023) ........ 13, 14

*Van Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954 (9th Cir. 2010) ........ 5

*Yoon v. Lululemon United States*, 549 F. Supp. 3d 1073 (C.D. Cal. 2021) ........ 9

**STATUTES**

Cal. Penal Code § 631(a) ........ passim

Cal. Penal Code § 632 ........ 17

Cal. Penal Code § 638.50(b) ........ 23, 24

Cal. Penal Code § 638.51 ........ 10

Cal. Penal Code § 638.51(a) ........ 23

**RULES**

Fed. R. Civ. P. 12(b)(6) ........ 3, 4, 5

Fed. R. Civ. P. 12(f) ........ 3

Fed. R. Civ. P. 9(b) ........ 5

# I. INTRODUCTION

Plaintiffs Vishal Shah and Christine Wiley ("Plaintiffs") bring their Amended Complaint against Universal Music Group, Inc. ("UMG" or "Defendant") for aiding third parties' collection of California users' private communications against their express instructions. Before the Court is Defendant UMG's Motion to Dismiss Plaintiffs' Amended Complaint. Plaintiffs' filed the Amended Complaint in response to the Court's dismissal of Plaintiffs' CIPA and fraud claims. In particular, Plaintiffs' Amended Complaint added detail relating to the dates of Plaintiffs' visits and the types of content and routing information that third parties intercepted.

Defendant now argues not only that Plaintiffs have failed to plead facts to support their CIPA claims, but also that all their claims are time barred. Defendant is wrong.

Defendant's Statute of Limitation arguments are misplaced. The Court originally dismissed certain claims under Federal Rule of Civil Procedure 9(b) for failure to adequately identify "when" Plaintiffs visited each site. The Court held that this impinged on UMG's ability to defend itself, since UMG could not know which version of its Websites' cookie banners were displayed. Plaintiffs responded by supplying more specific dates. Defendant now argues that some of these dates are outside the statute(s) of limitation for certain claims (e.g., CIPA), requiring their dismissal because Plaintiffs failed to explain the basis for tolling their claims. But the statute of limitations on Plaintiffs' claims are tolled by Defendant's fraudulent concealment and Plaintiffs' belated discovery of Defendant's conduct. Plaintiffs' submit that the Amended Complaint includes allegations sufficient to support this. Alternately, Plaintiffs can easily overcome this issue by amendment, and request leave to do so.

The Complaint also adequately alleges all of the elements required for Plaintiffs' CIPA claims. The Amended Complaint alleges "contents" that were intercepted by third parties with Defendant's aid, including specific information that each Plaintiff was interested in (e.g., tour dates and merchandise). Plaintiffs' argument that the Complaint fails to allege interception "in transit" is equally specious; this reading of CIPA applies an absurdly narrow understanding of what it means to "read" a communication, and ignores CIPA's language regarding "use" and "attempt[s]" to read or learn the contents of a communication. The Amended Complaint more

than adequately alleges that Defendant aided third parties who "read," "learn[ed]," or "attempt[ed]" to "read" or "learn" the contents of Plaintiffs communications. It also alleges that they did so in "real time," while those communications were "in transit," since the pixels and cookies used to intercept Plaintiffs' communications did so as Plaintiffs visited and interacted with Defendant's Websites. The Complaint also makes clear that routing information such as IP addresses, URLs, browser IDs, and other information were collected for this content.

Finally, Defendant's request that the Court reconsider its ruling that Plaintiffs have Article III standing is meritless. As this Court already ruled, the fact that Defendant promised not to use or enable third party cookies to track and profile users, and then did so anyway, makes the alleged conduct "highly offensive." There has been no change in the law or facts that requires the Court to reconsider its prior ruling.

Accordingly, the Court should deny Defendant's motion to dismiss the Amended Complaint. In the event the Court deems the Amended Complaint deficient, Plaintiffs request leave to amend.

## II. STATEMENT OF FACTS

As the Court reviewed the facts of this case in ruling on Defendant's first motion to dismiss, Plaintiffs will summarize the facts here only briefly.

When consumers visit one of UMG's ecommerce websites[1] (the "Websites"), UMG displays to them a popup cookie consent banner. ECF 42, ¶¶ 27-30. UMG presents Website users who select the "Cookie Choices" link on the cookie consent banner with a cookie consent preferences window. *Id*. UMG's Cookies Consent Preferences Window represented that "We want to be transparent about the data we and our partners collect and how we use it, so you can best exercise control over your personal data[,]" and promised users that they could "Decline All" cookies. *Id.*

[1] Defendant's websites include, but are not limited to, the following: www.postmalone.com; www.imaginedragonsmusic.com; www.billie-eilish.com; arianagrande.com, icespicemusic.com, universalmusic.com, nickiminajofficial.com, theweekend.com, and lilyachtyofficial.com (each a "Website" and collectively, the "Websites"). (ECF 42 fn. 1). Additional, substantially similar websites are listed in the Complaint. *Id.*

Clicking "Decline All" led Plaintiffs and other visitors to a Cookie Consent Preferences Window, wherein Plaintiffs set the "online advertising" and "Performance and Analytics" cookie settings to an "off" position, and the Website informed Plaintiffs that "0 of 2" were "allowed." *Id*. This "led Plaintiffs, and all those Website users similarly situated, to believe that they declined all 'Online Advertising' and 'Performance and Analytics' cookies and tracking technologies." *Id*. ¶ 28.

Despite purporting to offer the option to "Decline All" unnecessary third party cookies, UMG immediately caused several third parties – including Meta Platforms, Inc., Google LLC (Google and DoubleClick cookies), ByteDance Ltd. (TikTok cookies), Snap, Inc. (Snapchat cookies), Appreciation Engine Inc. and more (collectively, the "Third Parties") to install their cookies on Plaintiffs' computers. *Id*. ¶¶ 32, 39-92. UMG thus caused the Third Party's use of cookies to collect users' personal information "including their browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers," and more ("Private Communications"). *Id.* ¶ 23; see also id. ¶¶ 4, 21-22, 30, 32, 36, 54, 61, 74, 86-87. This resulted in disclosure not only of computer data such as IP and email addresses, but specific user communications such as search strings. The Third Parties used the personal information to profile users and target them with advertising for the Third Parties' own financial gain. *Id.* ¶¶ 39–92. This type of tracking and data sharing is exactly what Plaintiffs and Website users who opted-out of cookies sought to avoid.

Plaintiffs filed their Original Complaint on April 24, 2025, alleging invasion of privacy, intrusion upon seclusion, violation of the wiretapping and pen register provisions of California Penal Code § 631, common law fraud, unjust enrichment, breach of contract, and trespass to chattels. Defendant moved to dismiss under Rules 12(b)(6) and 12(f).

This Court granted in part and denied in part Defendant's 12(b)(6) motion. ECF 38. It denied the motion with respect to Plaintiffs invasion of privacy, intrusion upon seclusion, and unjust enrichment claims. As part of that analysis, it rejected Defendant's argument that the Plaintiffs lacked Article III standing because they had not suffered any injury, and rejected

Defendant's statute of limitation arguments. The Court similarly denied Defendant's Rule 12(f) motion. The Court granted the motion with prejudice with respect to Plaintiffs' breach of contract claims. It granted the motion with leave to amend for Plaintiffs' CIPA claims, holding that the original Complaint failed to plead adequately what "contents" of communications were intercepted, as well as what pen register information was captured. The Court also granted the motion with leave to amend with respect to Plaintiffs' fraud and fraudulent concealment claims, holding that Federal Rule of Civil Procedure 9(b) required additional information regarding "when" Plaintiffs visited.

Plaintiffs filed an Amended Complaint. The Amended Complaint includes additional allegations regarding the dates of Plaintiffs' visits to the Websites, and further allegations regarding the "content" of communications intercepted "in transit" as a result of Defendant's placement of third party cookies and use of pixels on user's computing devices despite its promise not to do so.

## III. LEGAL STANDARD

To survive a Rule 12(b)(6) motion, the claimant must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). And the allegations need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555.

## IV. ARGUMENT

### A. Plaintiffs' Claims Are Within the Statute of Limitations.

UMG incorrectly argues that Plaintiffs' claims are time-barred. ECF 48 at 7. The argument is wrong for several reasons.

The Court's order on Defendant's first motion to dismiss rejected Defendant's arguments regarding the statute of limitations, but required more specificity with regards to Plaintiffs' visit

dates. Compare ECF at 38 at 4-5 (statute of limitations) *with id.* at 15 (specificity of dates). On amendment, Plaintiff Wiley added specificity regarding her visit dates to address Rule 9(b). FAC ¶¶ 98, 108. In doing so, Plaintiffs added allegations that some of their visits to the Websites predated the filing of their complaint by more than one year. However, Plaintiffs did not anticipate Defendants' affirmative defense (because they are not required to), and therefore did not include allegations that they did not discover the basis for their claims until January 2025, only three months before they filed their complaint. But even without these allegations, Plaintiffs' allegations do not, on the face of the complaint, demonstrate "no potential factual dispute that could affect whether the defense applies."

In addressing the statute of limitations in the prior order, this Court explained the relevant case law:

> The statute of limitations is "generally an affirmative defense rather than an element of the plaintiff's claim." *Turner v. Google LLC*, 737 F. Supp. 3d 869, 877 (N.D. Cal. 2024). Affirmative defenses do not provide a basis for dismissal under Rule 12(b)(6) unless the plaintiff has pleaded herself out of a claim by "admit[ing] all the ingredients of an impenetrable defense," *Durnford v. MusclePharm Corp.*, 907 F.3d 595, 604 n.8 (9th Cir. 2018), meaning that the plaintiff's pleaded facts demonstrate no "potential factual dispute that could affect whether the defense applies," *Rabin v. Google LLC*, 725 F. Supp. 3d 1028, 1031 (N.D. Cal. Mar. 26, 2024). Where the defendant moves to dismiss a claim as untimely under the applicable statute of limitations, the motion can be granted "only when 'the running of the statute is apparent on the face of the complaint.'" *Van Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)).

ECF 38 at 4-5; *see also United States v. McGee*, 993 F.2d 184, 187 (9th Cir. 1993) (noting complaint need not address statute of limitations raised as affirmative defense).

Here, Plaintiffs' complaint does not "admit the ingredients of an impenetrable statute of limitations defense." *Id*. Plaintiffs filed their complaint on April 4, 2025. ECF 1. Plaintiff Wiley alleges she visited the Websites "on multiple occasions during the last four years, including on or about July 15, 2021 (universalmusic.com); September 15, 2022 (universalmusic.com); December 28, 2023 (nickiminajofficial.com); April 15, 2024 (universalmusic.com); and December 15, 2024 (universalmusic.com); and December 15, 2024 (icespicemusic.com and universalmusic.com)." FAC ¶ 108. Preliminarily, Plaintiff alleges multiple visits within the year

prior to filing, including the April and December 2024 visits to universalmusic.com and icespicemusic.com. Further, the dates listed are not exclusive as she alleges that she visited "on multiple occasions during the last four years." As this Court explained, this necessarily "includes the past two years or one year, so it is entirely possible, from the face of the complaint, that [Plaintiffs'] claims are timely." ECF 38 at 4. Thus, Wiley's claims are not time-barred.

Defendant argues that Plaintiff Wiley's CIPA claims must be time barred because she includes specific allegations regarding her website activity for visits that occurred in December 2023. ECF 48 at 9. As described above, this does not matter because Plaintiff did not discover the basis for her claims until January 2025. But even so, her ability to bring claims for violations as to some Websites provides a basis to challenge all of Defendant's websites because, as she alleges, all of the Websites operated in a materially identical manner throughout the class period. *See*, *e.g.*, FAC ¶¶ 1, 27. Nothing more is required as this stage. *See*, *e.g.*, *Bush v. Rust-Oleum Corp.*, No. 20-cv-03268-LB, 2021 U.S. Dist. LEXIS 507, at *6 (N.D. Cal. Jan. 4, 2021) (holding plaintiff had standing to bring claims based on products he did not purchase because he alleged that the representations were substantially similar and alleged uniform misrepresentations across product lines). Thus, even without allegations relating to when she discovered the basis of her claims, Plaintiff Wiley sufficiently alleges she visited the Websites within one year of filing her claims and are timely.

Plaintiff Shah's claims are also timely. He alleges that he visited "postmalone.com and imaginedragonsmusic.com Websites to browse information about the artists' music and related products on multiple occasions during the last four years, including, in or around March 15, 2024." FAC ¶ 98. In its order on the motion to dismiss, this Court observed that "[b]ecause Shah alleges that he visited at least one of the websites in March 2024, UMG does not move to dismiss any of his claims on timeliness grounds." ECF 38 at 4 n.2. Plaintiff thus did not amend his allegations regarding the dates he visited the Websites except to add more specificity as to which date in March he visited. Furthermore, although he identifies March 15, 2024, as the approximate date of one of his visits, Shah, like Wiley, alleges that he visited on "multiple occasions during the last four years." He includes that his visits were in anticipation of an event in April 2024, and

therefore sufficiently alleges that visited near the date of the event, which was April 27, 2024. *See* FAC ¶ 102, n. 36 (linking to website that lists concert date). Thus on the face of the complaint, Shah's claims are not time-barred either.

If the Court agrees that more is required, both the discovery rule and the fraudulent concealment doctrine tolled CIPA's one-year statute of limitations. The discovery rule "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." *Beheshta Mahboob v. Educ. Credit Mgmt. Corp.*, No. LA CV21-08585-JAK-GJS, 2023 U.S. Dist. LEXIS 245751, at *40 (C.D. Cal. Dec. 20, 2023) (quoting *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005)). Here, Plaintiffs have alleged they do not know how the Website is programmed and determining whether Defendant is still placing unauthorized cookies and transmitting data to third parties requires specialized software developer training. FAC ¶¶ 107, 116. Thus, they could not have discovered the violation at the time of their visit, and Plaintiffs' claims should be tolled. *See Doe v. Fullstory*, 712 F. Supp. 3d at 1255-56 (N.D. Cal. 2024) (discovery rule applied where plaintiff alleged that defendant had exclusive knowledge of its platform, and the highly technical nature of the violation all but ensured that Plaintiff could not discover the violation at all). Similarly, these allegations are sufficient to allege tolling for various prospective class members under the delayed discovery rule, as they may be unable to the discovery earlier, despite reasonable diligence. *See B.K. v. Desert Care Network*, 2024 WL 1343305, at *5 (C.D. Cal. Feb. 1, 2024) (holding that a delayed discovery argument posed a "barrier to dismissal" when the plaintiff alleged that the defendants secretly incorporated Pixels into their web properties and patient portals).

Separately, fraudulent concealment tolls Plaintiff's claims when "(1) the defendant took affirmative acts to mislead the plaintiff; (2) the plaintiff did not have actual or constructive knowledge of the facts giving rise to its claim; and (3) the plaintiff acted diligently in trying to uncover the facts giving rise to its claim." *Brown v. Google LLC*, 525 F.Supp.3d 1049 (C.D. Cal. March 12, 2021) at 1070 (internal quotation marks and citation omitted). Plaintiffs demonstrate these requirements: they allege Defendant affirmatively misrepresented to website visitors that users can "Decline All" cookies and tracking technologies. *See*, *e.g.*, FAC ¶ 31 ("Defendant's

representations, however, were false.”). Plaintiffs also plead that they did not have actual or constructive knowledge of the facts giving rise to their claims. *Id.* ¶¶ 106, 107, 115, 116. Because of this affirmative misrepresentation, and Plaintiff's lack of technical expertise, Plaintiff acted diligently in bringing this action after learning of Defendant's privacy violations in 2024. *Id.* Indeed, Plaintiff's invocation of the fraudulent concealment doctrine is *stronger* than it was in *Fullstory.* Here, unlike in *Fullstory*, Plaintiff has “allege[d] facts with respect to . . . the source of [Defendant's] fraudulent concealment;” namely, the affirmative misrepresentation that website users could truly “Decline All” cookies and tracking technologies. *See Fullstory*, 712 F. Supp. 3d at 1256. As such, Defendant's fraudulent concealment tolled the statute of limitations.

Should the Court require, on amendment, Plaintiffs can include the date they learned of the basis for their causes of action. Specifically, Plaintiffs will allege they only learned of Defendant's Privacy violations from counsel in or around January 22, 2025. Defendant argues that the claims should be dismissed without leave to amend. However, leave to amend “shall be freely given when justice so requires,” bearing in mind “the underlying purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities.” *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citation omitted). While a court may exercise its discretion to deny leave to amend due to “repeated failure to cure deficiencies by amendments previously allowed . . . [and] futility of amendment,” neither reason justifies denying leave here. *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892-93 (9th Cir. 2010) (*quoting Foman v. Davis*, 371 U.S. 178, 182 (1962)).

As explained above, this Court previously denied Defendant's motion to dismiss based on statute of limitation arguments, finding that allegations of visits within the past four years were sufficient to establish Plaintiffs' claims were timely. Thus, leave to amend on the issue of fraudulent concealment and tolling was not previously required or granted, which is why Plaintiffs did not include discovery rule allegations. Further, because Plaintiffs can allege that they did not discover the basis of their claims until January 2025, amendment would not be futile.

**B. Plaintiffs have adequately pled CIPA claims.**

Plaintiffs allege two claims under CIPA.[2] First, Plaintiffs allege a wiretapping claim under the fourth prong of Section 631(a) which makes liable persons who aid others who "unlawfully do, or permit, or cause to be done" either "(1) intentional wiretapping, (2) willfully attempting to learn the contents or meaning of a communication in transit over a wire, [i.e., eavesdropping,] and (3) attempting to use or communicate information obtained as a result of engaging in either of the two previous activities." *Rodriguez v. Ford Motor Co.*, No. 3:23-cv-00598, 2024 U.S. Dist. LEXIS 218685, at *12 (S.D. Cal. Dec. 3, 2024) (cleaned up). Plaintiffs allege that UMG aids and abets Third Party violations of clauses 2 and 3. Second, Plaintiffs allege that UMG's conduct violates CIPA § 638.51, which prohibits the unconsented installation and use of "pen registers" and "trap and trace devices." UMG's challenges to these claims are meritless.

**1. Plaintiffs allege that "contents" were intercepted**

CIPA prohibits interception of "contents" communications. "Contents" communications "refer[] to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014); *see also Yoon v. Lululemon United States*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) (explaining CIPA protects "user-generated material" but not "routine identifiers").

As UMG admits, this Court previously acknowledged that website interactions "such as user input data, shopping behaviors, or in some circumstances referring URLs" *could* convey the contents of a user's communication with a website "*if they revealed what the user was seeking to do or searching for*." *See* ECR 48 at 12*, citing* ECF 38 at 11:23-27. Here, Plaintiffs allege Third Party interception of URLs that reveal what each Plaintiff was looking for, which satisfies the "content" element of CIPA § 631(a).

---

[2] UMG argues that the first three clauses of CIPA do not apply to the alleged conduct. ECF 21 at 12–15. Plaintiffs do not allege that UMG is directly liable under these clauses.

**Plaintiff Shah**

For Plaintiff Shah, the Amended Complaint states that "[o]n postmalone.com, Plaintiff Shah looked for and clicked links and buttons to view tour dates, including selecting the link for the Post Malone April 2024 Stagecoach show." ECF 42, ¶¶ 102. Plaintiffs allege that "that interaction generated and transmitted to the Third Parties a descriptive URL reflecting Plaintiff's request for information about that specific tour date, as well as, without limitation, session information, user identifiers, device information, button interactions and events, referring and clicked full-string URLs, and geolocation data." The associated footnote specifies that the URL transmitted was of the form "https://www.bandsintown.com/e/104890868?app_id=umg_republicrecords_postmalone&came_from=267&utm_medium=api&utm_source=public_api&utm_campaign=event&affil_code=umg_us." Similarly, on the imaginedragonsmusic.com website, Shah clicked "product-category buttons and product links, including links for hooded sweatshirts," which "caused the transmission of full string URLs to the Third Parties that identified the merchandise Plaintiff viewed, including full string URLs such as https://shop.imaginedragons-music.com/collections/hoodies/products/vintage-graphic-hoodie."

This information "reveal[s] what the user was seeking to do or searching for," which satisfies the Court's description of "contents" under CIPA. Specifically, the Complaint alleges that UMG aided and abetted the Third Parties' interception of Plaintiff Shah's communications of his interest in Post Malone's Stagecoach Tour and Imagine Dragons' vintage hoodies, each of which was something Shah was "seeking to do or searching for."

With respect to Plaintiff Shah, UMG tries to sidestep the Amended Complaint' allegations by mischaracterizing them. First, UMG mischaracterizes the allegations as stating that postmalone.com sent a "page view" of Plaintiff Shah's visit to shop.imaginedragonsmusic.com. But what Plaintiffs actually allege is that UMG aided the interception of the contents of Plaintiff Shah's communication to UMG that he wanted information about "collections/hoodies/products/vintage-graphic-hoodie." The contents of the string "***collections/ hoodies/products/vintage-graphic-hoodie***" is exactly what Plaintiff Shah was "seeking" and "searching for." Similarly, UMG mistakenly argues that the URL information

transmitted during Shah's visit to postmalone.com cannot be contents of a communication because it was a "non-UMG URL (bandsintown.com)." But the fact that the information sought involved a query about Post Malone concerts that UMG directed to a third party is irrelevant; the information that Shah was interested in the Post Malone Stagecoach Tour disclosed what Plaintiff Shah was "was seeking to do or searching for," irrespective of whether UMG directed that query to itself or a third party.

UMG's only other argument with respect to Plaintiff Shah is that these "contents" are irrelevant, because Plaintiff Shah's visit "in or around March 15, 2024" (ECF 42, ¶ 98) is outside the statute of limitations. This argument fails for the reasons discussed above in the Statute of Limitations section.

**Plaintiff Wiley**

For Plaintiff Wiley, the Amended Complaint alleges that:

> Plaintiff Wiley interacted with the Websites by searching for and viewing specific content including merchandise. In particular, she looked for and clicked on product-category and product buttons and links, e.g., /https://shop.nickiminajofficial.com/products/ltisy-charmnecklace; https://-shop.nickiminajofficial.com/products/pink-friday-2-lp; https://shop.nicki-minajofficial.com/collections/super-freaky-girl/products/bling-tumbler[] and links to related topics and merchandise (e.g., https://pinkfridaynails.com/). Each of those actions caused the transmission of full string URLs to the Third Parties that identified the specific merchandise and topics that Plaintiff viewed, as well as, without limitation, session information, user identifiers, device information, button interactions and events, referring and clicked fullstring URLs, and geolocation data.

ECF 42, ¶ 112.

This information reveals what Plaintiff Wiley "was seeking to do or searching for" on the nickiminajofficial.com website. Specifically, the Complaint alleges that Plaintiff Wiley was searching for information about "products/ltisy-charmnecklace,: "pinkfridaynails," the "pink-Friday-2-lp," and "collections/super-freaky-girl/products/bling-tumbler."

Plaintiffs concede that this alleges that the specific "content" identified pertains to Ms. Wiley's visit to nickminajofficial.com. UMG does not argue that these URLs are not "content" with respect to that visit; it argues only that these allegations are "scattershot" examples, and thus

insufficient. But Plaintiff Wiley is not required to provide an exhaustive list of the contents of every communication she had with UMG at the pleadings stage; she needs only provide enough information to allow UMG to defend itself. Plaintiffs identification of "content" intercepted during Plaintiff Wiley's visit to the nickiminajofficial.com website is thus sufficient to avoid dismissal of the CIPA claim. The information alleged sufficiently informs UMG of what it needs to assemble its defense in this case. It is free to pursue additional evidence as discovery proceeds.

To the extent that Defendant argues that Ms. Wiley's allegations point to "entirely different websites," not "not to the single website she alleges she 'interacted' with," Defendant is both mistaken and arguing a non-sequitur. First, the Amended Complaint alleges that Ms. Wiley interacted with "the Websites," which include all the websites she listed, not just nickiminajofficial.com. Second, the Amended Complaint treats "shop.nickiminajofficial.com" as part of the nickiminajofficial.com website, which Ms. Wiley alleges she interacted with. Third, as above with the postmalone.com website visited by Plaintiff Shah, the fact that a transmitted URL refers to another website does not remove that information from CIPA's definition of content. The URL still contains information about what Plaintiff Wiley was seeking to do or searching for, even if the information implies a future transaction with a third party such as a separate commercial platform or company.

Defendant also argues that Plaintiff Wiley's particular visit to nickiminajofficial.com—alleged to occur "on or about" December 28, 2023—is outside the statute of limitations. Again, this argument fails for the reasons discussed above in Section IV.A or can be overcome by amendment.

### 2. The "Contents" were intercepted "in Transit"

CIPA § 631(a) states unlawful wiretapping occurs when anyone "willfully and without consent of all parties to the communication, or in any unauthorized manner, ***reads, or attempts to read, or to learn*** the contents or meaning of any message, report, or communication while the same is in transit . . . ***or who uses, or attempts to use***, in any manner, or for any purpose, or to

communicate in any way, ***any information so obtained*** . . . ." Cal. Penal Code § 631(a) (emphasis added).

Here, Plaintiffs have alleged that "the interception [] occur[s] contemporaneous[ly] with the sending or receipt of the message," through alleging "real time" analysis of Plaintiffs' information. *Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751, 759 (N.D. Cal. 2023); *see also Doe v. Tenet Healthcare Corp.*, 789 F. Supp. 3d 814, 838 (E.D. Cal. 2025) ("[A]llegations that [communications] are intercepted in real time through the use of computer code provides sufficient factual detail to support the 'in transit' requirement."). Thus, Plaintiffs have alleged that their communications were tapped "in transit" sufficient to sustain their CIPA claims. *St. Aubin v. Carbon Health Techs., Inc.*, No. 24-cv-00667-JST, 2024 U.S. Dist. LEXIS 179067, at *17 (N.D. Cal. Oct. 1, 2024). Not only have Plaintiffs explained how third-party cookies operate, they give specific examples that transmit data in real time. ECF 42 ¶¶ 4, 21, 24, 32-37, 44-55, 70-71, 73-75, 83-84, 90, 160-161. Plaintiffs' wiretapping claims under CIPA § 631(a) survive because Plaintiffs' "allegations that [communications] are intercepted in real time through the use of computer code provides sufficient factual detail to support the 'in transit' requirement" at the pleadings phase. *Esparza v. UAG Escondido A1 Inc.*, 2024 U.S. Dist. LEXIS 24429, at *3 (S.D. Cal. Feb. 12, 2024). Ruling otherwise would require Plaintiffs to prove their case before discovery. *D'Angelo v. Penny Opco, LLC, No. 23-cv-0981-BAS-DDL,* 2023 U.S. Dist. LEXIS 191054, at *8 (S.D. Cal Oct. 24, 2023); *see also St. Aubin*, 2024 U.S. Dist. LEXIS 179067, at *15 ("A pleading standard [requiring explanation of how and when interception occurs] would require the CIPA plaintiff to engage in a one-sided guessing game because the relevant information about data capture typically resides uniquely in the custody and control of the CIPA defendant and its third-party recorder.").

Defendant argues incorrectly that Plaintiffs' CIPA claim fails because they do not allege that third parties "read or attempted to read" their communications "in real time during the transmission." ECR 48 at 14. This is neither true nor necessary for pleading a CIPA claim. "CIPA prohibits both reading ***or learning*** the contents of any message, report, or communication in transit over any wire, line, or cable without authorization ('interception') ***and using or***

***communicating any information so obtained ('use')***." *Jackson v. Linkedin Corp*., 744 F. Supp. 3d 986, 994 (N.D. Cal. 2024) (emphasis added). It also prohibits "***attempt[ing]***" to do so. Cal. Penal Code § 631(a) (emphasis added).

Allegations that the communications were *intercepted* "in real time" or "contemporaneous[ly] with the sending or receipt of the message" are sufficient to establish the "in transit" element on a motion to dismiss. *See Valenzuela v. Keurig Green Mountain, Inc*., 674 F. Supp. 3d 751, 759 (N.D. Cal. 2023) (noting statutory claim can be pled by explaining how messages are "intercepted in real time"); *St. Aubin v. Carbon Health Techs., Inc.,* No. 24-cv-00667-JST, 2024 U.S. Dist. LEXIS 179067, at *15 (N.D. Cal. Oct. 1, 2024) ("while . . . in transit" means "contemporaneously"). Further, simultaneous interception and duplication of communications meet CIPA's "in transit" element: "allegations that [communications] are intercepted in real time through the use of computer code provides sufficient factual detail to support the 'in transit' requirement." *Esparza v. UAG Escondido A1 Inc*., 2024 U.S. Dist. LEXIS 24429, at *3 (S.D. Cal. Feb. 12, 2024). Put differently, "the key to the interception analysis is whether the plaintiff alleges that the transmission [to the intercepting third party's servers] was simultaneous." *St. Aubin*, 2024 U.S. Dist. LEXIS 179067 at *17.

Defendant relies on an overly narrow reading of § 631(a) to argue that a human eavesdropper must actively read the communication while it is occurring to violate § 631(a). But the statute's plain language also encompasses "attempt[ing]" to read or learn the contents of the communication, and as well as "us[ing]" the information intercepted. Neither of these—either of which is sufficient to establish a wiretapping violation—requires a human to read the communication contemporaneously with its transmission. Indeed, "use" of the intercepted information necessarily occurs *after* the communication is "in transit." Furthermore, to the extent the Third Parties listed in the complaint log and process the information in real time for later use, the "attempt" to read *or learn* the information occurs "while" the communication is "in transit." *See Doe v. Eating Recovery Ctr. LLC*, No. 23-cv-05561-VC, 2025 U.S. Dist. LEXIS 207952, at

*13 (N.D. Cal. Oct. 17, 2025) (noting in dicta that § 631(a) plausibly covers "attempts" to intercept communications via pixels and cookies).[3]

Indeed, some federal courts question whether it is necessary for Plaintiffs to plead that the interception happened "while" the transmission occurred at all, given the California Supreme Court's keystone case *Ribas v. Clark*, 38 Cal. 3d 355, 359 (1985): "Section 631(a) relates not just to messages, reports, or communications that are 'in transit,' but also to those that are 'being sent from, or received at any place within this state." *Mitchell v. Sonesta Int'l Hotels Corp.*, 2024 U.S. Dist. LEXIS 186701, at *19-20 (C.D. Cal. Oct. 4, 2024) (citing Cal. Pen. Code § 631(a) and *Ribas*, 38 Cal. 3d 355, 359 (1985)). The California Supreme Court's decision in *Ribas* is instructive. In *Ribas*, "the California Supreme Court already indicated that a complaint survives a pleadings-based challenge and states a prima facie violation of Section 631 because it alleges that eavesdropping occurred either while the communication was 'in transit' or was 'being sent from' or 'received at' a place within California." *Mitchell*, 2024 U.S. Dist. LEXIS 186701 at *25 ("There is no indication in *Ribas* that the word 'while' was a key focus of the California Supreme Court's analysis.").

Defendant urges this Court to apply holdings born from disparate facts to dismiss Plaintiffs' claims. The Court should not be duped. For example, *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868 (9th Cir. 2002), involved an attempt to sue an airline for wiretap violations where the airline read posts that had been made to an online bulletin board on an earlier date. The Ninth Circuit held that reading a communication that had been made at an earlier date did not count as interception while the post was "in transit." That holding is entirely inapposite to the facts presented here. *Id.* Similarly, in *James v. Allstate Ins. Co.*, 2023 WL 8879246, at *3 (N.D. Cal. Dec. 22, 2023), the complaint alleged nothing more than the recording of a communication by the vendor a website had hired to assist with data retention; the problem in *James* was that the Plaintiffs had failed to allege *any* facts supporting the inference that the third party—whose job

---

[3] *Eating Recovery* opined that CIPA's "attempt . . . to learn" language plausibly covered third party recording of consumer data as pled here, but worried that would render CIPA § 632 superfluous. But § 632 is not superfluous it covers "amplification" devices that capture non-electronic communications "among the parties in the presence of one another" (e.g., parabolic microphones that amplify in-person conversations from a distance), which § 631(a) does not.

was only to retain data input by the website visitor for the website's use—read or attempted to read the communication for its own purposes. That is not the issue here, where the Amended Complaint squarely alleges that each of the Third Parties "reads" the communication to create profiles of the Plaintiffs and other users for use in targeted advertising by additional third parties. ECF 42 ¶¶ 22, 37, 52, 55, 69, and 130. Simply put, this is not a case where the third parties act merely as "a passive tape recorder" to allow Defendant to read back the contents communicated at a later date. Rather, Plaintiffs allege that each Third Party takes the intercepted communication and derives useful information from it for their own purposes.

*Doe I v. Google LLC*, 741 F. Supp. 3d 828, 844 (N.D. Cal. 2024) (Chhabria, J.), the last case Defendant relies upon, is even less relevant. There, the Court dismissed the Complaint because the Plaintiffs had failed to allege facts establishing that Google actually recorded health information submitted on other sites, not because the allegations suggested that Google acted merely as a "passive tape recorder." In fact, the Court explicitly noted that "[t]he allegation that Google creates reports of user activity on a given web property does seem to support an inference that Google is doing more than simply acting as a tape recorder." Thus, the allegations here, which include allegations that third parties are assembling data profiles for use in targeted advertising and marketing, similarly support an inference that the third parties here are doing more than acting as a passive tape recorder.

**3. Plaintiffs properly allege "aiding" under CIPA.**

UMG again argues that Plaintiffs do not and cannot allege intent to aid and abet the Third Parties' CIPA violations. ECF 48 at 15. The crux of UMG's argument is not that it did not know the cookies were being used, but that it cannot have violated the law because it did not have specific knowledge and intent to violate the law. As with UMG's prior motion to dismiss—which presented this identical argument—this is either an affirmative defense (which cannot be raised in a motion to dismiss if it is based on disputed facts; *see, e.g., Nguyen v. Stephens Institute*, 529 F. Supp. 3d 1047, 1056 (N.D. Cal. 2021)), or is an impermissible request for the Court to infer UMG's lack of intent in its favor, notwithstanding Plaintiffs' allegations to the contrary. *See Hawkins v. Kroger Co.*, 906 F.3d 763, 767 n.2 (9th Cir. 2018) (This Court must "accept the

complaint's well-pleaded factual allegations as true, and construe all inferences in the plaintiff's favor for the purposes of evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)").

As discussed in Plaintiffs' Response to Defendant's first motion to dismiss, the plain text of CIPA "does not include an intent standard." *St. Aubin*, 2024 U.S. Dist. LEXIS 179067, at *20. Indeed, Judge Chen rejected this same argument in *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 953 (N.D. Cal. 2023), in which the plaintiff alleged CIPA claims against Disney for causing a third-party to intercept user data including "search terms entered," "pages viewed," and other data similar to the allegations here. *Id*. at 945–46. As here, the defendant argued that it "cannot be held liable under . . . CIPA unless it *intended* to have [a third party] intercept the information at issue." *Id.* at 953. The court rejected that argument, holding that plaintiff pled "aiding," because "it can be reasonably inferred that [Defendant] entered into a contractual agreement with [third party] under which [the third party] would collect information. . . . so that [Defendant] could market to and attract new customers." *Id*. at 954. So too here. Plaintiffs allege that "Defendant voluntarily integrated 'third-party resources' from the Third Parties into its Website programming" which was "done so pursuant to agreements between Defendant and [the] Third Parties" resulted in the collection of valuable user data. ECF 42 ¶ 17.

*James* is consistent with other decisions in this Circuit holding that intent under CIPA is satisfied by pleading that UMG intentionally "enable[d] a third party's eavesdropping on or interception of the communication." *See, e.g.*, *Doe v. Amgen, Inc*., No. 2:23-cv-7448, 2024 U.S. Dist. LEXIS 144579, at *5 (C.D. Cal. Aug. 13, 2024); *Revitch*, 2019 U.S. Dist. LEXIS 186955, at *4 ("[T]he complaint adequately alleges that [Defendant] violated section 631 by enabling [a third party's] wrongdoing"); *Kotlarsz v. Integrity Vehicle Servs., Inc.*, No. 8:24-cv-00569, 2024 U.S. Dist. LEXIS 213565, at *22 (C.D. Cal. Sep. 3, 2024) ("it was the [D]efendant's website on which the [third party] operated."). Regardless of whether UMG had the specific intent to enable *unlawful* conduct, courts routinely find sufficient allegations that the defendant intended the *act* which "enable[d]" the privacy violation. *See, e.g., Doe*, 2024 U.S. Dist. LEXIS 144579, at *5.

Because "[t]he analysis for a violation of CIPA is the same as that under the federal Wiretap Act," the Ninth Circuit's analysis of intent in the Wiretap Act is instructive. *Brodsky v. Apple Inc*., 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) (quoting *Cline v. Reetz-Laiolo*, 329 F. Supp. 3d 1000, 1051 (N.D. Cal. 2018)). "The Ninth Circuit rejected that the word 'intentionally' in the Wiretap Act 'must be read to require a defendant to know that [its] conduct is unlawful . . . Rather, the statute only requires "an intentional act, defined as an act that is being done on purpose." *Shahnaz Zarif v. Hwareh.com, Inc*., No. 23-cv-0565, 2025 U.S. Dist. LEXIS 26519, at *20 (S.D. Cal. Feb. 12, 2025) (quoting *United States v. Christensen*, 828 F.3d 763, 774 (9th Cir. 2015)).

As such, UMG's reliance on *Smith v. Yeti Coolers, LLC,* 754 F. Supp. 3d 933, 943-44 (N.D. Cal. Oct. 21, 2024) is misplaced. ECF 48 at 15. In *Yeti*, the plaintiff alleged that the website owner was liable under the fourth prong of CIPA for aiding a third-party payment processor that "incorporates customers' financial information into its fraud prevention system, which it then markets to merchants without customers' consent" to violate the statute. No. 24-cv-01703-RFL, 2024 U.S. Dist. LEXIS 194481, at *1 (N.D. Cal. Oct. 21, 2024). The *Yeti* court concluded that the plaintiff failed to allege that the defendant was "acting with the third party *in order* to have the third party perform acts that violate the statute." *Id.* at *12. In other words, the court found that the defendant did not intend to enable the third party to collect user information (which plaintiff alleged violated the statute); it only intended to enable the third party to process payments made on its Website. Here, Plaintiffs have alleged that UMG integrated the third-party resources on the Website which placed and transmitted cookies *in order* to obtain user data for advertising purposes. Compl. ¶¶ 4, 15, 20-24. UMG did not disable this software or prevent the Third Parties from obtaining user data even after it solicited user consent and obtained users' rejection of cookies. *Id.* ¶¶ 1–3. UMG cannot claim that it did not intend to cause the Third Parties to wiretap and eavesdrop on users' Personal Communications since it integrated the Third Party code into its Website to do exactly that.

Moreover, UMG's characterization of *Yeti* is contrary to the prevailing standard in this Circuit discussed above. The defendant in *Yeti*, like UMG does here, argued that the plaintiff

must show the "'specific intent to commit the unlawful acts'" 2024 U.S. Dist. LEXIS 194481, at *11. But the plaintiff, by contrast, argued that CIPA did not require specific intent. *Id*. The court acknowledged that CIPA "does not necessarily incorporate the common law [intent] requirement for aiding and abetting. . . [but] other language in [CIPA's] fourth clause does require ***some*** level of knowledge and intent." *Id*. (emphasis added). Here, Plaintiffs alleges more than "some" level of intent and knowledge (as explained above) because UMG owns the website and installed the third-party resources which allowed the Third Parties to track the Website users.

Defendant's citation of *Heiting v. Taro Pharms. USA, Inc*., 709 F. Supp. 3d 1007, 1019 (C.D. Cal. 2023), is similarly unpersuasive. *Heiting's* cursory analysis states that the plaintiff in that case failed to allege any facts supporting intent to aid wiretapping. But *Heiting* fails to identify (1) case law governing pleading of intent, (2) what Plaintiffs actually pled, (3) how governing law applies to what those plaintiffs alleged, or (4) what additional allegations would have sufficed (despite giving leave to amend). More importantly, the theory of that case is distinguishable. In *Heiting*, Taro's agreement with its vendor explicitly allowed only lawful uses, which facially rebutted the intent the Plaintiff needed to allege. Here, in contrast, UMG represented to its Website visitors that it would not allow the very conduct it facilitated by inclusion of Third Party code on its Website. This differentiates the case at bar from *Heiting*, and establishes a reasonable inference of intent to aid and abet the Third Parties' unlawful interception of Plaintiffs' communications with UMG.

**4. Plaintiffs Allege a Pen Register Violation Under CIPA § 638.51.**

CIPA Section 638.51(a) prohibits any person from "install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order." The statute defines a "pen register" as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b). Plaintiffs adequately plead each element of this claim.

In its Order regarding Defendant's first Motion to Dismiss, this Court dismissed the pen register claim because it believed Plaintiffs had failed to identify any "communications." *See* ECF 38 at 14 ("In the absence of any allegation that they communicated with the websites, they

cannot allege that the 'dialing, routing, addressing, or signaling information' relating to any such communication was unlawfully tracked."). The Court subsequently stated that "[s]hould plaintiffs choose to amend this claim, they must identify not only their communications with UMG's websites but also the specific 'dialing, routing, addressing, or signaling information' for outgoing communications that was tracked."

As before, Plaintiffs allege that the Third Party cookies and the corresponding software code installed by UMG on its Website operate as pen registers under the meaning of the statute because they record users' IP address and user-agent information, see ECF 42 ¶¶ 21 (geolocation and device tracking), 54-55 (same, plus IP address and "user agent" corresponding to device and browser), 61 (same), 66 (user agent), 68 (IP address), 74 (device), 81 (user agent), 82 (IP address), 87 (device and geolocation), 92 (same), and 172 (IP address and user agent), which is "routing, addressing, or signaling information." Cal. Penal Code § 638.50(b). Plaintiffs also allege that the cookies that UMG causes to be placed on visitors' computer record additional information, such as operating system information, browser information, geolocation data, and email addresses, for use by Defendant and third parties. To be clear, Plaintiffs have not alleged the specific values of this routing information, but that does not mean that they have not given Defendant enough information to defend itself against Plaintiffs' claims. The exact information transmitted can be gathered during routing discovery.

### C. Plaintiffs Have Article III Standing Under *Popa*.

This Court held that Plaintiffs pled a concrete injury-in-fact under *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025), as part of its Order on UMG's first Motion to Dismiss, *see* ECF 38 at 8-10, and the Amended Complaint does so as well. As this Court noted in its prior Order, *Popa* held that the plaintiff in that case had not pled an injury-in-fact because the plaintiff there had not established how Microsoft's use of "session replay technology" had cause a harm that was "highly offensive." *Id.*, citing *Popa*, 153 F.4th at 786-87. This Court held that, unlike *Popa*, the Plaintiffs here "opted out of advertising and analytics cookies, and UMG disregarded those choices. In other words, UMG made a misrepresentation to users about whether they would

be tracked," *Id.* at 9, which UMG broke. "UMG's misrepresentations" are what made the activities pled here "highly offensive." *Id.*

The Amended Complaint pleads the exact same misrepresentations as the original Complaint. Accordingly, the Amended Complaint satisfies *Popa* for the exact same reasons the Court ruled previously.

Despite this, Defendant argues that the Court must reconsider its ruling because *Popa* requires the Court to consider both the "mechanism" of data collection and the "type" of data collected. ECF 48 at 16-17. According to UMG, a plaintiff has not suffered a privacy-related injury-in-fact unless both the mechanism and type of data collection are "highly offensive." In other words, UMG argues that it and other companies on the internet have free reign to lie to consumers about what data they collect, so long as the data collected is not overly sensitive. That is absurd. Nothing in *Popa* supports UMG's proposed "mechanism" and "type" standard for establishing injury-in-fact; the Ninth Circuit did not identify two distinct elements that must both be met to establish injury-in-fact. More importantly, UMG incorrectly conflates its violation of a promise with *Popa's* mere lack of consent. The two are not the same; its violation of a direct promise not to enable third party cookies to track users is much more offensive than simply failing to ask permission before doing so. The Court recognized this distinction in its Order on the first motion to dismiss, and it supports denial of this motion as well. Defendant has not identified any change in law or mistake by the Court that requires reconsideration of its prior ruling.[4]

## V. LEAVE TO AMEND SHOULD BE GRANTED

Plaintiffs respectfully request leave to amend to correct any defects the Court identifies. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1990) (a court should grant leave to amend "if it appears at all possible that the plaintiff can correct the defect"). Plaintiffs

[4] Defendant's attempt to distinguish *Davis v. Facebook*, 956 F.3d 589 (9th Cir. 2020) ("*In re Facebook*"), is also unavailing, as the scope of data collection alleged here is on par with the "enormous amount of individualized data" and "comprehensive browsing history" at issue in that case.

submit that they can include allegations addressing the discovery rule and tolling, and that such amendment will not be futile.

## VI. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court fully deny Defendant's Motion to Dismiss or, in the alternative, grant Plaintiffs leave to amend.

Dated: March 6, 2026

**GUTRIDE SAFIER LLP**

*/s/ Anthony J. Patek*
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
todd@gutridesafier.com
Anthony J. Patek (State Bar No. 228964)
anthony@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*