**BAKER & HOSTETLER LLP**
Bethany G. Lukitsch (SBN 314376)
*blukitsch@bakerlaw.com*
Kamran B. Ahmadian (SBN 314566)
*kahmadian@bakerlaw.com*
Jaein Cho (SBN 360090)
*jcho@bakerlaw.com*
1900 Avenue of the Stars, Suite 2700
Los Angeles, CA 90067
Telephone: 310.820.8800
Facsimile 310.820.8859

**BAKER & HOSTETLER LLP**
Victoria L. Weatherford (SBN 267499)
*vweatherford@bakerlaw.com*
600 Montgomery Street, Suite 3100
San Francisco, CA 94111
Telephone: 415.659.2600
Facsimile: 415.659.2601

*Attorneys for Defendant*
UNIVERSAL MUSIC GROUP, INC.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

VISHAL SHAH and CHRISTINE WILEY, individually, on behalf of themselves, the general public, and those similarly situated,

Plaintiffs,

v.

UNIVERSAL MUSIC GROUP, INC.,

Defendant.

CASE NO.: 5:25-cv-03095-PCP

[*Assigned to Hon. P. Casey Pitts*]

**REPLY IN SUPPORT OF DEFENDANT UNIVERSAL MUSIC GROUP, INC.'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**

**Date**: April 23, 2026
**Time**: 10:00 a.m.
**Dept.**: Courtroom 8, 4th Floor

**Action Filed:** April 4, 2025
**FAC Filed:** January 14, 2026

**CONTENTS**


I. INTRODUCTION ........ - 1 -

II. Plaintiffs' claims are outside the statutes of limitations ........ - 2 -

A. Plaintiff Shah ........ - 3 -

B. Plaintiff Wiley ........ - 4 -

C. No Delayed Discovery or Fraudulent Concealment ........ - 5 -

III. PLAINTIFFS' WIRETAPPING (CIPA § 631) CLAIM FAILS ........ - 6 -

A. Plaintiffs Failed to Plead "Contents" of "Communications". ........ - 6 -

B. Plaintiffs Failed to Plead that Any Contents of Communications were "Intercepted" While "In Transit". ........ - 8 -

C. Plaintiffs Have Failed to Allege the Requisite Scienter Requirement. ........ - 10 -

IV. PLAINTIFFS' PEN REGISTER CLAIM SHOULD BE DISMISSED ........ - 11 -

V. PLAINTIFFS FAIL TO ALLEGE A COGNIZABLE INJURY REQUIRING DISMISSAL OF ALL COUNTS ........ - 14 -

VI. CONCLUSION ........ - 15 -


BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Abagninin v. AMVAC Chem. Corp.*,
545 F.3d 733 (9th Cir. 2008) ....................6

*Bush v. Rust-Oleum Corp.*,
2021 WL 24842 (N.D. Cal. Jan. 4, 2021) ....................4

*Cody v. Ring LLC*,
718 F. Supp. 3d 993 (N.D. Cal. 2024) ....................10

*D'Angelo v. Penny OpCo, LLC,*
2023 WL 7006793 (S.D. Cal. Oct. 24, 2023) ....................9

*Day v. City of Fontana*,
25 Cal. 4th 268 (2011) ....................12

*Doe v. Eating Recovery Ctr. LLC*,
No. 23-CV-05561, 2025 WL 2971989 (N.D. Cal. Oct. 17, 2025) ....................12

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) ....................10

*Esparza v. UAG Escondido A1 Inc.*,
2024 WL 559241 (S.D. Cal. Feb. 12, 2024) ....................9

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal. 4th 797 (2005) ....................5

*Heiting v. Taro Pharms. USA, Inc.*,
709 F. Supp. 3d 1007 (C.D. Cal. 2023) ....................11

*Hirsch v. Arthur Andersen & Co.*,
72 F.3d 1085 (2d Cir. 1995) ....................2

*In re Facebook, Inc. Internet Litig.*,
956 F.3d 589 (9th Cir. 2020) ....................7, 14

*In re Meta Pixel Tax Filing Cases*,
793 F. Supp. 3d 1147 (N.D. Cal. 2025) ....................12

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) ....................9

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ....................6



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*James v. Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023) ....................11

*Khamooshi v. Politico LLC*,
2025 WL 1408896 (N.D. Cal. May 13, 2025) ....................14

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) ....................8

*Mitchell v. Sonesta Int'l Hotels Corp.*,
2024 WL 4471772 (C.D. Cal. Oct. 4, 2024) ....................9

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ....................14, 15

*Ribas v. Clark*,
38 Cal. 3d 355 (1985) ....................9

*Rodriguez v. Google LLC*,
2022 WL 214552 (N.D. Cal. Jan. 25, 2022) ....................9

*Rodriguez v. Ink America Intern. Group LLC*,
2025 WL 4034985 (Cal. Super. Dec. 10, 2025) ....................13

*Smith v. Yeti Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2023) ....................11

*St. Aubin v. Carbon Health Techs., Inc.*,
2024 WL 4369675 (N.D. Cal. Oct. 1, 2024) ....................9

*Skidgel v. Cal. Unemp. Ins. Appeals Bd.*,
12 Cal. 5th 1 (2021) ....................12

*Tapia Carmona v. Cnty. of San Mateo*,
2019 WL 4345973 (N.D. Cal. Sept. 12, 2019) ....................2

*Thibodeaux v. Teamsters Local 853*,
263 F. Supp. 3d 772 (N.D. Cal. 2017) ....................5

*Valenzuela v. Keurig Green Mountain, Inc.*,
674 F. Supp. 3d 751 (N.D. Cal. 2023) ....................9

*Valenzuela v. Kroger Co.*,
2024 WL 1336959 (C.D. Cal. Mar. 28, 2024) ....................10

*Williams v. What If Holdings, LLC*,
2022 WL 17869275 (N.D. Cal. Dec. 22, 2022) ....................6

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Wilson v. Frito-Lay N. Am., Inc.*,
961 F. Supp. 2d 1134 (N.D. Cal. 2013) ....................4

*Winsor v. Sequoia Benefits & Ins. Servs., LLC*,
62 F.4th 517 (9th Cir. 2023) ....................15

*Wu v. Sunrider Corp.*,
793 F. App'x 507 (9th Cir. 2019) ....................5

*Yoon v. Lululemon USA, Inc.*,
549 F. Supp. 3d 1073 (C.D. Cal. 2021) ....................7

**Statutes**

California Penal Code § 20 ....................10
California Penal Code § 631(a) ....................6, 7, 8, 10
California Penal Code § 638.50 ....................13

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## I. INTRODUCTION

Plaintiffs' Opposition ("Opp.") fails to confront the fundamental pleading deficiencies in their FAC as identified in UMG[1]'s Motion to Dismiss Plaintiff's FAC ("Motion").

*First*, despite having had the issue of statutes of limitations previously briefed by UMG, Plaintiffs' claims are clearly untimely under the FAC's own allegations. Plaintiffs cannot evade the statutes of limitations by pleading specific website-visit dates and then asking the Court to disregard them as merely "illustrative." Every concrete allegation in the FAC ties Plaintiffs' claims to dates that fall outside the governing limitations periods, and Plaintiffs fail to plead any facts supporting tolling under delayed discovery or fraudulent concealment. Because the FAC's own allegations establish untimeliness as a matter of law, the Court should dismiss Plaintiffs' untimely claims with prejudice.

*Second*, even if Plaintiffs could overcome the statutes of limitations—which they cannot—their substantive CIPA claims independently collapse. Plaintiffs fail to allege that they engaged in any protected "communications," fail to allege that any communication was intercepted while in transit, and fail to allege the requisite scienter. Plaintiffs' theory stretches CIPA far beyond its text, settled precedent, and legislative intent, particularly with respect to their pen-register claim, which the Legislature never intended to apply to modern website analytics and tracking tools and which independently fails for lack of intent and routing allegations.

Finally, Plaintiffs' claims fail for the most basic reason: they allege no concrete privacy injury. Under controlling Ninth Circuit authority, including *Popa v. Microsoft*, courts must examine the type of data allegedly collected. Here, Plaintiffs allege nothing more than innocuous browsing behavior—viewing tour dates and merchandise pages—without any allegation that private, sensitive, or embarrassing information was collected, transmitted, or intercepted. Plaintiffs do not allege that they entered search terms, submitted personal data, or interacted with the Websites in a meaningful way that could give rise to a privacy invasion. Unable to identify any actual privacy harm, Plaintiffs contend that an alleged "misrepresentation" somehow creates one. It does not. A

[1] As raised multiple times in past briefs and meet-and-confers, Universal Music Investments, Inc., is the proper named defendant in the UMG family group of entities.

purported misrepresentation, without more, cannot transform ordinary, non-personal browsing activity into a concrete privacy injury where none exists in the underlying data collection.

Because Plaintiffs fail to allege timeliness, statutory violations, intent, or injury, the FAC fails as a matter of law and should be dismissed with prejudice.

## II. PLAINTIFFS' CLAIMS ARE OUTSIDE THE STATUTES OF LIMITATIONS

UMG raised the statute of limitations issue in its prior motion to dismiss. In response, Plaintiffs told the Court they could amend and plead visits within the applicable statutes of limitations. *See* Plaintiffs' Opposition to Motion to Dismiss [Dkt. No. 23], at 10 ("If the Court agrees that Plaintiff Wiley's allegations must identify the date of her visit with more specificity, Plaintiffs can amend to place her visit within one year of filing.") But in the FAC, Plaintiffs added specific website visit dates that show their claims fall ***outside*** of the applicable statutes of limitations. Plaintiffs now argue they added these website visit dates solely to satisfy Rule 9(b) and contend that the Court cannot rely on those same dates to assess timeliness by labeling them as merely illustrative of visits over the past four years. *See* Opp. at 4:24-8:26. The Court should reject this argument.

First, Plaintiffs' reason for adding specificity about their website visit dates is irrelevant. Having chosen to plead specific dates, Plaintiffs cannot ask the Court to disregard them. *See Tapia Carmona v. Cnty. of San Mateo*, 2019 WL 4345973, at *9 (N.D. Cal. Sept. 12, 2019) (Koh, J.) ("General, conclusory allegations need not be credit … when they are belied by more specific allegations of the complaint") (quoting *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995)). In fact, Plaintiffs' argument also reveals confusion about their own claims. The Court previously applied Rule 9(b)'s heightened pleading standard only to Plaintiffs' fraud-based theory. *See* Order Denying in Part, Granting in Part Motion to Dismiss [Dkt. No. 38] ("Order") at 15:3 n 4. If Plaintiffs now contend that they added specific visit dates to satisfy Rule 9(b) for a fraudulent concealment theory, they cannot simultaneously rely on vague assertions that they visited the websites "on multiple occasions during the last four years." *See* Opp. at 15. Even under the most liberal of pleading standards, the Court is not obligated to overlook their own allegations simply because they have now become inconvenient for Plaintiffs.

Moreover, although Plaintiffs claim that they visited the Websites on multiple additional occasions, every well-pled factual allegation in the FAC describing their actual interactions with the Websites—including the newly added paragraphs—ties exclusively to the ***specific dates*** pled in the FAC. *See* FAC ¶¶ 98, 102-03, 108, 112. The FAC contains no allegation that Plaintiffs accessed the Websites at any other time. *See id.* Because both Plaintiffs now allege specific dates on which they purportedly visited the Websites, *see id.* ¶¶ 98 (Plaintiff Shah); 108 (Plaintiff Wiley), the Court need not rely on vague, open-ended allegations to evaluate timeliness. *See* Order at 5:7-9. When the applicable statutes of limitations are applied to these newly alleged dates, the conclusion is clear: Plaintiffs' claims fall outside the governing limitations periods and are untimely.

**A. <u>Plaintiff Shah</u>**

Plaintiff Shah cannot excuse his failure to allege any dates beyond March 15, 2024, by invoking the Court's observation that UMG purportedly waived the timeliness argument. *See* Opp. at 6 (citing Order at 4:10 n.2 (noting that "[b]ecause Shah alleges that he visited at least one of the websites in March 2024, UMG does not move to dismiss any of his claims on timeliness grounds")). That observation was incorrect. UMG squarely raised this issue in both its prior motion to dismiss and its reply, and Plaintiffs—not UMG—ignored the argument. *See* Defendant's Motion to Dismiss [Dkt. No. 21] at 12 ("Plaintiffs filed this lawsuit on April 4, 2025, yet Plaintiff Shah alleges he visited certain Websites 'in or around March 2024,' Compl. ¶ 85, and thus is out of time to bring the CIPA claim."); *see also* Defendant's Reply in Support of Motion to Dismiss [Dkt. No. 25] at 8 ("The Opposition fails to address UMG's argument that Plaintiff Shah's CIPA claims are time-barred and thereby waives it, requiring dismissal."). UMG therefore put Plaintiffs on notice of this defect and gave them a clear opportunity to allege additional dates. Plaintiffs cannot rely on the Court's mistaken remark to excuse their failure to cure a fatal pleading defect, nor can they claim that UMG is barred from advancing an argument it has consistently raised.

Further, as discussed above, every fact supporting Plaintiff Shah's CIPA claim arises from his March 2024 website visit, and he identifies no other dates on which he accessed the Websites. Nor does Shah's allegation that he visited the Websites in anticipation of an April 2024 event cure





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

this defect. That vague assertion does not plausibly allege a separate visit to postmalone.com on or near April 27, 2024. Absent any additional factual allegations, Plaintiff Shah cannot place his claim within the limitations period. Accordingly, his CIPA claims are untimely as a matter of law.

**B. <u>Plaintiff Wiley</u>**

Likewise, Plaintiff Wiley's CIPA and common law invasion of privacy claims are based on her alleged visits that occurred outside the limitations period. Plaintiffs do not dispute that Plaintiff Wiley's claims predicated on her visits to universalmusic.com on July 15, 2021 and September 15, 2022, as well as her visit to nickiminajofficial.com on December 28, 2023, are time-barred. Instead, Plaintiffs contend that the later April and December 2024 visits save her claim. *See* Opp. at 6. Not so. Plaintiffs do not allege *any* facts detailing what, if any, actions they took during each of these visits, nor do they allege that any of these subsequent visits resulted in any distinct CIPA violations. *See* FAC ¶¶ 108-116 (using vague group pleading and failing to set forth any specific interactions on the universalmusic.com website).

Even if Plaintiff Wiley did allege a timely visit to a Website (she did not), she argues that this would provide "a basis to challenge all of Defendant's Websites because … all of the Websites operated in a materially identical manner throughout the class period." Opp at 6:9-12 (citing *Bush v. Rust-Oleum Corp.*, 2021 WL 24842 (N.D. Cal. Jan. 4, 2021)). Unlike in *Rust-Oleum Corp.*, however, the Websites at issue here ***are not uniform***. As explained in UMG's Motion, the features of each Website vary, and not all Websites include the same functionality. For example, postmalone.com lacks a search function, whereas shop.postmalone.com includes one and also displays a distinct cookie banner. Plaintiffs nevertheless offer no factual allegations showing that the handful of examples drawn from a single Website, postmalone.com, out of the thirty-nine different Websites—at unspecified times—are identical or even similar to the alleged misrepresentations Plaintiffs personally encountered. The Court need not credit such conclusory allegations or unwarranted inferences. *See Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134, 1141-42 (N.D. Cal. 2013) (Conti, J.) (finding the consumers lacked standing regarding products they had not purchased where they simply provided long lists of products that flatly stated contained misleading statements, and provided no other facts showing that non-purchased products were same

or similar to purchased products). Accordingly, Plaintiff Wiley's claims are time-barred to the extent they rely on visits that occurred outside the limitations period.

### C. **No Delayed Discovery or Fraudulent Concealment**

Plaintiffs attempt to salvage their untimely claims by invoking the delayed discovery rule in their Opposition, in conclusory fashion. *See* Opp. at 7. They assert that they lacked technical knowledge about how the Websites were programmed and therefore could not have discovered the alleged violations at the time of their visits. *See id.* To invoke delayed discovery, however, a plaintiff must specifically plead facts *in the complaint* showing both the time and manner of discovery and the inability to have discovered the claim earlier despite reasonable diligence. *Wu v. Sunrider Corp.*, 793 F. App'x 507, 511 (9th Cir. 2019) (citing *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808 (2005)). Plaintiffs plead none of this. They allege no details regarding how or when they discovered their claims, nor do they allege diligence. Indeed, Plaintiffs concede that the FAC does not allege delayed discovery at all. *See* Opp. at 5. The delayed discovery rule therefore cannot apply, and the untimely claims must be dismissed. *See Wu*, 793 F. App'x at 511.

Nor does the doctrine of fraudulent concealment save Plaintiffs' claims. As discussed above, Plaintiffs cannot satisfy Rule 9(b)'s heightened pleading standard by alleging that they visited the Websites on "multiple occasions during the last four years." *See Thibodeaux v. Teamsters Local 853*, 263 F. Supp. 3d 772, 778 (N.D. Cal. 2017) (James, J.) (requiring plaintiff to "plead allegations of fraudulent concealment with particularity, including facts showing his lack of constructive knowledge and his diligence.") (int. cits. omitted). Although Plaintiffs now allege a few specific visit dates, the FAC remains devoid of allegations identifying any other visits during the "last four years" or detailing any specifics related to those visits, such as if and when the cookie banners popped up, which cookies were triggered, what information was transmitted, or how any transmission occurred. Absent these particulars showing constructive knowledge and diligence, Plaintiffs cannot invoke fraudulent concealment to toll the statutes of limitations.

Plaintiffs' failure to plead the required facts to address the crucial defects regarding statute of limitations in their FAC—despite having been on notice since UMG's initial Motion to Dismiss challenged the statutes of limitations—should weigh against granting leave to amend. *See*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Abagninin v. AMVAC Chem. Corp.,* 545 F.3d 733, 742 (9th Cir. 2008) ("Leave to amend may also be denied for repeated failure to cure deficiencies by previous amendment.").

## III. PLAINTIFFS' WIRETAPPING (CIPA § 631) CLAIM FAILS

Plaintiffs concede that UMG is not directly liable for violating § 631(a); rather, Plaintiffs attempt to advance their CIPA wiretapping claim through the aiding and abetting prong. *See* Opp. at 9. Consequently, if the Court proceeds beyond the limitations issue, Plaintiffs nonetheless failed to sufficiently allege an underlying predicate violation by a third party and cannot plausibly allege an aiding and abetting claim against UMG. *Williams v. What If Holdings, LLC*, 2022 WL 17869275, at *2 (N.D. Cal. Dec. 22, 2022) (holding aiding and abetting liability is "based entirely on whether [the third party] violated Section 631(a) in some way"). Plaintiffs have failed to allege the three essential elements to state a claim under the second clause of California Penal Code § 631(a)—that the (1) contents of communications (2) were intercepted (3) while in transit.

### A. Plaintiffs Failed to Plead "Contents" of "Communications".

Plaintiffs assert that "URLs that reveal what each Plaintiff was looking for" qualifies as "contents" of "communications" under § 631(a). *See* Opp. at 13. But in doing so, Plaintiffs misunderstand what is required. The Court previously observed that "the alleged tracking of 'website interactions,' 'user input data,' 'shopping behaviors,' and potentially 'referring URLs' *could convey*, among other things, what users were searching for or what they wanted to do on UMG's websites." Order at 11:24-27 (emph. added). That observation, however, does not transform every descriptive or referring URL into the "contents" of a "communication" within the meaning of § 631(a). As a matter of law and common sense, a URL conveys "contents" only when it reflects an underlying communication *by the user to the website*—such as a user entering search terms (for example, "Stagecoach" or "hoodie") or other user input that reveals the user's intended message to the website. *See In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108-09 (9th Cir. 2014) ("[T]he referer header information at issue here includes only basic identification and address information, ***not a search term or similar communication made by the user*** and therefore does not constitute the contents of a communication") (emph. added). Tellingly, neither Plaintiff Shah nor Plaintiff Wiley alleges that they entered search terms or other user-input information into any field on UMG's

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

websites. *See* FAC ¶¶ 98, 102–03, 105, 108, 112. Absent such allegations, Plaintiffs fail to plead they engaged in any "communication" with UMG's websites, and the URLs they allege accordingly cannot reflect any "content" of a communication under § 631(a).

Plaintiff Shah argues that clicking links and buttons to view tour dates generated a descriptive URL reflecting a request for that information. *See* Opp. at 10. But the only identified descriptive URL directs to a third-party site (bandsintown.com) and reveals nothing about any communication with postmalone.com, such as tour-date queries. Nor does the descriptive URL allegedly generated during his visit to shop.imaginedragonsmusic.com reveal the contents of any communication. Although Plaintiff Shah claims that full-string URLs such as "https://shop.imaginedragonsmusic.com/collections/hoodies/products/vintage-graphic-hoodie" to show what he was "searching for," he admits those URLs reflect only his clicks and pages viewed, ***not*** any information he affirmatively input or communicated to the Websites. Even if this URL reflected a communication (it does not), it still does not disclose any "contents" because it reveals no "significant information regarding [Plaintiff Shah's] browsing history," nor divulge his "personal interests, queries, and habits." *Cf. In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 603-05 (9th Cir. 2020) ("*In re Facebook*) (finding alleged full-string URLs were "contents" where plaintiffs alleged that the URLs could emanate ***from search terms*** inputted into a third-party search engine) (emph. added). The URLs here do not convey any affirmative search terms Plaintiff Shah may have allegedly input during his visit to the Website. Instead, the identified URLs describe session identifiers, device data, and click events—precisely the types of non-content information courts consistently hold fall outside the scope of § 631(a). *See Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) (holding that "keystrokes, mouse clicks, pages viewed, timestamps, IP addresses, location data, browser type, and operating-system information" do not qualify as "contents").

Plaintiff Wiley likewise asserts that vague allegations of "searching for and viewing" for merchandise by looking for and clicking on unidentified product-category and product buttons and links reveal what she "was seeking to do or searching for" on nickiminajofficial.com. But again, she provides no detail about which buttons she clicked or pages she viewed during this visit, let





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

alone any search terms she input or user-input information field she filled out. And as Plaintiffs concede, these allegations are limited to the supposed "contents" of Plaintiff Wiley's visit to nickimiajofficial.com only. *See* Opp. at 11. And contrary to Plaintiffs' representation, the FAC does not treat "shop.nickimiajofficial.com" as a part of the "nickinimjaofficial.com" website. *See* FAC ¶ 1 n. 1 (listing out these two Websites as separate and individual sites). That is, the FAC lacks factual details about what "communications" Plaintiff Wiley engaged in with the any of the other three Websites she alleges to have visited.

**B. <u>Plaintiffs Failed to Plead that Any Contents of Communications were "Intercepted" While "In Transit".</u>**

Plaintiffs also fail to plausibly allege that any third party intercepted or read any communication while it was "in transit." While the Court did not previously address this issue because Plaintiffs' failure to allege any third-party interception was alone sufficient to dismiss the wiretapping claim, *see* Order at 12:4–18, Plaintiffs' arguments that they adequately alleged interception "in transit" are no more persuasive now than they were before. The Ninth Circuit has made clear that interception under § 631(a) requires acquisition of a communication ***during*** transmission. *See Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (defining "intercept" as "to stop, seize, or interrupt in progress or course before arrival") (emph. added). Plaintiffs' contrary assertion—that interception need not occur while the transmission is ongoing, *see* Opp. at 14-15—directly contradicts the statute's text. Section 631(a)'s second clause expressly limits liability to conduct occurring "while the [communication] is in transit." Cal. Penal Code § 631(a) (prohibiting a defendant from "willfully…read[ing], or attempt[ing] to read, or to learn the content or meaning of any message, report, or communication while the same is in transit"). Plaintiffs' attempt to sever the statute's "use" clause from this foundational requirement fails. They cite no authority—nor could they—for the proposition that the statute reaches information never intercepted during transmission. Although § 631(a) also prohibits the "use" of intercepted information, it does so only with respect to information "so obtained," meaning information acquired while in transit. In short, regardless of whether Plaintiffs allege that Defendants read, learned, or used their communications, § 631(a) requires acquisition ***during transmission***.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Nor can Plaintiffs argue they need not plead the interception occurred "in transit" by invoking *Mitchell v. Sonesta Int'l Hotels Corp.*, 2024 WL 4471772 (C.D. Cal. Oct. 4, 2024). While that court discussed *Ribas v. Clark*, 38 Cal. 3d 355, 359 (1985), and noted the word "while" was not a key focus of the California Supreme Court's analysis, it nonetheless deemed the "in-transit" element met because the plaintiffs alleged that their communications were duplicated and sent to third parties at the same moment they were transmitted to the website. *See Mitchell*, 2024 WL 4471772, at *8.

Here, the FAC alleges no facts explaining how any third party acquired—much less read or learned—Plaintiffs' communications in real time. Plaintiffs instead rely on conclusory assertions that communications were "intercepted in transit," which courts have repeatedly held insufficient. *See* Opp. at 14. That is insufficient. *See Valenzuela v. Keurig Green Mountain, Inc.*, 674 F. Supp. 3d 751 (N.D. Cal. 2023) (Corley, J.) ("But this complaint is entirely speculative. How do these third parties interface with Defendant's chat platform other than via "code"? It is impossible to infer from the complaint. Thus, Plaintiff's simultaneity claims are just too conclusory to survive"); *St. Aubin v. Carbon Health Techs., Inc.*, 2024 WL 4369675, at *6 (N.D. Cal. Oct. 1, 2024) (Tigar, J.) (dismissing Section 631(a) claim as to Google Pixel because plaintiff did not allege how and when the interception occurs). Indeed, the only cases Plaintiffs can point to in support of their position are outside of this district. *See e.g.*, *Esparza v. UAG Escondido A1 Inc.*, 2024 WL 559241, at *3 (S.D. Cal. Feb. 12, 2024); *D'Angelo v. Penny OpCo, LLC,* 2023 WL 7006793, at *6 (S.D. Cal. Oct. 24, 2023).

Courts consistently require more than labels and conclusions. Plaintiffs must plead specific facts making it plausible that a third party acquired communications contemporaneously with transmission. *See Rodriguez v. Google LLC*, 2022 WL 214552, at *1-2 (N.D. Cal. Jan. 25, 2022) (Seeborg, C.J.) ("Using the word 'intercept' repeatedly is simply not enough without the addition of specific facts that make it plausible Google is intercepting their data in transit."); *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) (dismissing wiretap claim because the "conclusory allegation that Vizio intercepted their electronic communications 'during transmission"' was only supported by "vague allegations about how Vizio's data collection occurs

in real-time."). Plaintiffs fail to meet that standard here. In any event, Plaintiffs' allegations that third parties later "read" or "used" information are not tethered to any specific communications Plaintiffs allegedly made and cannot sustain a § 631(a) claim. *See* FAC ¶¶ 22, 37, 52, 55, 69, 130.

Because Plaintiffs have failed to allege a viable violation of § 631(a), their derivative claim against UMG necessarily fails. *See Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1003 (N.D. Cal. 2024) (Martínez-Olguín, J.) (dismissing claim under Section 631(a)'s fourth clause where plaintiff failed to establish "underlying third-party violation" of preceding clauses).

**C. Plaintiffs Have Failed to Allege the Requisite Scienter Requirement.**

As with the "in transit" requirement, the Court previously had no need to reach the issue of scienter because Plaintiffs' failure to allege *their* communications with the Websites alone warranted a dismissal of their wiretapping claim. *See* Order at 12:4-18. That defect remains fatal. But Plaintiffs' wiretapping claim fails for an additional and equally dispositive reason: Plaintiffs do not allege any facts in the FAC that would establish that UMG intentionally permitted third parties to track Plaintiffs after they rejected cookies. *See Doe I v. Google LLC*, 741 F. Supp. 3d 828, 844 (N.D. Cal. 2024) ("CIPA liability only extends to willful or intentional conduct.").

Rather than plead intent, Plaintiffs argue that criminal intent is unnecessary because CIPA does not expressly require it. *See* Opp. at 17. That argument fails. Plaintiffs point to no language in Section 631—because none exists—that eliminates the default intent requirement applicable to criminal violations. *See* Cal. Penal Code § 20; *Valenzuela v. Kroger Co.*, 2024 WL 1336959, at *4 (C.D. Cal. Mar. 28, 2024) ("In the absence of an explicit statutory scienter requirement, in California civil actions, the common law definition [of aiding and abetting] applies.").

Accordingly, Plaintiffs must allege that UMG intended to aid and abet a third party's illegal wiretapping of Plaintiffs' communications. They do not. The FAC supports only one plausible inference: UMG's cookie banner may have malfunctioned when users rejected non-essential cookies. *See* FAC ¶ 30 ("[W]hen users rejected all 'Online Advertising' and 'Performance and Analytics' cookies, Defendant nonetheless continued to cause the Third Parties' cookies to be placed on users' devices and/or transmitted to the Third Parties."). Plaintiffs argue that UMG is making an impermissible request for the Court to infer UMG's lack of intent in its favor,

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

notwithstanding Plaintiff's allegations to the contrary. *See* Opp. at 16. But Plaintiffs do not provide any "allegations to the contrary"—they provide no facts suggesting at all that UMG ***intended*** to wiretap its users or to facilitate such conduct by others.

Unable to plead intent, Plaintiffs instead assert that courts have rejected any intent requirement. *See id.* at 17. They are wrong. In *James*—a case that did not involve a cookie banner or the rejection of cookies—there was no dispute that intent was a required element of a § 631(a) aiding-and-abetting claim. *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 954 (N.D. Cal. 2023) ("Plaintiffs do not fundamentally dispute that there must have been intent on the part of Disney to have Oracle intercept."). The *James* court inferred intent only because Disney had entered into a contract with Oracle. No comparable facts exist here. Once again, the far more reasonable inference from the FAC is that UMG's cookie banner unintentionally malfunctioned.

Plaintiffs' attempt to distinguish *Smith v. Yeti Coolers, LLC*, 754 F. Supp. 3d 933 (N.D. Cal. 2023), also fails. As in *Yeti*, Plaintiffs allege no facts showing that UMG acted "with the third party in order to have the third party perform acts that violate the statute." *Id.* at 942. As the *Yeti* court explained, "that requires both knowledge of the conduct that ***will violate the statute*** and a ***purpose*** of aiding, agreeing with, or employing the third party to commit those acts." *Id.* (emph. added). Plaintiffs' vague references to "some level of intent and knowledge" (Opp. at 18, citing FAC ¶¶ 4, 15, 20–24) are conclusory and defy common sense.[2]

## IV. PLAINTIFFS' PEN REGISTER CLAIM SHOULD BE DISMISSED

Plaintiffs' Opposition never explains how the FAC complies with the Court's explicit instruction to identify "not only their communications with UMG's websites but also the specific 'dialing, routing, addressing, or signaling information' for outgoing communications that was tracked." Order at 14:16-18. Plaintiffs instead claim compliance by alleging that third-party cookies and software code on the Websites collect users' IP addresses and user-agent information. *See* Opp. at 20. That does not satisfy the Court's directive.

[2] Plaintiffs' attempt to distinguish *Heiting v. Taro Pharms. USA, Inc.*, 709 F. Supp. 3d 1007 (C.D. Cal. 2023) likewise fails. UMG's alleged misrepresentation does not automatically create an inference it knew about third parties' violation of CIPA—indeed, Plaintiffs cannot even allege any predicate CIPA violation, as discussed in Section V.B.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Critically, Plaintiffs' IP-address and user-agent allegations do not relate to any communications Plaintiffs themselves engaged in. The FAC merely alleges, in generic terms, that third-party cookies can collect IP addresses, user-agent data, device information, or geolocation information. *See* FAC ¶¶ 21, 54-55, 61, 66, 68, 74, 81–82, 87, 92, 172. As the Court already explained, the defect is not simply Plaintiffs' failure to invoke the words "dialing" or "routing." The problem is their failure to identify the specific dialing, routing, addressing, or signaling information associated with the outgoing communications they personally sent. *See* Order at 14:16-18 ("[T]hey must identify ***not only*** their communications with UMG's websites ***but also*** the specific 'dialing, routing, addressing, or signaling information' for outgoing communications that was tracked.") (emph. added). UMG does not contend that Plaintiffs must plead every discrete routing value or technical parameter. But Plaintiffs must at least allege *some* routing information tied to their own communications with the Websites. They do not. That omission remains exactly as the Court previously found—and it is fatal. Plaintiffs' continued inability to cure this defect warrants dismissal with prejudice.

Dismissal with prejudice is especially appropriate because CIPA's pen-register provisions do not apply to the website analytics tools Plaintiffs challenge in the first place. Although UMG recognizes that the Court was not persuaded by UMG's argument that Section 638.51 only applies to telephones, *see* Order at 12:25-14:3, recent decisions and legislation on CIPA and CPPA warrant a reconsideration of this issue.

In construing a statute, California courts "determine the Legislature's intent so as to effectuate the law's purpose." *In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d 1147, 1153 (N.D. Cal. 2025) (Pitts, J.) (quoting *Skidgel v. Cal. Unemp. Ins. Appeals Bd.*, 12 Cal. 5th 1, 14 (2021)). Where statutory language remains ambiguous, courts consult extrinsic sources and "select the construction that comports most closely with the apparent intent of the Legislature … and avoid an interpretation that would lead to absurd consequences." *Day v. City of Fontana*, 25 Cal. 4th 268, 272 (2011). As Judge Chhabria recently observed, CIPA's language is anything but clear. *See Doe v. Eating Recovery Ctr. LLC*, No. 23-CV-05561, 2025 WL 2971989, at *1 (N.D. Cal. Oct. 17, 2025) (Chhabria, J.) ("The language of CIPA is a total mess.")). Considerable ambiguity surrounds the



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

scope and application of the pen-register and trap-and-trace definitions in Penal Code § 638.50. That ambiguity makes resort to extrinsic sources not only appropriate, but necessary.

Those extrinsic sources confirm that the Legislature never intended CIPA's pen-register provisions to regulate modern website tracking or analytics tools. As one California court recently recognized, the pending legislation, Senate Bill 690, confirms that the Legislature never intended for CIPA to apply to the website tracking tools at issue. *See Rodriguez v. Ink America Intern. Group LLC*, 2025 WL 4034985, at *4 (Cal. Super. Dec. 10, 2025). The *Rodriguez* court quoted Democratic Senator Anna Caballero who explained SB 690's purpose:

> "I rise today to present SB 690, a Bill to protect California businesses from ***a wave of abusive and predatory lawsuits that are threatening jobs, innovation, and the very ability to do business in our state***… California already has the strongest privacy law in the nation, the California Consumer Protection Act, or CCPA. Back in 2018, this Legislature passed CCPA to give consumers real control over their data using a modern opt out approach. ***Suing under CIPA for activity that's already governed by the CCPA goes against legislative intent, creates confusion, punishes compliance, and doesn't make Californians any safer.*** A private settlement doesn't create stronger protections for consumer or clearer rules for business."

*Id.; see also* Request for Judicial Notice, Exh. A, *Assembly Public Safety Committee*, Tuesday, July 1, 2025, California State Assembly (emph. added).

This statement makes clear—CIPA was never meant to apply to online tracking or analytics tools. Instead, the Legislature deliberately chose to regulate internet-based data collection through the California Consumer Privacy Act ("CCPA") and the California Privacy Rights Act ("CPRA"), which establish comprehensive, modern, and technology-specific rights and compliance obligations. Allowing plaintiffs to shoehorn those same tools into CIPA's pen-register provisions would directly contradict legislative intent and produce precisely the confusion and punishment of compliance the Legislature sought to prevent when it passed the CCPA.

Finally, even setting legislative intent aside, Plaintiffs' pen-register claim independently fails because CIPA is a criminal statute. Plaintiffs must therefore plead scienter—namely, that UMG knowingly and intentionally installed third-party cookies or source code with the purpose that they would unlawfully intercept information. Plaintiffs neither allege nor could plausibly allege

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

that UMG intended to facilitate any third party's criminal conduct. Absent allegations of knowledge and intent, Plaintiffs' pen-register claim collapses as a matter of law and should be dismissed.

## V. PLAINTIFFS FAIL TO ALLEGE A COGNIZABLE INJURY REQUIRING DISMISSAL OF ALL COUNTS

In their Opposition, Plaintiffs argue because the FAC pleads the exact same misrepresentations as the original Complaint, the FAC satisfies *Popa v. Microsoft Corp.*, 153 F.4th 784 (9th Cir. 2025), for the exact same reasons the Court ruled previously. *See* Opp. at 21. But in doing so, Plaintiffs continue to rely on the conflated analysis of *Popa*'s requirements discussed below and raised in Defendants' initial Motion.

In *Popa*, the Ninth Circuit court made clear that ***the type of data collected*** must be considered in analyzing whether cognizable privacy harm occurred. *Popa*, 153 F.4th at 786, 791 (holding that allegations of more than thirty categories of information failed to establish standing because the plaintiff "identifie[d] no embarrassing, invasive, or otherwise private information collected."). The Ninth Circuit Court specifically drew an analogy to a store clerk observing shoppers to determine which aisles attract the most traffic or to identify obstacles that interfere with potential sales. *Id.* Thus, even if this Court previously distinguished *Popa* on the grounds that *Popa* did not involve the same mechanism of data collection as at issue in this case, *Popa* still requires that courts consider the type of data collected. This requirement is in line with the Ninth Circuit court's approach to analyzing privacy harms. For example, even in *In re Facebook,* 956 F.3d 589 (9th Cir. 2020), the Court found a reasonable expectation of privacy after considering several factors, including the ***amount*** of data, ***mechanism*** of data collection (affirmative misrepresentation), as well as the ***type and nature*** of the data collected (highly sensitive). While *In re Facebook* is readily distinguishable from the present case, it nonetheless demonstrates how even where misrepresentations are alleged, the type of data collected must be considered as well. And it certainly does not undermine the well-established authority cited in UMG's Motion, which Plaintiffs otherwise fail to distinguish. *See* Motion at 18; *see also Khamooshi v. Politico LLC*, 2025 WL 1408896, at *6 (N.D. Cal. May 13, 2025) (relying on *Popa* in holding plaintiffs have failed to allege a concrete privacy injury sufficient to establish Article III standing).



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Under Plaintiffs' reading of *Popa*, any time UMG or other companies on the internet allegedly mischaracterize their data collection practices, they have engaged in an invasion of privacy—regardless of whether such misrepresentation was intentional or implicated any sensitive, confidential, or private information. But privacy cannot be invaded where it does not exist. As in *Popa*, the facts here are analogous to a department store tracking customer foot traffic or a grocery store linking purchase to phone numbers. The FAC remains wholly devoid of any allegations explaining how Plaintiffs' innocuous browsing for tour dates of their favorite artists or attempts to purchase certain merchandise are sensitive or private in any way—indeed, nothing is "private, sensitive, or embarrassing" about being fans of some of music's greatest artists.

Because Plaintiffs allege no collection of private or sensitive information, the data-collection practices described in the FAC cannot give a rise to a cognizable privacy harm. The Opposition only underscores this failure. Plaintiffs *still* do not allege that any website cookie collected their personal information after they interacted with the cookie banner. As discussed above, Plaintiffs do not allege that they entered search terms, submitted information, or otherwise meaningfully engaged with the Websites. That omission is dispositive. *See Winsor v. Sequoia Benefits & Ins. Servs., LLC*, 62 F.4th 517, 523 (9th Cir. 2023) ("[P]laintiffs must … show that they ***personally have been injured***.") (emph. added).

## VI. CONCLUSION

For all of the foregoing reasons, UMG respectfully requests that Plaintiff's FAC be dismissed in its entirety with prejudice.

Dated: March 20, 2026

BAKER & HOSTETLER LLP

By: *<u>/s/ Victoria L. Weatherford</u>*
Bethany G. Lukitsch
Victoria L. Weatherford
Kamran B. Ahmadian
Jaein Cho

*Attorneys for Defendant*
UNIVERSAL MUSIC GROUP, INC.